1 Michael McCue
Nevada Bar No. 6055
2 Meng Zhong
Nevada Bar No. 12145
3 LEWIS ROCA ROTHGERBER CHRISTIE LLP
3993 Howard Hughes Parkway, Suite 600
4 Las Vegas, Nevada 89169
Telephone: 702.949.8200
5 Email: mmccue@lewisroca.com
E-mail: mzhong@lewisroca.com
6
7 Jason P. Stearns (*pro hac vice* pending)
Sarah A. Gottlieb (*pro hac vice* pending)
FREEBORN & PETERS LLP
8 201 N. Franklin Street, Suite 3550
Tampa, Florida 33602
9 Telephone: 813.488.2926
Email: jstearns@freeborn.com
10 Email: sgottlieb@freeborn.com
11 Jeffery J. Catalano (*pro hac vice* pending)
FREEBORN & PETERS LLP
12 311 S. Wacker Drive, Suite 3000
Chicago, Illinois 60606
13 Telephone: 312.360.6000
Email: jcatalano@freeborn.com
14
*Attorneys for Plaintiff STEEL Supplements, Inc.*
15

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

17
STEEL SUPPLEMENTS, INC., a Florida      Case No.:      **2:22-ms-00001**
18 Corporation,
19            Plaintiff,              **REDACTED MOTION TO COMPEL
                                      AND TO TRANSFER MOTION
20 v.                                 PURSUANT TO RULE 45(F)**
21 BLITZ NV, LLC, a Nevada limited liability
Company,
22
23            Defendant.
24        Plaintiff STEEL Supplements, Inc. ("STEEL") hereby moves to compel Ignite
25 International Ltd. ("Ignite US") to comply with STEEL's third-party subpoenas by (i)
26 conducting a search of Ignite US's document repositories, including SharePoint and/or
27 email servers used by Ignite US in the ordinary course of its business, and producing
28 documents responsive to STEEL's Document Request Nos. 8-12 and 15; and (ii)

116382797.1

1  designating a witness prepared to testify regarding Deposition Topic Nos. 14-16 and 19

2  with respect to the marketing of Ignite's ZRO product in the United States. STEEL further

3  requests the Court award it fees and costs for Ignite US's and its counsel's deposition

4  conduct.

5      As an initial matter, pursuant to Federal Rule of Civil Procedure 45(f), STEEL

6  requests transfer of this Motion to the issuing court (the District Court for the Middle

7  District of Florida) in which the underlying action is pending because (i) the discovery

8  sought is subject to a previous ruling by the issuing court on a motion for protective order

9  in the underlying litigation; (ii) this Motion implicates competing interpretations of another

10  of the issuing court's prior orders regarding the temporal scope of discovery in the

11  underlying action; (iii) counsel for Ignite US, Kimberly Stein, has appeared *pro hac vice* in

12  the underlying action as counsel for Defendant Blitz NV, LLC and for Dan Bilzerian (an

13  Ignite US executive) in his individual capacity; (iv) as the issuing court has held all hearings

14  via teleconference, no additional expenses will be incurred by Ignite US as a result of the

15  transfer; and (v) resolution of this Motion will affect various deadlines in the underlying

16  action, including the December 17, 2021 deposition deadline and the February 10, 2022

17  dispositive motion deadline.

18      This motion is supported by the exhibits attached hereto and by the following

19  memorandum of points and authorities.

20  ## **BACKGROUND**

21      STEEL and Blitz NV, LLC ("Blitz") entered into a Personal Services

22  Sponsorship/License Agreement (the "Agreement") on March 7, 2017. Ex. A, Am.

23  Compl. at ¶ 50. Pursuant to the Agreement, Blitz, through its sole member, Dan Bilzerian,

24  agreed to endorse STEEL products through Bilzerian's social media sites, including

25  Instagram and Facebook. *Id.* at ¶ 51. The Agreement included an "exclusivity provision,"

26  wherein Blitz agreed that Bilzerian would not promote, publicize or endorse any

27  "Competitors," defined as providers, sellers, manufacturers, or distributors of

28  bodybuilding supplements. *Id.* at ¶ 52.

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

LEWIS ROCA

116382797.1

In February 2020, Ignite Beverages, Inc. (a subsidiary of Ignite International Brands, Ltd., a Canadian entity co-founded and co-owned by Bilzerian) began selling Ignite ZRO ("ZRO"), a "performance" energy drink. Comp. Ex. B, Dep. Tr. of Clif Turner, at 28:16-29:8, 66:17-67:3; Am. Comp. at ¶¶ 70-72. █████████████████ ████████████████████████████████████████ Turner Dep. Tr. 66:10-22. ZRO, which contains supplement ingredients (such as 250 mg of Caffeine, 300 mg of AlphaSize alpha-GPC, and 250 mg of tyrosine), is marketed as a "pre-workout" supplement and sold in supplement stores, like The Vitamin Shoppe. STEEL sells competing pre-workout supplements, including AMPED-AF, CHARGED-AF, and PRE products. Am. Compl. at ¶ 80. Bilzerian promoted, publicized and endorsed ZRO on his social media accounts. *Id.* at ¶¶ 77, 81-84.

Blitz does not contest that Bilzerian promoted, publicized and endorsed ZRO on his social media accounts but alleges that ZRO is not a competitive product under the Agreement. In addition to the common sense understanding of the term, the Parties have submitted dueling expert reports regarding the meaning of the term "bodybuilding supplement." Further, STEEL sought discovery regarding the marketing of the ZRO product as a pre-workout supplement, including via third-party subpoenas to Ignite US.

<u>The Ignite US Document Subpoena & Production</u>

Between June 21 and 22, 2021, STEEL issued six subpoenas to various Ignite entities, namely, Ignite US, Ignite Beverages, Inc., Ignite Brands, LLC, Ignite Distribution Company, Inc., Ignite Nootropics, LLC, and Ignite Spirits, Inc. Based on the representations of Ms. Stein, counsel for three responding Ignite entities, that (i) "Ignite International, Ltd. [Ignite US] owns Ignite Distribution Company, Inc.," a company "that would have or [is] distributing the ZRO beverage"; (ii) Ignite Spirits, Inc., although "own[ed]" by Ignite US, had no involvement with ZRO; (iii) Ignite Beverages, Inc. is no longer involved in the sale of ZRO and, although still in existence as a legal entity, is no longer operating; and (iv) Ignite US is currently responsible for the sales, marketing and distribution of the ZRO product in the United States, STEEL focused its efforts on the

subpoena to Ignite US.  Comp. Ex. C., Document Subpoenas, Objections, Responses, and Production Letter.

As relevant to this motion, the Ignite US document subpoena sought:

> 8.    Documents and/or communication marketing the ZRO beverage as a pre-workout, workout, or after-workout beverage.
>
> 9.    Documents and/or communications mentioning the ZRO beverage in connection with performance.
>
> 10.   Documents and/or communication mentioning the ZRO beverage in connection with health or fitness.
>
> 11.   Documents and/or communication showing the target audience for demographic for sales of the ZRO beverage.
>
> 12.   Documents and/or communication relating to the concept for the ZRO beverage.
>
> 15.   Documents and/or communication sufficient to show where the ZRO beverage is sold.

*Id.*, Document Subpoena to Ignite US.

On August 16, 2021, Ignite US made a belated document production pursuant to the subpoena. *Id.*, Production Letter. Ignite US's production consisted of a total of 360 pages, the majority of which related to issues other than the marketing of the ZRO product.  Ignite US produced (i) a confidential Executive Summary, Ignite Beverages, Inc., which explains the target market and other information related to marketing strategy (Turner Dep. Tr. Ex. 2 at IGN0000199-211); (ii) a PowerPoint presentation regarding ZRO, also labeled Ignite Beverages, Inc. (*Id.* at IGN0000212-233); and (iii) a handful of copies of emails related to ZRO, many of which contained hyperlinks to files on a SharePoint server or attachments that were not provided to counsel. *See id.* at IGN0000291 ("ZRO Ignite PDFs v05" not produced); *id.* at IGN000305 (ignite_ZRO_onesheet.pdf not produced); *id.* at IGN000347 (SharePoint link to relevant documents not produced); *id.* at IGN000359 (dropbox link to documents not produced).

When STEEL complained about the scant and scattershot production of documents, Ms. Stein stated that Ignite International Brands, Ltd. ("Ignite Canada"), the parent company of Ignite US, controlled access to the relevant documents, which limited

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

LEWIS ROCA

1    Ignite US's ability to search for and produce documents.   Skeptical of counsel's

2    explanation but hopeful it would be able to obtain the evidence it needed through

3    testimony and avoid further conflict, STEEL proceeded to take the 30(b)(6) deposition of

4    Ignite US.

5          Ignite US's corporate designee testified that



7            Turner Dep. Tr. at 71:9-72:17;

8    *see also id.* at 150:20-152:4, 154:4-155:5 (discussing email between Ignite US employees

9    including a SharePoint link to unproduced ZRO marketing files).

10         When counsel for STEEL asked

18      *Id.* at 73:5-74:9 (emphasis added).   This statement on the record was confirmed by Ignite

19   US's counsel in correspondence relating to the present Motion:

20         Lastly, we further advised that while we endeavored to collect and
     produce information available to U.S.-based personnel, as Paul
21   Holden, General Counsel of Brands [Ignite Canada] advised me that
     he will no longer voluntarily provide any further information without
22   a valid subpoena.   You were advised of this well in advance of the
     deposition and elected to forgo taking the necessary steps to issue a
23   valid subpoena to the correct entity in favor of the shortcut you
     pursued with Ignite [Ignite US].   ***While Mr. Turner advised of a***
24   ***cloud-based server, such server is not located in the United States***
     ***and is not under [Ignite US's] control, but [Ignite Canada]....***
25

26   Ex. D, Dec. 16, 2021 Stein Letter at 2-3 (emphasis added).

27               <u>The Ignite US Deposition Subpoena & Deposition</u>

28      Prior to the deposition, Ignite US requested a meet and confer regarding the scope

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

LEWIS ROCA

of the deposition subpoena. The parties discussed deposition topics at length, even pushing back the deposition from the agreed upon date of November 11, 2021 to December 1, 2021 to continue discussions. Following several hours of meet and confer sessions and various email correspondences (including redlined versions of the proposed revised deposition topics), Ignite US and STEEL agreed on the scope and STEEL issued an amended deposition subpoena. Ex. E. As relevant to this motion, STEEL's amended deposition subpoena included the following topics related to the sales and marketing of ZRO:

> Topic 14: Development, formulation *and distribution* in the United States of the ZRO beverage, *including the sales channels utilized.*[1]

> Topic 15: Marking and promotion of the ZRO beverage, including (i) use of social media accounts to market and promote the ZRO beverage, (ii) marketing and promotion of the ZRO beverage through social media influencers, (iii) the marketing strategy for the ZRO beverage, (iv) the target market for the ZRO beverage, and (v) how the ZRO beverage is differentiated in the marketplace from competitive products.

> Topic 16: Ignite employees who have had responsibilities with respect to the formulation, *marketing, promotion and sale of the ZRO beverage.*

*Id.* (emphasis added).

Ignite US did not serve objections to the deposition subpoena or file a motion for protective order or to quash with respect to the deposition subpoena.

The deposition of Ignite US occurred on December 1, 2021 via ZOOM. Surprisingly, Ignite US's corporate designee was Clifton Turner. Previously, Ignite US's counsel had stated that the corporate designee would be John Schaefer, President of Ignite US, and an individual identified in previous depositions as a person highly knowledgeable about the sale and marketing of ZRO in the United States. Turner was a complete unknown to STEEL, as his name was never mentioned by counsel during any of numerous multiple conferrals, not mentioned by any witness in any previous

---

[1] To narrow the scope of this motion, STEEL is not requesting additional testimony regarding the development or formulation of ZRO.

1    deposition, and not referenced in any of the documents produced in this case by Ignite

2    US or any other party.

3          It quickly became apparent why Turner was an unknown. █████████████

4    ██████████████████████████████████████████ Turner Dep. Tr. at 17:11-

5    22. Turner's title is ███████████████████████; however, it is unclear the extent to

6    which, if at all, Turner's job responsibilities relate to ZRO because counsel instructed the

7    witness to not answer foundational questions regarding Turner's job responsibilities. *Id.*

8    at 17:25-18:25. Turner did testify that at the time of the deposition (i) he did not know

9    the individuals in the marketing department or have any details as to that department; (ii)

10   he did not know the Ignite US employees responsible for marketing the ZRO product; (iii)

11   he did not know what documents exist currently at Ignite US that would reflect the current

12   marketing strategy for Ignite ZRO; and (iv) he had never visited the Ignite or Ignite ZRO

13   Instagram pages. *Id.* at 30:11-17 (no details regarding marketing department), 31:6-32:24

14   (employees responsible for marketing ZRO), 79:5-10 (current marketing documents);

15   97:5-7 (Instagram).

16         Despite apparent lack of personal knowledge (given his exceedingly recent hire),

17   Turner spent minimal time preparing for the deposition. Turner's preparation consisted of

18   a total of (i) ████████████████████████████████████████████████████

19   ████(ii)████████████████████████████████████████████

20   ████████████████████████████████████████████████████

21   ████and (iii)████████████████████████████████████████

22   Turner Dep. Tr. 8:2-9:23; Turner Dep. Tr. Ex. 3 (Deposition Notes). But the canned

23   narrative did not fairly address the substance of the deposition topics and Turner was

24   woefully unprepared to answer questions outside of (i) reading his statement and (ii)

25   deferring to produced documents.

26         For example, Topic 15, as negotiated, provides as follows:

27       Marketing and promotion of the ZRO beverage, including (i) use of
         social media accounts to market and promote the ZRO beverage, (ii)
28       marketing and promotion of the ZRO beverage through social media

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

LEWIS ROCA

1    influencers, (iii) the marketing strategy for the ZRO beverages, (iv)
2    the target market for the ZRO beverage, and (v) who the ZRO
     beverage is differentiated in the marketplace from competitive
3    products.

4    Ex. E, Topic 15.   Whenever Turner was asked about ███████████████

5    ██████████████████████████████████████

6    ██████████████████████████████████████████

7    ██████████████████████████████████████████

8    █████████████████████████████████████

9
         Q.  And you're reading from what you wrote in Number 15, is
10   that right?

11       A.  Yes.

12       Q.  Do you have anything to add to that question, other than
     what [you] just read to me from paragraph 15 of your notes?
13
         A.  No.
14
         Q.  If I ask you any question that's on the outline of this case,
15   are you just going to refer to your notes and read to me what's in your
     notes?
16
         A.  I'm going to refer to what I've been prepared and through
17   the topics that are listed in the document.

18   Turner Dep. Tr. at 124:21-125:13; *see also, e.g.,* 144:19-145:14 ("Q: Do you have anything

19   else to add, other than what's on your notes? A: No.")

20       Moreover, Turner was unprepared to respond to questions regarding the

21   documents produced by Ignite US pursuant to STEEL's subpoena for documents. *See* Ex.

22   E, Topic 19 ("Documents Ignite produced in connection with the above-captioned

23   litigation"). For example, Exhibit 7 of the Turner deposition is a document entitled

24   Executive Summary, Ignite Beverages, Inc., ████████████████████

25   ████████████████████████████████████████████

26   ██████████████████████████████████ *See id.,* Topic 15 (iii-v).  According

27   to ██████████████████████████████████████████

28   ████████████████████████████████████████████

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

LEWIS   ROCA

1

2

3                                                    Turner Dep. Tr. Ex. 7 at

4    IGN0000201 (emphasis added). There is an entire section of the

5                                                    *Id.* at IGN0000206. And according to

6    the

7

8            *Id.* at IGN0000205 (emphasis added). The Executive Summary explicitly

9    addresses Topic 15 (iii-v).[2]

   Turner, apparently relying on the fact that the document contains the term "Ignite

Beverages, Inc." was unprepared to discuss this document. Turner Dep. Tr. at 111:9-20

(admitting not prepared to discuss document); 115:7-21 (does not know the purpose of the

summary or who created it); 115:24-116:5 (does not know who at Ignite US received the

document). Moreover, Turner testified that he did not discuss this document with John

Schaefer during his deposition preparation, notwithstanding the fact that Topic 15

explicitly requested testimony regarding the marketing strategy for ZRO. *Id.* at 116:7-

117:2.

   That the document was created by Ignite Beverages, Inc. does not mean that it is

irrelevant to Ignite US's sales and marketing of ZRO.

                                                              *See e.g.,*

Turner Dep. Tr. at 97:1-4.

           *Id.* at 31:14-19

32:12-24

           . The Executive Summary was produced by Ignite US. Is it reflective of

Ignite US's marketing strategy and target market for the ZRO product? If not, how does

Ignite US's marketing strategy and target market for ZRO differ from the Executive

---

[2] In fact, the                         also addresses Topic 15 (i-ii), albeit in less detail that the
other subtopics:                         *Id.* at IGN0000205 (emphasis added).

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

LEWIS ROCA

Summary that it produced? Turner was unprepared to provide any of this information.

Indeed, Turner was unable to testify at all about the sale and marketing of the ZRO beverage, other than to authenticate a few social media posts (that he'd never seen prior to the deposition).

- "Q: Fair to say you are not prepared today to discuss Topic 16 as it relates to the marketing of ZRO and the employees responsible for marketing? A: I don't know who that is, those details." *Id.* at 32:7-15.

- "Q: What documents exist at Ignite [US] that would reflect the current marketing strategy for Ignite ZRO? A: I don't know. I would have to go and check with our current marketing group. I did not dig into that for this purpose." *Id.* at 79:5-10.

- Who maintains the ZRO website? "No, I—we have a marketing team. I'm assuming it's in that group." *Id.* at 81:5-10.

- Whether ZRO was sold at Gold's Gym, GNC, Vitamin Shoppe, etc. *Id.* at 127:6-19 (litany of I-don't-knows).

- Whether Ignite US provided memos, sales pitches, etc. to retail shops. *Id.* at 128:5-17 ("I'd have to talk to the marketing group"); 120:19-22 ("That would be a question for the marketing group.")

Prior Motion Practice Before the Issuing Court Relevant to Present Motion

The issuing court is familiar with the relevancy of the marketing of the ZRO product. Following Ignite US's production but prior to the deposition of Ignite US, Blitz filed a motion for protective order, which, *inter alia*, sought to prevent STEEL from taking further discovery of ZRO, including at the deposition of Ignite US. Blitz argued in its motion for protective order that discovery about ZRO was unnecessary because there had been sufficient discovery taken on the issue; because the documents "show there was no intention to market ZRO as a 'bodybuilding supplement,'" and, therefore, STEEL's "continued pursuit of still more information about Ignite ZRO is pointless"; and because STEEL should not be permitted access to such documents because it is a competitor.

STEEL opposed the motion for protective order, citing (i) the importance of this discovery to STEEL's claim that Blitz breached the exclusivity provision of the Agreement; (ii) the dispute between the Parties as to whether ZRO is a competitive product under the Agreement, and (iii) the various publicly-available marketing materials

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

LEWIS ROCA

associating ZRO with fitness, exercise, and supplements.

The issuing court denied Blitz's motion for protective order with a limited "Heffernan exception" (which does not pertain to ZRO discovery). Specifically, the Court clarified that the Heffernan exception "***should not be utilized*** by the defendant entities or the defendant's principal ***to avoid full and robust discovery otherwise.***" Ex. F, Endorsed Order (emphasis added).

There is an additional order of the issuing court raised by the present Motion. During the Ignite US deposition, counsel for STEEL asked the witness: "What is Ignite's marketing strategy currently with respect to Ignite ZRO?" Turner Dep. Tr. at 81:11-12. The result of this innocuous question was an objection by Blitz that the question violates an order in the case providing that the temporal scope of discovery is through January 13, 2021. The resulting back-and-forth between counsel for STEEL and counsel for Blitz spans five pages of the deposition transcript. To summarize, counsel for STEEL argued (i) the discovery order has limited applicability and (ii) the timeframe of the question was only due to the extreme recency of the designee's hire and his failure to prepare to testify regarding the marketing-related topics. Counsel for Blitz took the position that the temporal limit applied to all discovery and that the deposition notice (despite extensive negotiation and no written objections) was overly general. Turner Dep. Tr. 81:11-86:4.[3]

<u>The Parties' Good Faith Discussions Regarding Relief Requested</u>

Following the deposition, counsel for STEEL and counsel for Ignite US (with counsel for Blitz in attendance and copied) exchanged correspondence and participated in a meet and confer session. STEEL, as noted above, narrowed the dispute to the production of documents responsive to Requests 8-12 and 15 and production of a witness prepared to testify regarding Topics 14-16 (relating to marketing, sales and distribution

---

[3] To be clear, neither STEEL's document requests to Ignite US nor its deposition topics are limited to pre-January 13, 2021. The issuing court's order related to the temporal scope of discovery is limited, and certainly does not apply to prevent deposition testimony. Moreover, absent some change in marketing strategy of which STEEL is unaware– and Ignite US's designee did not describe– there is nothing special about post-January 13, 2021 documents that would warrant exclusion for documents and deposition testimony relating to marketing strategy that does not exclusively relate to pre-January 13, 2021.

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

LEWIS ROCA

1  of ZRO) and Topic 19 (discussion of documents produced by Ignite US).   These

2  discussions resulted in impasse, necessitating this motion.

3  **LEGAL FRAMEWORK**

4  <u>Transfer Pursuant to Rule 45(f)</u>

5  Federal Rule of Civil Procedure 45 governs subpoenas to nonparties. A subpoena

6  to a nonparty is issued by the court where the action is pending. Fed. R. Civ. P. 45(a)(2).

7  Although a party that wishes to enforce or challenge a subpoena must initially move "the

8  court for the district where compliance is required," Fed. R. Civ. P. 45(d)(2)(B)(i),

9  45(d)(3)(A), "Rule 45(f) gives this court discretion to transfer subpoena-related motions

10  to the issuing court." *Obesity Research Institute, LLC v. Fiber Research Int'l*, LLC, No.

11  2:16-cv-61-JAD-PAL, 2016 WL 593546, at *3 (D. Nev. Feb. 12, 2016) (citing Fed. R.

12  Civ. P. 45(f) (allowing transfer "if the person subject to the subpoena consents or if the

13  court finds exceptional circumstances")).

14  "Whether 'exceptional circumstances' exist for a transfer turns on the particular

15  facts of each case." *Id.* (allowing transfer where "the court finds exceptional

16  circumstances")). Although Rule 45(f) does not elaborate on what constitutes "exceptional

17  circumstances," the Advisory Committee Notes state transfer is warranted "to avoid

18  disrupting the issuing court's management of the underlying litigation, as when that court

19  has already ruled on issues presented by the motion or the same issues are likely to arise

20  in discovery in many districts." *Id.* (citing Fed. R. Civ. P. Advisory Committee Notes to

21  Rule 45(f)).

22  Similarly, district courts applying Rule 45(f) have found exceptional

23  circumstances warranting transfer where an issue in the subpoena-related motion was

24  pending before the issuing court, where there were overlapping issues between the

25  subpoena-related motion and the merits of the underlying action, where failure to transfer

26  would result in the risk of inconsistent rulings, where failure to transfer would result in

27  the risk of disrupting the case management of the underlying litigation, and where the

28  issuing court was in a better position to rule on the subpoena-related motion due to its

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

**LEWIS ROCA**

familiarity with the issues involved. *Moon Mountain Farms, LLC v. Rural Community Ins. Co.*, 301 F.R.D. 426, 429 (N.D. Cal. 2014) (collecting cases). *See also Obesity Research Institute, LLC*, 2016 WL 593546, at *3 (finding exceptional circumstances warranting transfer based on case management and judicial economy).

Courts in this District use a balancing test to decide whether the circumstances warrant transfer of the subpoena-related motion to the issuing court. *Obesity Research Institute, LLC*, 2016 WL 593546, at *3. While "the nonparty's interest in obtaining local resolution of the motion" is relevant, it "must be balanced with the interests in ensuring the efficient, fair and orderly progress of ongoing litigation before the issuing court." *Id.* (internal quotation marks omitted).

<u>Possession, Custody, and Control of Documents</u>

A party served with a subpoena to produce documents must "produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii). "[T]he phrase 'possession, custody, or control' is disjunctive and only one of the numerated requirements need be met." *Kiser v. Pride Communications, Inc.*, No. 2:11–cv–00165–JCM–VCF, 2011 WL 5080162, at *4 (D. Nev. Oct. 26, 2011) (internal quotation marks and citation omitted).

Production under Rule 45 "is self-evident when the legal person from whom discovery is requested itself possesses or maintains custody of the sought information." Carole Basri & Mary Mack, *eDiscovery for Corporate Counsel* § 21:6 (2021), *available at* Westlaw EDISCCORP § 21:6. "A party having actual possession of documents must allow discovery even if the documents belong to someone else; legal ownership of the documents is not determinative." *Hayles v. Wheatherford*, No. 2:09–cv–3061 JFM (PC), 2010 WL 4739484, at *1 (E.D. Cal. Nov. 16, 2010). *See also Choice-Intersil Microsystems, Inc. v. Agere Systems, Inc.*, 224 F.R.D. 471, 472-73 (N.D. Cal. 2004) (directing subsidiary to produce documents in control of both parent and subsidiary).

An entity has "control" of documents in the possession or custody of another when

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

LEWIS ROCA

the entity has the "legal right to obtain [the] documents upon demand." *In re Citric Acid Litigation*, 191 F.3d 1090, 1107 (9th Cir. 1999). At least two courts in the Ninth Circuit have held a subsidiary has control over documents in its parent's possession where the parent and subsidiary share a document repository or where the subsidiary has access to the documents in the ordinary course of its business. *Dri-Steem Corporation v. NEP, Inc.*, No. 1:14-cv-00194, 2014 WL 12776884, at *2 (D. Or. Sept. 5, 2014) ("[A] wholly-owned subsidiary has access and control over documents in the possession of its parent corporation when it markets the products of the parent company, when the two companies share databases dealing with a variety of documents and records, and when the subsidiary is able to obtain high-level documents from the parent company when it requests them."); *Choice-Intersil Microsystems, Inc.*, 224 F.R.D. at 472 (subsidiary had control over documents possessed by parent where there had been a plan for subsidiary to market parent's products in North America, where the parent and subsidiary shared databases, and where subsidiary was able to obtain high-level documents from parent upon demand).

At least one court in this District has also held selective production of documents in the possession of a parent demonstrates the subsidiary has sufficient control over the parent such as to require further production. *CG Tech. Dev., LLC v. 888 Holdings PLC*, No. 2:16-cv-00856-RCJ-VCF, 2017 WL 3908673, at *2 (D. Nev. Sept. 6, 2017).

<u>Duty to Prepare 30(b)(6) Designee</u>

An entity that designates an individual without personal knowledge to testify on its behalf must educate the witness and properly "prepare them to fully and unevasively answer questions about the designated subject matter." *Great Am. Ins. Co. of New York v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 538-39 (D. Nev. 2008). Where the designee lacks personal knowledge, such preparation includes "having them review prior fact witness deposition testimony as well as documents and deposition exhibits" and reviewing other materials "reasonably available, whether from documents, past employees, or other sources." *Id.* at 539. An entity "has a duty to designate more than one deponent if necessary to respond to relevant areas of inquiry on the noticed topics." *Id.* at 538-39.

An entity may not avoid testimony by taking the position during a deposition that its documents speak to the company's position. *Id.* If, during the deposition, it becomes clear the designee is not able to respond to relevant areas of inquiry, then the entity "has a duty to designate an additional knowledgeable deponent." *Id.*

## **ARGUMENT**

**I.      This Court Should Transfer STEEL's Motion to the Issuing Court Pursuant to Federal Rule of Civil Procedure 45(f)**

Ignite US and STEEL agree that the District of Nevada is the "place of compliance" with respect to Fed. R. Civ. P. 45(c). The District of Nevada encompasses the place where STEEL served both the subpoena for documents and subpoena for deposition, to Ms. Stein's Las Vegas, Nevada law office, as well as the place in which Ignite US was commanded to make its production in response to STEEL's subpoena for documents. The Court should transfer this Motion to the issuing court pursuant to Rule 45(f) based on the particular circumstances applicable here.

The "prime concern" and reason for requiring motions under Rule 45 to initially be filed in the place of compliance "is to avoid burdens on local nonparties subject to subpoenas." *Obesity Research Institute, LLC*, 2016 WL 593546, at *3. But Ignite US is not a local nonparty. ███████████████████ *See* Turner Dep. Tr. at 112:13-19. Ignite US is not incorporated here, but in Wyoming. Multiple Ignite US executives reside in Texas, ███████████████████ or in other states or locations outside of the United States. *Id.* at 11:15-21. The only ties Ignite US has to Nevada is that its counsel, Ms. Stein, and one of its executives, Dan Bilzerian, reside in places encompassed by this District. Those same individuals, however, also have ties to the issuing Court where the underlying action is pending: (i) Bilzerian is the sole member of Blitz, the defendant in the underlying suit; (ii) Bilzerian appeared in the issuing court concerning a subpoena issued to him individually in the underlying case; and (iii) Ms. Stein is appearing *pro hac vice* in the issuing court on behalf of Blitz as its counsel, and has also appeared in the issuing court on behalf of Bilzerian personally.

116382797.1

- 15 -

Further, each of the multiple discovery hearings that have taken place during the pendency of this litigation in the issuing court have occurred telephonically, allowing appearance without travel. Transfer of this Motion to the issuing court imposes no burden—indeed, not even inconvenience—to Ignite US.

On the other hand, the parties to the underlying action have great interest in having this Motion heard before the issuing Court where the same would further promote the goals of efficient progress of the underlying litigation and decrease the risk of inconsistent rulings on similar and overlapping disputes that the issuing Court has already addressed and will continue to address.

In *Obesity Research*, the court found exceptional circumstances and transferred the subpoena-related motion to the issuing court where, like here, "case management issues weigh[ed] heavily in favor of transfer" because the issuing court had "been actively involved in discovery and case management issues," and was therefore "in the best position to assess the merits of the dispute, weigh the proportionality issues concerning the discovery sought and address the consequences of [the non-party's] compliance or failure to comply with discovery sought from him." *Id.* (stating transfer "will minimize any risk of inconsistent discovery rulings and promote judicial economy").

Here, the issuing court, which has resolved no less than a dozen discovery and case management motions in the underlying case within the last year—including motions implicating the same or similar issues raised by this Motion—is in the better position to assess the merits of the Motion and address the consequences of Ignite US's failure to properly prepare a witness to testify on its behalf to topics negotiated by the parties.

This Motion raises issues previously pending before the issuing court and issues which will continue to be raised as the parties proceed toward dispositive motion briefing and trial. For example, and as discussed in more detail *supra*, both this Motion and previous filings addressed by the issuing Court concern STEEL's entitlement to take "full and robust discovery" concerning Ignite's ZRO product. STEEL has also previously raised concerns before the issuing Court about the apparent shell game that Ignite US and

its related entities seem to be playing—something that becomes more and more apparent with each inconsistent statement Ignite US's counsel or its principals make in this litigation regarding Ignite US's knowledge of ZRO. Further, a dispute concerning the temporal scope of discovery requires interpretation of a prior order of the issuing court.

Transfer of the Motion would promote judicial economy by allowing the same and similar issues to be presented before the same judge, in the place where the underlying litigation is pending and is nearing trial. Failure to transfer this Motion, on the other hand, runs the risk of inconsistent rulings.

Resolution of this Motion will also implicate various past and future deadlines in the issuing court's Case Management and Scheduling Order. The deadline to take depositions in this case was December 17, 2021 and the dispositive motion deadline is February 10, 2022. Continuing Ignite US's deposition to a future date—likely no earlier than January 2022—implicates the issuing court's dispositive motion deadline and other future deadlines. The issuing court is in the best position to address this Motion in the context of those deadlines and the issuing court's own schedule and is best suited to issue a ruling that will avoid disruption of the underlying litigation.

On balance, the "interests in ensuring the efficient, fair and orderly progress of ongoing litigation before the issuing court" outweigh any miniscule interest Ignite US may have in "obtaining local resolution of the motion." The Court should transfer this Motion to the issuing court, the Middle District of Florida.

**II.     In the Alternative, This Court Should Grant STEEL's Motion**

In the event the Court is not inclined to transfer this Motion and instead reaches the merits, this Court should grant STEEL's Motion.

<u>Ignite US Should Be Ordered to Search the SharePoint Repository and Ignite US</u>

<u>Employees' Email for Responsive Documents</u>

*1.   STEEL is entitled to production of Ignite US's own documents that it possesses or*

*maintains custody of.*

The deposition testimony and attorney correspondence make the Parties' dispute

focused and clear. Turner testified that ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ Turner Dep. Tr. at 71:9-72:17; 150:20-152:4, 154:4-155:5. But Ignite US did not search these locations for responsive documents upon receiving STEEL's document subpoena. *Id.* at 73:5-74:9. According to Ignite US, it "voluntarily" produced the 360 pages of documents it gave to STEEL. Ex. D, Dec. 16, 2021 Stein Letter at 2-3. Ignite US claims that the locations hosting the Ignite US documents are not owned by Ignite US but by its parent company, Ignite Canada. Under Ignite US's viewpoint, the (alleged) fact that the document repositories are owned by the parent company obviates the obligation on Ignite US to search these sources of information.

Ignite US is wrong. *Hayles v. Wheatherford*, 2010 WL 4739484, at *1 ("A party having actual possession of documents must allow discovery even if the documents belong to someone else; legal ownership of the documents is not determinative."); *Choice-Intersil Microsystems, Inc. v. Agere Systems, Inc.*, 224 F.R.D. at 472-73 (directing subsidiary to produce documents in control of both parent and subsidiary). If Ignite US's argument were to be accepted, then no subsidiary would ever be required to produce its own business documents by claiming ownership by the parent. The above-referenced documents and repositories are accessible to Ignite US at will in the daily course of its business. They are in Ignite US's actual possession, and Ignite US must search for and produce those documents.

For example, one of the documents Ignite US produced shows an Ignite US employee sent an email to another Ignite US employee containing a link to a file saved on SharePoint. Turner Dep. Tr. at 150:20-155:22; Turner Dep. Ex. 2 at IGN0000347-0000348. The file is described as containing a "████████████████████████

████████████████████" *Id.* Although Ignite US produced the email correspondence sharing the SharePoint file, it failed to produce the SharePoint file itself. Under Ignite US's argument, this file– shared among multiple Ignite US employees, via Ignite US's

1   Outlook, regarding Ignite US's marketing of the ZRO product in the United States–is not

2   Ignite US's document because it is saved on the SharePoint site that Ignite Canada

3   controls. However, this *is* Ignite US's document.  Ignite US employees can access the

4   document, revise the document, or download the file for emailing through an email

5   address used for Ignite US's business purposes. The document is in Ignite US's actual

6   possession, custody, and control.  The email, which Ignite US selectively produced, is

7   likewise in Ignite US's actual possession, custody, and control. Regardless of the claimed

8   ownership of document repositories, ***these are Ignite US's documents.*** Both the email

9   and the attachment link should have been produced pursuant to the subpoena STEEL

10  issued.

11      To be clear, STEEL is not seeking to pierce the corporate veil between Ignite US

12  and Ignite Canada.  STEEL is only seeking what it is entitled to through the subpoena –

13  documents in <u>Ignite US's</u> possession, custody, or control relating to <u>the</u> marketing of ZRO

14  in the United States.  That a search for these documents may implicate Ignite Canada's

15  documents is a consequence of Ignite Canada's comingling of Ignite US's documentation

16  with that of Ignite Canada.

17      2.  *STEEL is entitled to production of documents in Ignite US's control.*

18      Even assuming it can be determined that the responsive documents are in Ignite

19  Canada's actual possession and not Ignite US's actual possession, Ignite US still has legal

20  control over the documents and must, therefore, produce them.

21      A subsidiary is deemed to have legal control of a parent company's documents when

22  the subsidiary and parent share databases containing documents, when the subsidiary

23  markets a product of the parent company, and when the subsidiary is able to obtain high-

24  level documents from the parent upon request. *Dri-Steem Corporation*, 2014 WL

25  12776884, at *2; *Choice-Intersil Microsystems, Inc.*, 224 F.R.D. at 472. All of those

26  circumstances apply here.

27      Ignite Canada has assigned its wholly-owned subsidiary, Ignite US, the

28  responsibility for sales and marketing of the ZRO product in the United States.  In

1  furtherance of that business purpose, Ignite US employees use the SharePoint portal,

2  allegedly owned by Ignite Canada, to store documents related to Ignite US's business.

3  Ignite US employees use email, also allegedly owned by Ignite Canada, in the ordinary

4  course of conducting Ignite US's business. And, Ignite US is able to obtain documents

5  from Ignite Canada upon request—in this case, it "voluntarily" produced 360 pages of

6  select documents it claims are owned by Ignite Canada. Indeed, Ignite Canada's alleged

7  "voluntary" and selective production of documents by its subsidiary, Ignite US, is reason

8  alone why Ignite US has legal control and why the Court should order Ignite US to

9  produce additional documents. *CG Tech. Dev., LLC*, 2017 WL 3908673, at *2.

10     Ignite US should be ordered to conduct a reasonable search, including employee

11  email and files located on the SharePoint repository, and produce non-privileged documents

12  responsive to Document Requests 8-12 and 15.

13  <u>Ignite US Should Be Ordered to Produce a Witness Prepared to Testify Regarding Topics 14-16 and 19 of the Deposition Subpoena</u>

14

15     As recipient of a 30(b)(6) deposition subpoena, Ignite US is not required to

16  designate the person most knowledgeable regarding the topics in the subpoena; however,

17  the designee must be prepared to testify regarding the subject matter of the deposition

18  topics. Had Ignite US produced a witness with personal knowledge regarding the topics,

19  preparation would have been rather simple.

20

21     Ignite US was in their right to choose Turner; however, commensurate with the

22  decision was the obligation to prepare him to testify. Ignite US utterly failed to prepare

23  Turner to testify regarding the marketing-related topics, frustrating the deposition.

24     The fact that ZRO was initially developed by Ignite Beverages, Inc. is immaterial

25  to Ignite US's ability to designate an educated witness. Turner confirmed that

26

27

28     Whether Ignite US has continued to implement

116382797.1

- 20 -

Ignite Beverages, Inc.'s marketing strategy (likely) or started fresh with their own strategy (this would be news to STEEL), there is no reason why Ignite US cannot prepare a witness to testify regarding Topics 14-16:

- How does Ignite US use social media accounts and social media influences to promote ZRO?
- What is Ignite US's strategy for marketing ZRO?
- What is the target market for the ZRO beverage?
- How does Ignite ZRO try to differentiate itself in the marketplace from competitive products?
- Where is ZRO sold?
- What pitches or marketing materials are provided to retailers that carry ZRO?

These questions are explicitly called out in the notice of deposition, which topics were extensively negotiated with Ignite US's counsel. But time and time again, Turner testified that he did not know the answers to these questions, deferring either to Ignite US's initial designee (John Schaefer) or to the marketing department. Turner Dep. Tr. at 30:11-22, 32:2-19, 79:5-10, 81:5-10, 123:16-125:8, 129:19-21, 147:9-148:7, 149:9-18. This is unacceptable.

Moreover, Ignite US's corporate designee should have been prepared to testify regarding the documents produced pursuant to the subpoena. *See* Ex. E, Topic 19. Ignite US's production consisted of a mere 360-pages. Given that Turner was only hired after Ignite US made its production, it is hardly a surprise that he did not author any of the produced documents. However, Turner should have been prepared to discuss these documents with John Schaefer, Ignite US's marketers, or other employees with knowledge and then testify regarding Ignite US's knowledge relating to these documents.

The Court should order Ignite US to produce a witness prepared to testify regarding topics 14-16 and 19 of the deposition subpoena.

### III.   STEEL is Entitled to Fees and Costs

STEEL requests the Court award STEEL its reasonable attorneys' fees and costs pursuant to Federal Rules of Civil Procedure 37(a)(5) and 30(d)(2) for its counsel's time preparing for and attending Ignite US's December 1, 2021 deposition and counsel's time spent on this Motion.

1    Ignite US's designation of a thoroughly unprepared witness—particularly after
2    counsel for STEEL agreed to postpone the deposition to continue to extensively negotiate
3    deposition topics at Ignite US's counsel's request—is indefensible. The unpreparedness
4    of Ignite US's designated witness, discussed in more detail *supra*, is evident throughout
5    the deposition transcript. Further, Ignite US did not serve objections to the deposition
6    subpoena, file a motion for protective order, or move to quash. Instead, counsel for Ignite
7    US: wrongly informed counsel for STEEL that Ignite US agreed to the scope of topics;
8    designated a witness different from whom Ignite US had consistently stated it would
9    designate; and instructed the witness to not answer foundational questions within the
10   scope of the noticed topics. Turner Dep. Tr. at 17:25-18:25, 23:16-24:20, 24:21-25:17.
11   Ignite US's conduct—and that of its counsel—was not substantially justified. There are
12   no circumstances that make an award of expenses to STEEL unjust. Ignite US and its
13   counsel should pay STEEL's reasonable expenses incurred in making this Motion
14   pursuant to Rule 37(a)(5) and should pay STEEL's reasonable fees and costs as a sanction
15   for their conduct in impeding, delaying, and frustrating the fair examination of the
16   deponent pursuant to Rule 30(d)(2). *See generally Foshee v. Mastec Network Solutions,*
17   *Inc.*, No. 1:20-cv-00890-AWI-SAB, 2021 WL 5529891, at *11 (E.D. Cal. Nov. 24, 2021)
18   (collecting cases) (describing allowable imposition of fees and costs under Rules 30 and
19   37 to nonparty deponent in the Ninth Circuit).

## CONCLUSION

21   The Court should transfer this Motion pursuant to Rule 45(f) based on exceptional
22   circumstances applicable here. In the alternative, this Court should order Ignite US to
23   conduct a search of (i) employee emails and (ii) the SharePoint repository for documents
24   responsive to Request Nos. 8-12, 15 of the document subpoena. Further, this Court should
25   order Ignite US to fully prepare a witness to submit for deposition on Topics 14-16 and 19
26   of the deposition subpoena.

## CERTIFICATE OF MEET-AND-CONFER

28   Pursuant to the Local Rules of Practice, United States District Court for the

1   District of Nevada, LR IA 1-3(f) and LR 26-6(c), counsel for STEEL certifies that despite

2   a sincere effort to resolve or narrow the dispute during the meet-and-confer conference,

3   the parties were unable to resolve or narrow the dispute without court intervention.

4   Pursuant to these Rules, STEEL files as an exhibit to this Motion the declaration of its

5   counsel setting forth the details and results of the meet-and-confer conference about each

6   disputed discovery request.

7           Dated December 30, 2021.

8                                           LEWIS ROCA ROTHGERBER CHRISTIE LLP

9

10                                          By: /s/ Meng Zhong
                                            Michael J. McCue
11                                          Meng Zhong
                                            3993 Howard Hughes Pkwy., Suite 600
12                                          Las Vegas, NV 89169
                                            Tele: 702-949-8200
13                                          E-mail: mmccue@lewisroca.com
                                            E-mail: mzhong@lewisroca.com
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

116382797.1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am an employee of LEWIS ROCA ROTHGERBER CHRISTIE LLP, and that on this 3rd day of January, 2022, and pursuant to FRCP 5(b), a copy of the foregoing **REDACTED MOTION TO COMPEL AND TO TRANSFER MOTION PURSUANT TO RULE 45(F)** was served by electronic service and U.S. Mail on the following:

> Kimberly P. Stein
> FLANGAS LAW GROUP
> 3275 South Jones Blvd., Suite 105
> Las Vegas, NV 89146
> E-mail: kps@fdlawlv.com
> *Attorney for Ignite International, Ltd.*

Dated this 3rd day of January, 2022.

> /s/ Rebecca J. Contla
> An employee of Lewis Roca
> Rothgerber Christie LLP

- 24 -

116382797.1

Michael McCue
Nevada Bar No. 6055
Meng Zhong
Nevada Bar No. 12145
LEWIS ROCA ROTHGERBER CHRISTIE LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
Telephone: 702.949.8200
Email: mmccue@lewisroca.com
E-mail: mzhong@lewisroca.com

Jason P. Stearns (*pro hac vice* pending)
Sarah A. Gottlieb (*pro hac vice* pending)
FREEBORN & PETERS LLP
201 N. Franklin Street, Suite 3550
Tampa, Florida 33602
Telephone: 813.488.2926
Email: jstearns@freeborn.com
Email: sgottlieb@freeborn.com

Jeffery J. Catalano (*pro hac vice* pending)
FREEBORN & PETERS LLP
311 S. Wacker Drive, Suite 3000
Chicago, Illinois 60606
Telephone: 312.360.6000
Email: jcatalano@freeborn.com

*Attorneys for Plaintiff STEEL Supplements, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

STEEL SUPPLEMENTS, INC., a Florida Corporation,

Plaintiff,

v.

BLITZ NV, LLC, a Nevada limited liability Company,

Defendant.

Case No.:

**DECLARATION OF JEFFERY J. CATALANO REGARDING MEET-AND-CONFER IN SUPPORT OF MOTION TO COMPEL AND TO TRANSFER MOTION PURSUANT TO RULE 45(F)**

I, Jeffery J. Catalano, hereby state as follows:

1. I am an attorney with the law firm Freeborn & Peters, LLP. I represent Plaintiff, STEEL Supplements, Inc. ("STEEL") in connection with the underlying litigation pending in the United States District Court for the Middle District of Florida.

2. I am over the age of 18 and am competent to testify regarding the matters herein.

116381453.1

3. This declaration is submitted pursuant to the Local Rules of Practice, United States District Court for the District of Nevada, LR IA 1-3(f) and LR 26-6(c).

4. Ignite International, Ltd.'s ("Ignite US") designee was unprepared to testify at his December 1, 2021 deposition. Counsel for STEEL addressed that issue with counsel for Ignite US multiple times during the deposition.

5. STEEL further raised the deficiencies raised in STEEL's Motion to Compel and to Transfer Pursuant to Rule 45(f) (the "Motion"), among other deficiencies, in correspondence to Ignite US's counsel on December 13, 2021.

6. Ignite US, through counsel, provided a written response to STEEL's deficiency letter on December 16, 2021. Ignite US's response letter is attached to the Motion as Ex. D.

7. Following the exchange of letters, I, on behalf of STEEL, and Kimberly Stein, on behalf of Ignite US held a telephonic meet-and-confer session on Tuesday, December 21, 2021. During the meet and confer, STEEL voluntarily narrowed the dispute to the production of documents responsive to Requests 8-12 and 15 and production of a witness prepared to testify regarding Topics 14-16 (relating to marketing, sales and distribution of ZRO) and Topic 19 (discussion of documents produced by Ignite). STEEL and Ignite US fully discussed their respective positions regarding the narrowed topics determined that they were at impasse. STEEL further requested that Ignite US consent to the transfer of STEEL's motion to compel to the District Court for the Middle District of Florida. Ignite US indicated that it was unwilling to agree to the requested transfer.

8. STEEL and Ignite US further discussed, notwithstanding the mutual agreement of impasse, whether the Motion could be avoided through a stipulation. Following a good faith email correspondence between STEEL, Ignite US, and Defendant Blitz NV, LLC on December 24 and 27 of 2021, STEEL determined that the stipulation that Ignite US was willing to provide would not mitigate the prejudice to STEEL caused by Ignite US's inadequate document production and witness preparation.

9. Among other reasons, STEEL determined that a stipulation regarding the

116381453.1

authenticity of Ignite's production would not remedy the harm to STEEL in that (i) due to Ignite US's failure to conduct a search of Ignite US email servers and the SharePoint document repository, STEEL does not have the ZRO marketing documents to which it is entitled to support is breach of contract assertions; (ii) STEEL has been deprived of testimony of Ignite US's corporate representative regarding Ignite US's marketing of the ZRO product which would give context to the few marketing-related documents that Ignite US did produce; and (iii) Blitz has reserved its right to object to the admissibility of the Ignite US production on certain grounds, creating a risk to STEEL that proceeding based only upon a stipulation without deposition testimony could result in the exclusion of evidence supporting STEEL's breach of contract claim.

10. Despite a sincere effort to resolve or narrow the dispute further during the meet-and-confer conference, the parties were unable to resolve or narrow the dispute without court intervention, necessitating this Motion.

Dated this 29th day of December, 2021.

By: /s/ Jeffery J. Catalano
Jeffery J. Catalano

116381453.1

- 3 -

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**STEEL SUPPLEMENTS, INC.,** a
Florida corporation

     Plaintiff,

v.                         **CASE NO.** 8:20-cv-2971-T-02-AEP

**BLITZ NV, LLC,** a Nevada limited     **Declaratory Relief Requested**
Liability company

     Defendant.

_____/

## AMENDED COMPLAINT

Plaintiff, **STEEL SUPPLEMENTS, INC.** ("STEEL") sues Defendant

**BLITZ NV, LLC** ("Blitz") and states as follows.

## Nature of Action

1.    This action stems from the material breach of a Personal Services
Sponsorship/License Agreement (the "Agreement") under which Blitz,
through social media celebrity, Dan Bilzerian ("Bilzerian"), agreed to
promote, publicize and endorse STEEL's products.

2.    Blitz agreed Bilzerian would not promote, publicize or endorse
the products or services of any STEEL competitor, defined by the Agreement
as a provider, seller, manufacturer, or distributer of bodybuilding supplement
products.

1

Case 8:20-cv-02971-WFJ-AEP   Document 32   Filed 02/24/21   Page 2 of 41 PageID 345

3.     In violation of the express terms of the Agreement, Bilzerian has been promoting endorsing, and/or publicizing competitors' products. Further, in violation of the Agreement, Blitz has failed to ensure that Bilzerian provides the services required by the Agreement to the best of his skill and ability, failed to ensure Bilzerian endorsed STEEL on all his social media sites, and failed to ensure Bilzerian endorsed all products offered by STEEL. As a result of these breaches, STEEL terminated the Agreement.

4.     In addition to Blitz's breaches, STEEL was authorized to terminate the Agreement based on Bilzerian's criminal, wrongful, and/or immoral acts that adversely affect the reputation of STEEL.

5.     By this action, STEEL seeks damages for Blitz's breaches of the Agreement and breach of the implied covenant of good faith and fair dealing. STEEL also seeks a declaration that the Agreement has been terminated. STEEL further seeks a declaration that the Agreement provides Blitz would be compensated based on STEEL's income.

6.     In the alternative, to the extent the Agreement provides Blitz would be compensated based on STEEL's sales, STEEL seeks reformation of the Agreement.

## Jurisdictional Allegations

7.     Federal diversity jurisdiction is proper under 28 U.S.C. § 1332 because there is complete diversity between STEEL and Blitz and the

2

amount in controversy exceeds $75,000.00, exclusive of costs, interest, and attorneys' fees.

8.  STEEL is a Florida corporation with a principal place of business in Sarasota, Florida. Accordingly, STEEL is a citizen of Florida and is not a citizen of any other state.

9.  Blitz is a limited liability company. Blitz's sole member is Goat Works, LLC. The sole member of Goat Works, LLC is Bilzerian. Bilzerian is domiciled in Las Vegas, Nevada. Accordingly, Blitz is a citizen of Nevada and is not a citizen of any other state.

10.  STEEL seeks damages due to Blitz's failure to comply with its contractual obligations, which have damaged STEEL in an amount greater than $75,000.00.

11.  Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Sarasota County, Florida, where STEEL's principal place of business is located. Sarasota County, Florida is within the geographical boundaries of the Middle District of Florida. Additionally, pursuant to section 15 of the Agreement, venue for any action arising under or relating to the Agreement shall be in the court of appropriate jurisdiction for Sarasota County, Florida.

## General Allegations

### A. Huh and STEEL

12.    Jason Huh ("Huh") is a highly decorated former professional bodybuilder, who now owns and operates several successful health and fitness companies, including STEEL, that he built from the ground up.

13.    Huh was born in Korea. His parents immigrated to the United States with Huh when he was one month old, looking to make the American dream a reality for their family.

14.    Huh's father, who had been a professional bodybuilder in Korea, began working as a personal trainer in Sarasota, Florida, where the family made their new home. The family had few means at first, and Huh's father would ride his bicycle to work every day.

15.    Inspired by his father's self-discipline and dedication to bodybuilding and fitness, Huh was driven to succeed in the bodybuilding and fitness industry.

16.    Huh began his bodybuilding career at the age of 16, training for one year for a show and ultimately losing.

17.    Determined to persevere, Huh trained harder.

18.    Huh's hard work paid off. In 2004, he competed in the NPC Teen Nationals, winning first place overall and becoming titled Best Teenage Bodybuilder on the Planet.

19.     Huh's win in 2004 fueled his bodybuilding career.

20.     In addition to continuing to compete, in 2007, Huh opened Elite Nutrition and Smoothie in downtown Sarasota, with the goal of bringing premium bodybuilding supplements, fitness knowledge, and customer care to his hometown.

21.     As an athlete, Huh also became sponsored by a company called Pro Supps. Huh became close with the principal of Pro Supps, Arthur Atwood ("Atwood"), a coach who trained Huh for the 2010 national bodybuilding competition.

22.     In 2010, Huh turned pro, becoming the youngest person ever to do so.

23.     Upon turning pro, Huh agreed to sign a contract with Pro Supps to endorse its supplement products. Huh remained close with Atwood and began learning from him about the supplement industry, including the art and science of creating a supplement product.

24.     Under Atwood's wing, Huh gained expertise regarding supplement ingredients and measurements, paying close attention to detail. Huh was impressed by Atwood's dedication to the quality of the ingredients and the complexity of the formulas, finding Atwood's ideas and creations far better than the supplements available on the market at the time, which were often diluted in quality and produced with a lower level of care.

5

25. Within a year of Huh signing the product endorsement contract with Pro Supps, Atwood passed away at age 37 of a heart attack. Pro Supps was acquired by others, and, without Atwood there, Huh decided to step away.

26. In 2012, after years of training for professional bodybuilding competitions while simultaneously running Elite Nutrition and Smoothie seven days a week, Huh decided to step away from pro bodybuilding, choosing instead to focus on his nutrition and fitness businesses and further his expertise in supplements.

27. Huh would learn to perfect supplement products through trial and error, testing them both on himself and on clients he trained.

28. A few years later, Huh founded STEEL, a concept for a high-quality supplement company.

29. Determined to create quality products with great care, Huh reached out to well-known chemists to assist him with creating safe and effective supplement formulations. Huh was determined STEEL would bring forth only the best supplement products in terms of quality and effectiveness.

30. Huh launched STEEL in August 2016 to great acclaim. Within four years, STEEL became a multi-million dollar company and grew from one employee to having approximately 60 full time employees.

31. A number of STEEL's current employees include those that have

6

been with the company since close to the time of its inception.

32.   At its core, STEEL consists of a tight-knit group that values credibility, transparency, family, athletics, and work ethic.

33.   Today, STEEL sells its products at its retail location in downtown Sarasota and online.

34.   STEEL remains devoted to producing innovative products using science to inspire action, help individuals push past previous physical limits, and achieve optimal health.

35.   Ultimately, STEEL's mission is to create products, services and inspiration to instill definiteness of purpose and advance human potential through health and fitness.

36.   To that end, STEEL's products are formulated based on science and research-based education. They contain only the highest quality ingredients, which are tested for accuracy and purity before and after manufacture.

37.   STEEL's supplement products are conspicuously labeled to include its ingredients, which are also disclosed to consumers before purchase.

38.   STEEL provides extensive education to consumers about its products, describing, for example, the best way to take each supplement and which STEEL supplements may and may not be combined. STEEL provides

7

additional health and fitness education on its blog, describing to followers how they can take realistic steps to achieve healthy and fit lifestyles.

39.     There are now dozens of STEEL supplement products for many different health and fitness applications, a representative sample of which are included in the following table:

| | | |
|---|---|---|
| **ADABOLIC** |  | A pre-, intra-, and post-workout endurance and recovery formulation. |
| **SHREDDED-AF** |  | An advanced multistage thermogenic that focuses on boosting metabolism, suppressing cravings, and providing all-day energy and mental clarity without the crash. |

8

| | | |
|---|---|---|
| **ALPHA-AF** |  | A natural T booster that promotes fat loss. |
| **AMPED-AF** |  | A pre-workout providing maximum energy and enhanced focus to allow faster, longer, and more intense training without crash. |
| **VEG-PRO** |  | A non-GMO verified pure vegan protein powder delivering a dairy-free protein complete profile of essential amino acids. |

9

| | | |
|---|---|---|
| **RESTED-AF** |  | A pharmacist formulated sleep aid that improves sleep quality. |
| **CHARGED-AF** |  | A high-intensity and focus pre-workout designed to amplify energy, alertness, strength, stamina and pumps while providing essential nutrients to optimize anaerobic and aerobic capacity. |
| **ATP FUSION** |  | A creatine monohydrate synthesized to pH 12. Perfect for men and women seeking lean muscle gains with no bloat or water retention. |

10

| | | |
|---|---|---|
| **STEEL OCTANE** |  | A performance energy drink infused with nootropics, aminos, vitamins, and caffeine. |

40.    STEEL has many more supplement products; since its founding, STEEL's distinguished line of supplements has grown to an extensive collection of over 25 unique supplement formulations.

41.    To this day, Huh continues to have a hand in formulating nearly all of STEEL's supplement products.

42.    The proven efficacy of STEEL's supplement products has generated thousands of rave reviews and a loyal customer following.

43.     In addition to its supplement products, STEEL sells health and fitness accessories, including gym bags, hoodies, and gym towels.

**B. Dan Bilzerian, "King of Instagram"**

44.    Bilzerian is an actor, professional poker player, and a social media celebrity whose social media fame led to him being given the moniker, the "King of Instagram."

45.    As a social media influencer, Bilzerian posts photos and videos flaunting guns, expensive cars, scantily clad women, and fitness on social

11

media platforms including Facebook, Twitter, Instagram, Snapchat, and YouTube. Bilzerian's social media identity has gained him in excess of 32 million Instagram followers.

46.   Bilzerian's Instagram content includes posts on his Instagram feed (permanent photos and videos that remain on Bilzerian's Instagram page unless deleted) and Instagram stories (photos or videos displayed for up to 15 seconds on Bilzerian's Instagram page and which disappear after 24 hours unless converted to a story highlight).

47.   Blitz and Bilzerian are highly sophisticated in the art of social media influencing. Bilzerian's social media posts and stories are carefully measured to further his dual goals of maintaining his lavish social media identity and promoting his business ventures.

48.   Bilzerian's social media posts and stories are shot with the precision of a movie production, requiring multiple shots and editing. Everything is purposeful in the final version published to Bilzerian's almost 33 million followers.

49.   In light of Bilzerian's success as a social media influencer, STEEL entered into negotiations with Blitz for an exclusive sponsorship agreement.

## C. The Personal Services Sponsorship/License Agreement

50.    On or about March 7, 2017, STEEL entered into the Agreement with Blitz, which manages and provides Bilzerian's services. STEEL would have attached the Agreement to this pleading as an exhibit; however, the Agreement contains a confidentiality clause, requiring that its contents be kept between the parties.

51.    Pursuant to the Agreement, Bilzerian, through Blitz, agreed to endorse all products offered by STEEL through his social media sites, including Instagram and Facebook. *See* Agreement, §§ 1.2, 3.1.

52.    Blitz agreed that Bilzerian shall not promote, publicize or endorse any of STEEL's competitors, which are providers, sellers, manufacturers or distributors of bodybuilding supplements. *See* Agreement, § 3.1.1.

53.    On or about March 30, 2017, Blitz approached STEEL about amending the Agreement's exclusivity provisions. Blitz requested that STEEL sign an amendment which would allow Bilzerian to submit requests to STEEL to allow Bilzerian to work with STEEL competitors.

54.    STEEL declined to agree to the amendment.

55.    Although the Agreement gave Bilzerian/Blitz discretion regarding the content and amount of posting, the Agreement provided that Blitz would be sure Bilzerian performs to the best of his skill and ability. *See*

13

Agreement, § 3.1.2.

56.     Section 2.2 of the Agreement allows STEEL to terminate under the following circumstances: "(i) if [Bilzerian] commits any criminal, wrongful, or immoral act for which [Bilzerian] has been arrested and convicted of (after exhausting any appellate rights) and then in which, in [STEEL's] opinion, would adversely affect the reputation of [STEEL] (for the avoidance of doubt such acts do not include general misdemeanors or traffic crimes); or (ii) if [Bilzerian] dies or becomes physically incapacitated or (iii) if B[litz] is in material breach of this Agreement."

### D. Bilzerian's Endorsement of Competitors

57.     Recently, Blitz has been breaching the Agreement as a result of Bilzerian promoting, publicizing, or endorsing competitors' products.

### 1. The Treigning Lab

58.     On or about July 3, 2020, Bilzerian posted two Instagram stories in which he responded to the question, "what supplements do you take and when do you take them?"



59.   While Bilzerian identified various supplements from STEEL, he also promoted, publicized, and endorsed a non-STEEL supplement from a company called "The Treigning Lab" which, according to Bilzerian, helps him achieve a better, deeper sleep.

60.   As depicted in the screenshot from Bilzerian's Instagram story below, Bilzerian endorsed The Treigning Lab product, an L-Tryptophan supplement clearly bearing the Treigning Lab's name and logo:



61.    This product directly competes with STEEL products, including "RESTED-AF", which promotes a deeper sleep and muscle recovery, and ADABOLIC, which includes the same active ingredient as the Treigning Lab's product, L-Tryptophan.

62.    The Treigning Lab provides, sells and/or manufactures bodybuilding supplements and, therefore, is a STEEL competitor, as defined by the Agreement.

63.    On its website, www.treigninglab.com, The Treigning Lab sells other bodybuilding supplements including but not limited to Creatine Monohydrate, L-Glycine, and L-Arginine, among others. By way of example, STEEL sells a product called "ATP-FUSION" which is a creatine formula containing the same active ingredient—Creatine Monohydrate—as the Treigning Lab's product.

64.    Bilzerian's endorsement of The Treigning Lab's product was not cleared by STEEL, nor would STEEL have consented, particularly where, as

16

here, the product directly competes with STEEL's products.

## 2. FULL SEND

65.     On or about December 23, 2019, Bilzerian appeared in a promotional video featuring the NELK Boys—a YouTube channel and social media company which owns the brand FULL SEND. The video's caption tags Bilzerian and states "FULL SEND Christmas Special is LIVE NOW🔥 @danbilzerian."

66.     This was the first time STEEL learned about Bilzerian's relationship with the NELK Boys. At that time, however, FULL SEND did not sell bodybuilding supplements.

67.     A few months later, however, FULL SEND began selling bodybuilding supplements through its website, https://fullsendsupps.com/.

68.     In doing so, FULL SEND competes directly with STEEL.

69.     On or about October 26, 2020, after FULL SEND began selling bodybuilding supplements, Bilzerian posted an Instagram story in which he walked to the back of a parked truck and focused on the contents inside the open trunk.  As shown in the screenshot below, plainly visible, among three carefully placed guns, was a bright red gym bag with the words "FULL SEND" prominently written in the same style as on the FULL SEND bodybuilding supplements:

17



### 3. Ignite

70.    In or around 2018, Bilzerian co-founded Ignite.

71.    In February 2020, Ignite unveiled a new product: an energy drink called "ZRO."

72.    ZRO is marketed as a "performance" drink and sold in supplement stores like The Vitamin Shoppe.

73.    In September 2020, James Gracely, President of Beverages at Ignite, appeared on the Supplement Engineer Podcast.

74.    Gracely noted that people use energy drinks, such as Ignite, as a pre-workout beverage.

75.    Gracely has explicitly promoted ZRO in lieu of traditional pre-workout supplements like those STEEL offers, commenting on the same podcast episode that "stim pre-workouts are ridiculous they're irrelevant at this point people are drinking energy drinks all day long anyway what do you need more dividends for."

18

76.     Gracely comes from a supplement background, having worked at VPX Sports, a supplement company, prior to joining Ignite in August 2019.

77.     As reflected below in a post containing a picture of Bilzerian, ZRO's Instagram page also depicts Ignite as a pre-workout supplement.



78.     As depicted in the post below, Ignite has further advertised ZRO as a product to "help give you the motivation you need to hit the gym."



79.     In addition to natural caffeine, ZRO contains supplement ingredients such as 300mg of AlphaSize alpha-GPC and 250mg of tyrosine.

80.     STEEL sells competing pre-workout products, including products

19

called "AMPED-AF", "CHARGED-AF", and "PRE".

81.    Bilzerian, an owner of Ignite, has been featured on Ignite's Instagram unabashedly promoting ZRO. By way of example only, on August 10, 2020, Ignite posted a series of photos on Instagram of Bilzerian with a ZRO can, encouraging followers to buy the product.



82.    Bilzerian also frequently endorses ZRO on his own social media platforms. By way of example only:

| On October 31, 2020, Bilzerian posted an Instagram video story with a ZRO can. |  |

20

| | |
|---|---|
| On November 9, 2020, Bilzerian posted the following image to Instagram. |  |
| Also on November 9, 2020, Bilzerian posted an Instagram video story in which the camera swivels from a view of dumbbells scattered on the floor of a pavilion to the following image of a ZRO can resting on top of exercise equipment. |  |
| On November 11, 2020, Bilzerian posted the following image to Instagram. |  |

83.    On November 30, 2020, Bilzerian posted an Instagram story

promoting Ignite's Cyber Monday sale. The story included links to Ignite's products, including its ZRO beverage.

84.    On December 3, 2020, Bilzerian posted an Instagram story promoting Ignite by showing it on the shelves at The Vitamin Shoppe.

### E. Bilzerian's Criminal, Wrongful, and/or Immoral Acts

85.    Bilzerian has committed a number of criminal, wrongful, and/or immoral acts that adversely affect STEEL's reputation.

86.    Sometime after executing the Agreement with STEEL, Bilzerian founded Ignite.

87.    Before it launched ZRO, Ignite began as a cannabis company offering for sale products containing Tetrahydrocannabinol, or THC.

88.    Ignite continues to offer for sale products containing THC.

89.    THC is a component of cannabis that remains a topic of great controversy in the U.S. due to its psychoactive effects.

90.    Ignite's THC based products are antithetical to STEEL's health-conscious and U.S.-based brand.

91.    Bilzerian's ownership and promotion of such products puts the STEEL brand at risk of dilution and risks isolating STEEL's health-conscious customers who turn to STEEL for fitness products, not illicit drugs.

92.    Bilzerian's production of THC based products is not the only example of Bilzerian's conduct with Ignite that puts STEEL's reputation at

22

risk. Upon information and belief, STEEL has also learned Bilzerian has misappropriated Ignite funds to continue subsidizing his lavish lifestyle.

93.   Further, Bilzerian has apparently violated Federal Trade Commission ("FTC") rules and regulations by failing to disclose the nature of his relationship with STEEL.

94.   When Bilzerian promoted and endorsed STEEL's products on social media, Bilzerian was required to disclose his for-profit relationship with STEEL.

95.   Bilzerian declined to disclose his relationship with STEEL to make his postings appear more organic to increase consumer interest, and, in turn, increase his profit share of STEEL's sales.

96.   In taking these actions, Bilzerian and Blitz disregarded STEEL's brand and the Agreement, placing their own self-interests ahead of STEEL's interests and STEEL's consumer goodwill.

**F. Bilzerian's Bad Faith Acts Under the Agreement**

97.   Since the effective date of the Agreement through the filing of this lawsuit, Bilzerian has endorsed STEEL three (3) times on Facebook, one (1) time on Twitter, fifteen (15) times on Snapchat, twenty-four (24) times on Instagram, and never (0) on YouTube.

98.   Most of these posts occurred early, toward the start of the Agreement.

99.   There were times when Bilzerian did not post for months at a time, sometimes due to disagreements he had with STEEL.

100.   As an example only, there was a period of time in 2018 when Bilzerian did not post for approximately eight months following a disagreement with STEEL over the production of a promotional STEEL video.

101.   Bilzerian had demanded that STEEL create and publish a professionally shot and edited promotional video including Bilzerian's image.

102.   STEEL disagreed with the treatment Bilzerian had suggested, and at first declined the idea.

103.   Bilzerian, however, then refused to post any STEEL products on his social media. Bilzerian continued not to post any STEEL products for approximately eight months, until STEEL succumbed to Bilzerian's demand and spent approximately $130,000.00 to have the video professionally done in the manner Bilzerian wanted. Yet, once the video was complete and posted to STEEL's YouTube page, Bilzerian hardly, if ever, posted the video to any of his social media or otherwise endorsed it, instead pretending the video never existed.

104.   Since the effective date of the Agreement through the filing of this lawsuit, Bilzerian has endorsed a number of STEEL products. However, for a substantial amount of time, Bilzerian would only post about one of

24

STEEL's products, its VEG-PRO peanut butter protein powder.

105. STEEL requested that Bilzerian post about additional STEEL products at that time, but Bilzerian refused.

106. All conditions precedent to bringing this action have occurred, have been waived, or have otherwise been satisfied.

### G. Compensation Under the Agreement

107. Under the Agreement, the parties intended that Blitz would only receive a commission based on a percentage of certain categories of money actually received for the sale of STEEL products.

108. By way of example only, if a STEEL product had an MSRP of $100, but STEEL sold it for $50, Blitz would receive a commission based on the $50 actually received as opposed to what it was listed for sale before the discount.

109. To be sure, from the inception of the negotiations, beginning with the first draft of the Agreement, on February 27, 2017, the Agreement contained the following definition: "'Gross Profits' shall mean all **income** derived by STEEL SUPP from all sources, including but not limited, to the sale of products, services and related like items."

110. Several drafts of the Agreement were exchanged, between February 27, 2017 and March 7, 2017, and both parties made substantial edits in redline.

111.   But each draft used the word "income" to define the variable upon which the commissions were based.

112.   In a different section of the Agreement, section 4, the parties used the phrase "Gross Sales" when discussing the variable upon which commissions would be paid.

113.   Although section 4 used the phrase "Gross Sales" the definition section continued to use the phrase "Gross Profits." On March 7, 2017, at approximately 1:29 p.m. Eastern, Huh delivered a final "executable" copy of the Agreement to Blitz. That version contained the "Gross Profits" definition and referred to "income." Section 4 contained references to "Gross Sales."

114.   Then, later in the day on March 7, 2017, at approximately 4:42 p.m. Eastern, an agent of Blitz, David Vingiano ("Vingiano"), sent Huh a new copy of the Agreement, attached to the following message in an e-mail: "See attached for Dan's [Bilzerian] executed copy of the agreement. As we discussed, the only change I made was in section 1.6 to make the definition consistent with the language in section 4. Please send back your signed copy once you've had a chance to review."

115.   The new Agreement Blitz sent to STEEL replaced Section 1.6 with the following: "'Gross Sales' shall mean all sales derived by STEEL SUPPS from all sources, including but not limited, to the sale of products, services and related like items."

116.  At no time did Blitz and STEEL discuss making a substantive amendment to change the variable upon which commissions would be based from "income" (or money actually received for STEEL's products) to anything ("sales" or otherwise) that would include money not actually received for the sale of STEEL products.

117.  In any event, on March 7, 2017 at approximately 8:45 p.m. Eastern, STEEL's attorney sent Vingiano the executed copy of the Agreement-- signed by both Huh for STEEL and Bilzerian for Blitz-- containing the "income" definition. The email from STEEL's attorney attaching the Agreement stated: "Here is the Final Executed Contract with the language in the first paragraph we agreed on with the word "on-line" deleted. I would appreciate your having Dan [Bilzerian] initial that change proximate to where Jason's [Huh] initials are and returning a copy of the document to me."

118.  At 8:51 p.m. Eastern, on March 7, 2017, Vingiano sent STEEL's attorney an email stating: "Thanks Sandy. Do you have a number I can reach you at? There was one minor typo that I fixed earlier that was in the document Dan [Bilzerian] signed that didn't make it into this version. We can probably correct manually with an initial but wanted to discuss with you first."

119.  The following day, on March 8, 2017, at approximately 6:38 a.m.

27

Eastern, Vingiano sent STEEL's attorney an email stating: "As we discussed, attached is the executed document with the change on page 1 that corrects the previous typo. Dan [Bilzerian] has initialed all pages in the attached agreement. Can you send me back the final copy once Jason has initialed next to Dan [Bilzerian] on each page?"

120. The new Agreement contained a revision to Section 1.6, stating, "'Gross Sales' shall mean all sales derived by STEEL SUPPS from all sources, including but not limited, to the sale of products, services and related like items."

121. Huh initialed each page of the Agreement containing the "Gross Sales" language, but STEEL did not intend to make any substantive changes.

122. Rather, at most, STEEL was simply fixing a typo to conform inconsistent language.

## COUNT I – BREACH OF CONTRACT

123. This is an action for breach of contract.

124. STEEL reincorporates paragraphs 1 through 106 above, as if fully set forth herein.

125. Pursuant to the Agreement, Blitz agreed Bilzerian shall not promote, publicize or endorse any of STEEL's competitors, which are providers, sellers, manufacturers or distributors of bodybuilding supplements. *See* Agreement, § 3.1.1.

28

126. The Treigning Lab, Full Send, and Ignite sell, manufacture and/or distribute bodybuilding supplements, thereby competing with STEEL.

127. Blitz materially breached the Agreement by promoting, publicizing, and/or endorsing the services or products of STEEL competitors, The Treigning Lab, Full Send, and Ignite.

128. Pursuant to the Agreement, Blitz agreed Bilzerian would perform to the best of his skill and ability. *See* Agreement, § 3.1.2.

129. Since the Agreement was executed nearly four years ago, Bilzerian has posted about STEEL three (3) times on Facebook, fifteen (15) times on his Snapchat account (half of which were during the first year of the Agreement), twenty-four (24) times on Instagram, and once (1) on Twitter. Bilzerian's last Facebook and Twitter posts about STEEL came on October 3, 2019 and February 22, 2018, respectively.

130. In contrast, Bilzerian has posted about ZRO on Instagram alone at least eight (8) times since October 31, 2020.

131. Blitz has not ensured that Bilzerian provides the services to the best of his skill and ability and, accordingly, Blitz has breached the Agreement.

132. Pursuant to the Agreement, Bilzerian is required to promote, publicize and endorse STEEL's products through his social media sites, including Instagram and Facebook. *See* Agreement, § 3.1.

29

133. However, in addition to Instagram and Facebook accounts specifically mentioned by the Agreement, Bilzerian has other social media sites, including Twitter, Snapchat, and YouTube.

134. Since the Agreement was executed nearly four years ago, Bilzerian has posted about STEEL three (3) times on Facebook, fifteen (15) times on his Snapchat account (half of which were during the first year of the Agreement), twenty-four (24) times on Instagram, and once (1) on Twitter.

135. Bilzerian's last Facebook and Twitter posts about STEEL came on October 3, 2019 and February 22, 2018, respectively.

136. Bilzerian has *never* posted about STEEL on YouTube.

137. By Bilzerian failing to endorse STEEL on all his social media sites, Blitz is in breach of the Agreement.

138. Pursuant to the Agreement, Bilzerian is required to promote, publicize and endorse STEEL's products through his social media sites. *See* Agreement, § 3.1.2.

139. Under the Agreement, STEEL's products are defined as all products offered by STEEL relating to bodybuilding supplements. *See* Agreement, § 1.2.

140. Bilzerian limited his social media posts to only some of STEEL's products. For at least one stretch of time, Bilzerian refused to post about products other than STEEL's VEG-PRO peanut butter product.

30

141. When STEEL asked Bilzerian to post other STEEL bodybuilding supplement products, Bilzerian refused.

142. By Bilzerian failing to endorse all products offered by STEEL relating to bodybuilding supplements on his social media sites, Blitz is in breach of the Agreement.

143. As a result of Blitz's material breaches, STEEL incurred damages.

WHEREFORE, STEEL requests this Court issue judgment for damages in an amount to be proven at trial and disgorgement of profits, award attorneys' fees and costs pursuant to section 6 of the Agreement, and award any such other and further relief as this Court deems just and proper.

## COUNT II – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

144. This is an action for breach of the implied covenant of good faith and fair dealing.

145. STEEL reincorporates paragraphs 1 through 106 above, as if fully set forth herein.

146. Under Florida law, a covenant of good faith and fair dealing was implied in the Agreement.

147. Pursuant to the Agreement, Bilzerian was to promote STEEL through his social media, including Instagram and Facebook, by posting at

31

his discretion as far as content and amount. *See* Agreement, § 3.1.2.

148. While the contract afforded Blitz and, accordingly, Bilzerian, substantial discretion, Blitz nevertheless agreed that it would ensure that Bilzerian performs to the best of his skill and ability.

149. In addition to this express contractual requirement, Blitz also owed STEEL the duty to act in good faith.

150. Over the course of the Agreement, STEEL made substantial payments to Blitz for Bilzerian to endorse STEEL.

151. Since the Agreement was executed nearly four years ago, Bilzerian has posted about STEEL three times (3) on Facebook, fifteen (15) times on his Snapchat account (half of which were during the first year of the Agreement), twenty-four (24) times on Instagram, and once (1) on Twitter.

152. Bilzerian's last Facebook and Twitter posts about STEEL came on October 3, 2019 and February 22, 2018, respectively.

153. Bilzerian has *never* posted about STEEL on YouTube.

154. Bilzerian posted about some STEEL products, but not others, refusing during one stretch of time to post about anything other than STEEL's VEG-PRO peanut butter product.

155. Blitz breached the implied covenant by failing or refusing to discharge its contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence; but rather by a conscious and deliberate act,

32

which unfairly frustrated the agreed common purpose—to promote STEEL's brand.

156.   In doing so, Blitz capriciously contravened STEEL's reasonable contractual expectations and deprived STEEL of the benefits of the Agreement.

157.   Blitz breached express terms of the Agreement as a result of: (a) Bilzerian promoting, publicizing, and/or endorsing the services of products of STEEL competitors, The Treigning Lab, Full Send, and Ignite; (b) Bilzerian's failure to endorse STEEL on all his social media sites; (c) Bilzerian's failure to endorse all STEEL products; and (d) Blitz's failure to ensure Bilzerian performs to the best of his skill and ability.

158.   As a result, STEEL incurred damages.

WHEREFORE, STEEL requests this Court issue judgment for damages in an amount to be proven at trial and disgorgement of profits, award attorneys' fees and costs pursuant to section 6 of the Agreement, and award any such other and further relief as this Court deems just and proper.

## COUNT III – DECLARATORY JUDGMENT

159.   This is an action for declaratory relief.

160.   STEEL reincorporates paragraphs 1 through 106 above, as if fully set forth herein.

161.   STEEL seeks a declaration that the Agreement is terminated.

33

162. Section 2.2(i) of the Agreement allows STEEL to terminate under the following circumstances: if Bilzerian commits a criminal, wrongful, or immoral act which in STEEL's opinion would adversely affect its reputation, if Bilzerian dies or becomes incapacitated, or if Blitz is in material breach of the Agreement.

163. Blitz materially breached this Agreement as set forth herein, including by promoting competitors' products.

164. STEEL has issued written notice of the breach.

165. Bilzerian has also engaged in criminal, wrongful, and/or immoral acts that are adversely affecting STEEL's reputation as set forth herein, including by Bilzerian's creation of Ignite as a company offering for sale THC products, Bilzerian's misappropriation of Ignite funds to finance his lavish lifestyle, and Bilzerian's failure to comply with all FTC regulations.

166. STEEL has issued written notice of Bilzerian's criminal, wrongful, and/or immoral acts.

167. Alternatively, section 2.1 of the Agreement allows STEEL to terminate at will.

168. In relevant part, Section 2.1 provides that the term of the Agreement shall be for the contract period, unless the Agreement is terminated.

169. The contract period is defined as the period of time commencing

34

on the effective date and terminating upon either party providing thirty (30) days written notice of intent to terminate pursuant to Section 2.2.

170.   Under the plain language of Section 2.1, there is a distinct option for termination. Section 2.2. is not an exhaustive list of bases for termination.

171.   Because Section 2.2 constitutes a permissive and nonexclusive termination provision, the Agreement is terminable at-will.

172.   The Agreement is also terminable at will because it is indefinite. The conditions defined by the Agreement's termination provisions do not limit the duration of the Agreement or make its duration determinable in any real or concrete way.

173.   There is a bona fide, actual, present, practical need for the declaration.

174.   The claims at issue address some immunity, power, privilege, or right of the complaining party dependent on the facts or the law applicable to the facts.

175.   Blitz has, or reasonably may have, an actual, present, adverse, and antagonistic interest in the subject matter, either in fact or law.

176.   The antagonistic and adverse interests are all before the Court by proper process.

177.   The relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity.

35

WHEREFORE, STEEL requests this Court issue a declaratory judgment ruling the Agreement is terminated, award attorneys' fees and costs pursuant to section 6 of the Agreement, and award any such other and further relief as this Court deems just and proper.

## COUNT IV – DECLARATORY JUDGMENT

178. This is an action for declaratory relief.

179. STEEL reincorporates paragraphs 1 through 122 above, as if fully set forth herein.

180. STEEL seeks a declaration that the Agreement provided Blitz would receive a commission based on a percentage of STEEL's income received for the sale of STEEL products.

181. One version of the Agreement, which STEEL filed under seal, provides Blitz would receive a commission based on a percentage of STEEL's income.

182. However, another version of the Agreement, which Blitz filed under seal, provides Blitz would receive a commission based on a percentage of STEEL's sales. Leaving aside whether there may be an actual difference in the meaning of the two terms—income and sales—the parties intended that Blitz would only receive a commission based on a percentage of certain categories of money actually received—income—for the sale of STEEL products.

36

183.   In any event, upon information and belief, even using the "Gross Sales" definition, STEEL overpaid Blitz under the Agreement. By way of example only, STEEL compensated Blitz based on a percentage of total sales before subtracting line items such as discounts.

184.   There is a bona fide, actual, present, practical need for the declaration.

185.   The claims at issue address some immunity, power, privilege, or right of the complaining party dependent on the facts or the law applicable to the facts.

186.   Blitz has, or reasonably may have, an actual, present, adverse, and antagonistic interest in the subject matter, either in fact or law.

187.   The antagonistic and adverse interests are all before the Court by proper process.

188.   The relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity.

WHEREFORE, STEEL requests this Court issue a declaratory judgment ruling the Agreement provides Blitz would receive a commission based on a percentage of STEEL's income, award STEEL restitution in the amount it overpaid Blitz, award attorneys' fees and costs pursuant to section 6 of the Agreement, and award any such other and further relief as this Court deems just and proper.

5589398v6/33819-0002

## COUNT V – REFORMATION OF THE AGREEMENT BASED ON MUTUAL MISTAKE

189.   This is an alternative action for reformation.

190.   STEEL reincorporates paragraphs 1 through 122 above, as if fully set forth herein.

191.   A version of the Agreement, which STEEL filed under seal, provides Blitz would receive a commission based on a percentage of STEEL's income.

192.   However, another version of the Agreement, which Blitz filed under seal, provides Blitz would receive a commission based on a percentage of STEEL's sales.

193.   The parties bargained for and agreed Blitz would receive a commission based on a percentage of STEEL's income.

194.   The version of the Agreement providing Blitz would receive a commission based on a percentage of STEEL's sales is based on a mutual mistake due to either scrivener's error or inadvertence.

195.   The true intent of the parties was that Blitz would receive a commission based on a percentage of STEEL's income, not based on STEEL's sales.

WHEREFORE, STEEL requests this Court reform the Agreement to correctly state Blitz would be compensated based on a percentage of STEEL's

5589398v6/33819-0002

income, issue judgment for damages in an amount to be proven at trial, award STEEL restitution in the amount it overpaid Blitz based on payments to Blitz on commission of sales, award attorneys' fees and costs pursuant to section 6 of the Agreement, and award any such other and further relief as this Court deems just and proper.

## COUNT VI – REFORMATION OF THE AGREEMENT BASED ON UNILATERAL MISTAKE

196.   This is an alternative action for reformation.

197.   STEEL reincorporates paragraphs 1 through 122 above, as if fully set forth herein.

198.   A version of the Agreement, which STEEL filed under seal, provides Blitz would receive a commission based on a percentage of STEEL's income.

199.   However, another version of the Agreement, which Blitz filed under seal, provides Blitz would receive a commission based on a percentage of STEEL's sales.

200.   The version of the Agreement providing Blitz would receive a commission based on a percentage of STEEL's sales is based on STEEL's unilateral mistake and based on the inequitable conduct of Blitz.

201.   STEEL did not bargain for, and would not knowingly enter into, a version of the Agreement providing that Blitz would receive a commission

based on a percentage of STEEL's sales.

202.   Indeed, STEEL entered into a version of the Agreement that provided Blitz would be compensated based on a percentage of STEEL's income.

203.   Blitz was aware of STEEL's intent to enter into the Agreement based only on Blitz being compensated based on a percentage of STEEL's income.

204.   Knowing the parties' intention was to have STEEL compensate Blitz on a percentage of STEEL's income, Blitz took advantage of the situation and claimed payment should be based on sales in an effort to misguide STEEL into compensating Blitz based on sales.

WHEREFORE, STEEL requests this Court reform the Agreement to correctly state Blitz would be compensated based on a percentage of STEEL's income, issue judgment for damages in an amount to be proven at trial, award STEEL restitution in the amount it overpaid Blitz based on payments to Blitz on commission of sales, award attorneys' fees and costs pursuant to section 6 of the Agreement, and award any such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Jason P. Stearns
Jason P. Stearns
Florida Bar No. 59550

Sarah A. Gottlieb
Florida Bar No. 125232
**FREEBORN & PETERS LLP**
201 North Franklin Street, Suite 3550
Tampa, FL 33602
Phone: 813-488-2920
Fax: 813-488-2960
E-mail: jstearns@freeborn.com
E-mail: sgottlieb@freeborn.com
Secondary E-mail:
ckitchell@freeborn.com
mbennett@freeborn.com

Brian D. Goodrich
Florida Bar No. 106948
**BENTLEY LAW, P.A.**
783 S. Orange Ave., Third Floor
Sarasota, FL 34239
Phone: 941-556-9030
Fax: 941-312-5316
E-mail:
bgoodrich@thebentleylawfirm.com
Secondary:
jbradley@thebentleylawfirm.com

*Attorneys for Plaintiff Steel
Supplements, Inc.*

41

# COMPOSITE EXHIBIT B –

# FILED UNDER SEAL

# COMPOSITE

# EXHIBIT C



# BENTLEY LAW
### A COMMERCIAL LITIGATION LAW FIRM

| MORGAN R. BENTLEY | JILL M. BOWEN | CAROLEEN B. BREJ | BRIAN D. GOODRICH | JENNIFER L. GROSSO | AMANDA R. KISON | DAVID A. WALLACE |
| --- | --- | --- | --- | --- | --- | --- |
| Board Certified Business Litigation | | | | | Board Certified Business Litigation | Board Certified Appellate Law and Fla. Certified Mediator |

June 21, 2021

Ignite International Ltd.
KPS Leslie, LLC
c/o Kimberly P. Stein, Esq.
Flangas Law Group
3275 South Jones Boulevard
Suite 105
Las Vegas, Nevada 89146

Re:   Steel Supplements, Inc. v. Blitz NV, LLC
      Case No. 8:20-cv-2971-T-02AEP – US District Court for the Middle District of Florida
      Subpoena for Non-Party Production Without Deposition

Dear Ms. Stein:

Our office represents Steel Supplements, Inc. in the above-referenced matter. Ignite International Ltd. may have documents that relate to the underlying issues that preceded this litigation. You are, therefore, being served with the enclosed Subpoena to Produce Documents, Electronically Stored Information, or Tangible Things (the "Subpoena").

In lieu of appearing at the location listed on the Subpoena, you may comply with the Subpoena by producing the responsive documents by electronic means. To do so, please contact me to coordinate the electronic transfer/ delivery.

The Subpoena does not require the deposition of Ignite Internationals' Corporate Representative at this time, however, we intend to schedule same in the near future. Please contact us—or, if you are represented by an attorney, please have him or her contact us—to schedule a mutually agreeable date and time for the deposition.

Please also do not hesitate to contact me if you have any questions or concerns regarding your requirements, the Subpoena requests, or the options for delivering them.

Thank you.

Brian D. Goodrich
For the Firm

BDG:jmb

cc:   Sarah Gottlieb, Esq.
      Jason Stearns, Esq.



FREEBORN & PETERS LLP

## Standard Delivery Specifications

# Requested File Formats

TIFF images – Named according to bates number.  Paper or any hard copy documents.

TIFF images - Named according to bates number.  Electronically stored information including, but not limited to:  email, office documents - word processing (MS Word etc), presentation (MS PowerPoint – include notes with slides etc), Adobe PDFs, images (gif, jpg, tif etc), Engineering output files etc.  If any file type does not render properly as a TIFF image, the native file may be required to be produced.  Additional relevant file types identified during discovery may also be requested upon detection; production format will be determined based on file type.  For Office documents that use dynamic fields to display date/time when a document is opened, the field code should be displayed  instead of the date/time value when converting to TIFF image.

Native format - Named according to bates number and if appropriate a separator character and a confidentiality designation (eg.  FPW0000001^AttorneysEyesOnly.xls).  Includes spreadsheets (MS Excel etc).  Native files must have, in addition to the data load file, a separate load file which contains two fields; the bates number (FPW0000001) and the "relative path\file name" to the native file.  Native files that need redactions will be produced as TIFF images with redactions.

Database and statistical software applications – reports from applications to TIFF images may be acceptable.  If not, access to native data and application may be necessary.

# Deduplication

Global deduplication across the case using MD5Hash value.  Loose e-docs should not be dedupped out by the same file that is an email attachment.  Email attachments should not be dedupped out by the same file that is a loose edoc.

If duplicate information is needed for a set of files, a duplicate load file will be provided.  This load file will contain the bates number of the original document and a duplicate field that contains every unique instance of where the duplicate files existed.  This duplicate field will be in the format:

Doe_John:  <cr>
Doe_John:  <cr>
Doe_Jane:  <cr>
Doe_Fred:  <cr>

# Data Format

All appended data must be delivered in a delimited ASCII text file format and needs to be named "CDVolume.DAT". Default Concordance delimiters will be used.
• Field separator (comma) = ☐ (020)
• Quote Character = þ (254)
• Newline = ® (174)
• Multi-entry = ; Semicolon
• Field names as the first line in the data file

## Fields Captured in Data Load File (.DAT)

### Scanning/Coding of Paper Documents

• **BEGBATES** – first page of document
• **ENDBATES** – last page of document
• **BEGATTACH** – unique value populated for all records in attachment group
• **CUSTODIAN**
• **DATE**  - (MM/DD/YYYY) date of document
• **OCR\*\*** – multi-page text

### E-Discovery Documents / Email and Attachments or Electronic Documents

• **BEGBATES** – first page of document
• **ENDBATES** – last page of document
• **BEGATTACH** – unique value populated for all records in group, parent and attachments
• **CUSTODIAN**
• **DATESENT** – (MM/DD/YYYY) date sent for email  (GMT)
• **TIMESENT** – time sent for email  (GMT)
• **SUBJECT** – subject of email
• **FROM** – individual who sent the email
• **TO** – list of individuals who received the email
• **CC** – list of individuals who were carbon copied in the email
• **BCC** – list of individuals who were blind carbon copied in the email
• **FILENAME** – file name of electronic document including file extension
• **MD5 Hash Value** - 32-character hexadecimal number
• **AUTHOR** – individual created electronic document (non-email)
• **DATECREATED** – (MM/DD/YYYY) date document was created (GMT) (non-email)
• **TIMECREATED** – time document was created (GMT)  (non-email)
• **LASTDATE MODIFIED** -- (MM/DD/YYYY) date document was last modified (GMT) (non-email)
• **LASTTIME MODIFIED** – time document was last modified (GMT) (non-email)

**TEXT** – actual extracted text from native files during e-discovery processing.  OCR'd text only if from image based documents.  The text must be provided in a separate text file that is named by the "batesnumber.txt" (one multi-page text file per document).  Text files should be in a folder called TEXT on the CD/DVD.

# Image Format
• Single Page, Black & White Group IV TIF, 300 DPI
• Bates prefix: XXX
• Bates beginning numeric suffix: 0000001 (**numeric suffix will be 7 characters**)
• Volume ID: XXX001
• Alias in Opticon load file must match the bates number

**Opticon Load File Format**
The Opticon load file format is a text-delimited file (.LOG) containing all information necessary to link the imagebase with the database. There is one line entry per image file, whether it is a single-page or multi-page image file. The load file consists of seven delimited entries as follows (Folder Break and Box Break can be left blank – see example below):

**ALIAS,VOLUME,PATH,DOC_BREAK,FOLDER_BREAK,BOX_BREAK,PAGES**

ALIAS — Should match your image key from the Concordance database. Concordance stores this key in order to reference the image.
VOLUME — This entry is the name of the volume where the image resides. This is typically the volume name of a CD or server.
PATH — This is the full path and file name (and extension) of the image.  A default of D:\ will used for the path
DOC_BREAK — Enter a 'Y' to denote whether this image marks the beginning of a document.
FOLDER_BREAK — Enter a 'Y' to denote whether this image marks the beginning of a folder. (Optional)
BOX_BREAK — Enter a 'Y' to denote whether this image marks the beginning of a box. (Not supported)
PAGES — This entry is the number of pages associated with the image. (Optional)

**Opticon Load File Example**
The following is a 9-image load file example. It details 2 documents; the first relates to the image key HI000001 and contains 4 pages. The second begins at HI000005 and contains 5 images.

     HI000001,VOLUME1,G:\SAMPLE\IMAGES\001\00000001.TIF,Y,,,4
     HI000002,VOLUME1,G:\SAMPLE\IMAGES\001\00000002.TIF,,,,
     HI000003,VOLUME1,G:\SAMPLE\IMAGES\001\00000003.TIF,,,,
     HI000004,VOLUME1,G:\SAMPLE\IMAGES\001\00000004.TIF,,,,
     HI000005,VOLUME1,G:\SAMPLE\IMAGES\001\00000005.TIF,Y,,,5
     HI000006,VOLUME1,G:\SAMPLE\IMAGES\001\00000006.TIF,,,,
     HI000007,VOLUME1,G:\SAMPLE\IMAGES\001\00000007.TIF,,,,
     HI000008,VOLUME1,G:\SAMPLE\IMAGES\001\00000008.TIF,,,,
     HI000009,VOLUME1,G:\SAMPLE\IMAGES\001\00000009.TIF,,,,

# Media delivery

**CD/DVD Label:** Case caption, Volume ID, number of documents, number of images, Bates range, date of production

**CD/DVD Structure:** Folder matching Volume ID (on root of CD), the following data inside Volume ID folder:

- Image folder (containing all image subfolders and images). Each subfolder to contain a maximum of 500 images
- Text folder.
- .DAT file
- .LOG file

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Middle District of Florida

STEEL SUPPLEMENTS, INC. )
_____ )
*Plaintiff* )
v. ) Civil Action No.   8:20-CV-2971-T-02-AEP
BLITZ NV, LLC )
_____ )
*Defendant* )

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                          IGNITE INTERNATIONAL, LTD.
_____
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  Please see Exhibit A attached hereto.

| Place: Litigation Services & Technologies 3960 Howard Hughes Parkway, Suite 700 Las Vegas, Nevada 89169 | Date and Time: 07/19/2021 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    06/21/2021

                    *CLERK OF COURT*
                                              OR
                                              Brian D. Goodrich /s/
    _____              _____
    *Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Steel Supplements ,Inc. _____ , who issues or requests this subpoena, are:

Brian D. Goodrich, Esq., 783 S. Orange Ave.,Sarasota, Fl. bgoodrich@thebentleylawfirm.com (941)556-9030

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.    8:20-CV-2971-T-02-AEP

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____                 _____
                                                             *Server's signature*

                                                     _____
                                                             *Printed name and title*

                                                     _____
                                                             *Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT A TO IGNITE INTERNATIONAL, LTD SUBPOENA

Pursuant to Federal Rule of Civil Procedure 45, Plaintiff STEEL SUPPLEMENTS, INC., requests that you produce for inspection at Litigation Services & Technologies, 3960 Howard Hughes Parkway, Suite 700, Las Vegas, Nevada 89169, the following categories of documents and things within twenty-one (21) days.

### DEFINITIONS AND INSTRUCTIONS

1.      The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

2.      The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise). When a communication is in written or electronic format, the communication is a document.

3.      The terms "all," "any," and "each" shall each be construed as encompassing any and all.

4.      The terms "concerning" or "reflecting" or "referring to" or "relating to" or "related to" means directly or indirectly concerns, consists of, discusses, describes, reflects, sets forth, refers to, or to be in any way legally, logically, or factually connected with the matter discussed.

5.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

6.      The use of the singular form of any word includes the plural and vice versa.

7.      "Including" means including but not limited to.

8.      "Person" means and includes any natural individual acting in any capacity whatsoever and any entity or organization, including, without limitation, a corporation,

1

partnership, joint venture, firm, trust, group, association, or governmental agency, and any division, department or other unit thereof.

9.      "Third party" means any Person other than You, Blitz, or STEEL.

10.     The term "Ignite" means Ignite International, Ltd. and its related companies, including but not limited to Ignite International Brands, Ltd., Ignite Brands, LLC, Ignite Distribution, LLC, Ignite Distribution Company, Inc., Ignite Beverages, Inc., Ignite Spirits, Inc., and Ignite Nootropics, LLC, as well as any and all of their shareholders, directors, officers, members, managers, employees, independent contractors, agents, or anyone else acting or purporting to act on their behalves.

11.     The term "You" means Ignite.

12.     The term "Bilzerian" means Dan Bilzerian.

13.     The terms "Blitz" or "Defendant" mean BLITZ NV, LLC, its shareholders, directors, officers, members, managers, employees, independent contractors, agents, or anyone else acting or purporting to act on its behalf, including but not limited to Bilzerian.

14.     The term "STEEL" means STEEL Supplements, Inc.

15.     The term "ZRO beverage" means the ZRO By Ignite Ltd. drink, including any and all flavors of the same.

16.     Unless otherwise noted in a specific request, the time period covered by these requests is March 7, 2017, to the date of your response.

17.     The term "Electronically Stored Information" or "ESI" includes, without limitation, the following:

     a.   information that is generated, received, processed and recorded by computers and other electronic devices;

     b.   internal or external web sites;

2

c.  output resulting from the use of any software program, including, without limitation, word-processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, personal electronic mail used at any time for business purposes, instant messaging programs, bulletin-board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, a deleted file, or file fragment;

d.  activity listings of electronic mail receipts and/or transmittals; and

e.  all items stored on computer memories, hard disks, floppy disks, CD-ROM, magnetic tape, microfiche, or in any other vehicle for digital data storage or transmittal, such as, but not limited to, a personal digital assistant, e.g., iPhone, iPad, iTouch, Palm Smart Phone, Blackberry, or similar device, and file-folder tabs, or containers and labels appended to, or relating to, any physical storage device associated with each original or copy of all documents requested herein.

18.    Pursuant to Federal Rule of Civil Procedure 45(e), you must produce the documents as follows:

a.  if the requested documents are maintained in a paper file, the requested documents must be produced as they are kept in the ordinary course of business or must be organized and labeled to correspond with each document request to which they are submitted as being responsive.

b.  if the requested documents are maintained in electronic form, as defined in paragraph 17 above, the requested documents must be produced as native files, with metadata preserved, and without any additional processing, in accordance with the Standard Delivery Specifications attached hereto.

3

19.     You may produce the documents responsive to these requests either in person or by email, file share, thumb drive, or other electronic means. Production by electronic means is encouraged and preferred. If you wish to produce the responsive documents by electronic means, please contact the attorney who issued this subpoena to coordinate the electronic transfer/delivery.

## REQUESTS

1. Documents and/or communication relating to STEEL.

2. Documents and/or communication relating to Blitz and/or Bilzerian's promotion, endorsement, marketing, advertising, or publication of the ZRO beverage.

3. Documents and/or communication relating to the promotion, endorsement, marketing, advertising, or publication of the ZRO beverage that include Bilzerian's name, image, or likeness.

4. Documents sufficient to show Your organizational structure.

5. Social media content, including but not limited to videos, posts, stories, comments, and likes relating to the ZRO beverage.

6. Documents and/or communication sufficient to show the amount Bilzerian has been compensated in connection with the ZRO beverage.

7. Documents and/or communication sufficient to show the amount Blitz has been compensated in connection with the ZRO beverage.

8. Documents and/or communication marketing the ZRO beverage as a pre-workout, workout, or after-workout beverage.

9. Documents and/or communication mentioning the ZRO beverage in connection with performance.

10. Documents and/or communication mentioning the ZRO beverage in connection with health or fitness.

4

11. Documents and/or communication showing the target audience or demographic for sales of the ZRO beverage.

12. Documents and/or communication relating to the concept for the ZRO beverage.

13. Documents and/or communication relating to the development of the ZRO beverage.

14. Documents and/or communication relating to the determination of the price point for the ZRO beverage.

15. Documents and/or communication sufficient to show where the ZRO beverage is sold.

16. Documents and/or communication relating to the lawsuit styled *Heffernan v. Ignite International, Ltd. et al.* pending in the Superior Court for the State of California, County of Los Angeles, in which Bilzerian is alleged to have misappropriated Your funds.

17. Communication to or from the Federal Trade Commission relating to Bilzerian's promotion, endorsement, marketing, advertising, or publicizing of any of Your products.

18. Documents and/or communication sufficient to show all of Ignite's cannabis-related products for sale or previously for sale in Canada.

19. Documents and/or communication sufficient to show all of Ignite's cannabis-related products for sale or previously for sale in the United States.



# BENTLEY LAW

### A COMMERCIAL LITIGATION LAW FIRM

MORGAN R. BENTLEY    JILL M. BOWEN    CAROLEEN B. BREJ    BRIAN D. GOODRICH    JENNIFER L. GROSSO    AMANDA R. KISON    DAVID A. WALLACE
Board Certified Business Litigation                                                                                                    Board Certified Business Litigation    Board Certified Appellate Law
                                                                                                                                                                             and Fla. Certified Mediator

June 21, 2021

Ignite Beverages, Inc.
c/o A Registered Agent, Inc.
Its Registered Agent
8 The Green
Suite A
Dover, Delaware 19901

Re:    Steel Supplements, Inc. v. Blitz NV, LLC
       Case No. 8:20-cv-2971-T-02AEP - US District Court for the Middle District of Florida
       Subpoena for Non-Party Production Without Deposition

Dear Sir or Madam:

Our office represents Steel Supplements, Inc. in the above-referenced matter. Ignite Beverages, Inc., may have documents that relate to the underlying issues that preceded this litigation. You are, therefore, being served with the enclosed Subpoena to Produce Documents, Electronically Stored Information, or Tangible Things (the "Subpoena").

In lieu of appearing at the location listed on the Subpoena, you may comply with the Subpoena by producing the responsive documents by electronic means. To do so, please contact me to coordinate the electronic transfer/delivery.

The Subpoena does not require the deposition of Ignite Beverages' Corporate Representative at this time, however, we intend to schedule same in the near future. Please contact us—or, if you are represented by an attorney, please have him or her contact us—to schedule a mutually agreeable date and time for the deposition.

Please also do not hesitate to contact me if you have any questions or concerns regarding your requirements, the Subpoena requests, or the options for delivering them.

Thank you.

Brian D. Goodrich
For the Firm

BDG:jmb

cc:    Sarah Gottlieb, Esq.
       Jason Stearns, Esq.



FREEBORN & PETERS LLP

## Standard Delivery Specifications

## Requested File Formats

TIFF images – Named according to bates number. Paper or any hard copy documents.

TIFF images - Named according to bates number. Electronically stored information including, but not limited to: email, office documents - word processing (MS Word etc), presentation (MS PowerPoint – include notes with slides etc), Adobe PDFs, images (gif, jpg, tif etc), Engineering output files etc. If any file type does not render properly as a TIFF image, the native file may be required to be produced. Additional relevant file types identified during discovery may also be requested upon detection; production format will be determined based on file type. For Office documents that use dynamic fields to display date/time when a document is opened, the field code should be displayed instead of the date/time value when converting to TIFF image.

Native format - Named according to bates number and if appropriate a separator character and a confidentiality designation (eg. FPW0000001^AttorneysEyesOnly.xls). Includes spreadsheets (MS Excel etc). Native files must have, in addition to the data load file, a separate load file which contains two fields; the bates number (FPW0000001) and the "relative path\file name" to the native file. Native files that need redactions will be produced as TIFF images with redactions.

Database and statistical software applications – reports from applications to TIFF images may be acceptable. If not, access to native data and application may be necessary.

## Deduplication

Global deduplication across the case using MD5Hash value. Loose e-docs should not be dedupped out by the same file that is an email attachment. Email attachments should not be dedupped out by the same file that is a loose edoc.

If duplicate information is needed for a set of files, a duplicate load file will be provided. This load file will contain the bates number of the original document and a duplicate field that contains every unique instance of where the duplicate files existed. This duplicate field will be in the format:

Doe_John: <cr>
Doe_John: <cr>
Doe_Jane: <cr>
Doe_Fred: <cr>

# Data Format

All appended data must be delivered in a delimited ASCII text file format and needs to be named "CDVolume.DAT". Default Concordance delimiters will be used.
- Field separator (comma) = □ (020)
- Quote Character = þ (254)
- Newline = ® (174)
- Multi-entry = ; Semicolon
- Field names as the first line in the data file

## Fields Captured in Data Load File (.DAT)

### Scanning/Coding of Paper Documents

- **BEGBATES** – first page of document
- **ENDBATES** – last page of document
- **BEGATTACH** – unique value populated for all records in attachment group
- **CUSTODIAN**
- **DATE -** (MM/DD/YYYY) date of document
- **OCR**\*\* – multi-page text

### E-Discovery Documents / Email and Attachments or Electronic Documents

- **BEGBATES** – first page of document
- **ENDBATES** – last page of document
- **BEGATTACH** – unique value populated for all records in group, parent and attachments
- **CUSTODIAN**
- **DATESENT** – (MM/DD/YYYY) date sent for email  (GMT)
- **TIMESENT** – time sent for email  (GMT)
- **SUBJECT** – subject of email
- **FROM** – individual who sent the email
- **TO** – list of individuals who received the email
- **CC** – list of individuals who were carbon copied in the email
- **BCC** – list of individuals who were blind carbon copied in the email
- **FILENAME** – file name of electronic document including file extension
- **MD5 Hash Value** - 32-character hexadecimal number
- **AUTHOR** – individual created electronic document (non-email)
- **DATECREATED** – (MM/DD/YYYY) date document was created (GMT) (non-email)
- **TIMECREATED** – time document was created (GMT)  (non-email)
- **LASTDATE MODIFIED** – (MM/DD/YYYY) date document was last modified (GMT) (non-email)
- **LASTTIME MODIFIED** – time document was last modified (GMT) (non-email)

**TEXT** – actual extracted text from native files during e-discovery processing.  OCR'd text only if from image based documents.  The text must be provided in a separate text file that is named by the "batesnumber.txt" (one multi-page text file per document).  Text files should be in a folder called TEXT on the CD/DVD.

# Image Format
- Single Page, Black & White Group IV TIF, 300 DPI
- Bates prefix: XXX
- Bates beginning numeric suffix: 0000001 (**numeric suffix will be 7 characters**)
- Volume ID:  XXX001
- Alias in Opticon load file must match the bates number

## Opticon Load File Format
The Opticon load file format is a text-delimited file (.LOG) containing all information necessary to link the imagebase with the database. There is one line entry per image file, whether it is a single-page or multi-page image file. The load file consists of seven delimited entries as follows (Folder Break and Box Break can be left blank – see example below):

**ALIAS,VOLUME,PATH,DOC_BREAK,FOLDER_BREAK,BOX_BREAK,PAGES**

ALIAS — Should match your image key from the Concordance database. Concordance stores this key in order to reference the image.
VOLUME — This entry is the name of the volume where the image resides. This is typically the volume name of a CD or server.
PATH — This is the full path and file name (and extension) of the image.  A default of D:\ will used for the path
DOC_BREAK — Enter a 'Y' to denote whether this image marks the beginning of a document.
FOLDER_BREAK — Enter a 'Y' to denote whether this image marks the beginning of a folder. (Optional)
BOX_BREAK — Enter a 'Y' to denote whether this image marks the beginning of a box. (Not supported)
PAGES — This entry is the number of pages associated with the image. (Optional)

## Opticon Load File Example
The following is a 9-image load file example. It details 2 documents; the first relates to the image key HI000001 and contains 4 pages. The second begins at HI000005 and contains 5 images.

```
HI000001,VOLUME1,G:\SAMPLE\IMAGES\001\00000001.TIF,Y,,,4
HI000002,VOLUME1,G:\SAMPLE\IMAGES\001\00000002.TIF,,,,
HI000003,VOLUME1,G:\SAMPLE\IMAGES\001\00000003.TIF,,,,
HI000004,VOLUME1,G:\SAMPLE\IMAGES\001\00000004.TIF,,,,
HI000005,VOLUME1,G:\SAMPLE\IMAGES\001\00000005.TIF,Y,,,5
HI000006,VOLUME1,G:\SAMPLE\IMAGES\001\00000006.TIF,,,,
HI000007,VOLUME1,G:\SAMPLE\IMAGES\001\00000007.TIF,,,,
HI000008,VOLUME1,G:\SAMPLE\IMAGES\001\00000008.TIF,,,,
HI000009,VOLUME1,G:\SAMPLE\IMAGES\001\00000009.TIF,,,,
```

## Media delivery

**CD/DVD Label:** Case caption, Volume ID, number of documents, number of images, Bates range, date of production

**CD/DVD Structure:** Folder matching Volume ID (on root of CD), the following data inside Volume ID folder:

- Image folder (containing all image subfolders and images). Each subfolder to contain a maximum of 500 images
- Text folder.
- .DAT file
- .LOG file

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Middle District of Florida

| | | |
|---|---|---|
| STEEL SUPPLEMENTS, INC. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   8:20-CV-2971-T-02-AEP |
| BLITZ NV, LLC | ) | |
| | ) | |
| *Defendant* | ) | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                IGNITE BEVERAGES, INC.

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:   Please see Exhibit A attached hereto.

| Place: Veritext - Delaware<br>300 Delaware Avenue, Suite 815<br>Wilmington, Delaware 19801 | Date and Time:<br>07/19/2021 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

      The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    06/22/2021

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | Brian D. Goodrich /s/ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Steel Supplements ,Inc.                                  , who issues or requests this subpoena, are:

Brian D. Goodrich, Esq., 783 S. Orange Ave.,Sarasota, Fl. bgoodrich@thebentleylawfirm.com (941)556-9030

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 8:20-CV-2971-T-02-AEP

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
  **(A) Appearance Not Required.** A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B) Objections.** A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**
  **(A) When Required.** On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B) When Permitted.** To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C) Specifying Conditions as an Alternative.** In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
  **(A) Documents.** A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B) Form for Producing Electronically Stored Information Not Specified.** If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C) Electronically Stored Information Produced in Only One Form.** The person responding need not produce the same electronically stored information in more than one form.
  **(D) Inaccessible Electronically Stored Information.** The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
  **(A) Information Withheld.** A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B) Information Produced.** If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT A TO IGNITE BEVERAGES, INC. SUBPOENA

Pursuant to Federal Rule of Civil Procedure 45, Plaintiff STEEL SUPPLEMENTS, INC., requests that you produce for inspection at Veritext – Delaware, 300 Delaware Avenue, Suite 815, Wilmington, Delaware 19801, the following categories of documents and things within twenty-one (21) days.

### DEFINITIONS AND INSTRUCTIONS

1.      The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

2.      The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise). When a communication is in written or electronic format, the communication is a document.

3.      The terms "all," "any," and "each" shall each be construed as encompassing any and all.

4.      The terms "concerning" or "reflecting" or "referring to" or "relating to" or "related to" means directly or indirectly concerns, consists of, discusses, describes, reflects, sets forth, refers to, or to be in any way legally, logically, or factually connected with the matter discussed.

5.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

6.      The use of the singular form of any word includes the plural and vice versa.

7.      "Including" means including but not limited to.

8.      "Person" means and includes any natural individual acting in any capacity whatsoever and any entity or organization, including, without limitation, a corporation,

1

partnership, joint venture, firm, trust, group, association, or governmental agency, and any division, department or other unit thereof.

9.     "Third party" means any Person other than You, Blitz, or STEEL.

10.    The term "Ignite" means Ignite Beverages, Inc. and its related companies, including but not limited to Ignite International, Ltd., Ignite International Brands, Ltd., Ignite Brands, LLC, Ignite Distribution, LLC, Ignite Distribution Company, Inc., Ignite Spirits, Inc., and Ignite Nootropics, LLC, as well as any and all of their shareholders, directors, officers, members, managers, employees, independent contractors, agents, or anyone else acting or purporting to act on their behalves.

11.    The term "You" means Ignite.

12.    The term "Bilzerian" means Dan Bilzerian.

13.    The terms "Blitz" or "Defendant" mean BLITZ NV, LLC, its shareholders, directors, officers, members, managers, employees, independent contractors, agents, or anyone else acting or purporting to act on its behalf, including but not limited to Bilzerian.

14.    The term "STEEL" means STEEL Supplements, Inc.

15.    The term "ZRO beverage" means the ZRO By Ignite Ltd. drink, including any and all flavors of the same.

16.    Unless otherwise noted in a specific request, the time period covered by these requests is March 7, 2017, to the date of your response.

17.    The term "Electronically Stored Information" or "ESI" includes, without limitation, the following:

    a.  information that is generated, received, processed and recorded by computers and other electronic devices;

    b.  internal or external web sites;

2

c.  output resulting from the use of any software program, including, without limitation, word-processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, personal electronic mail used at any time for business purposes, instant messaging programs, bulletin-board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, a deleted file, or file fragment;

d.  activity listings of electronic mail receipts and/or transmittals; and

e.  all items stored on computer memories, hard disks, floppy disks, CD-ROM, magnetic tape, microfiche, or in any other vehicle for digital data storage or transmittal, such as, but not limited to, a personal digital assistant, e.g., iPhone, iPad, iTouch, Palm Smart Phone, Blackberry, or similar device, and file-folder tabs, or containers and labels appended to, or relating to, any physical storage device associated with each original or copy of all documents requested herein.

18.   Pursuant to Federal Rule of Civil Procedure 45(e), you must produce the documents as follows:

a.  if the requested documents are maintained in a paper file, the requested documents must be produced as they are kept in the ordinary course of business or must be organized and labeled to correspond with each document request to which they are submitted as being responsive.

b.  if the requested documents are maintained in electronic form, as defined in paragraph 17 above, the requested documents must be produced as native files, with metadata preserved, and without any additional processing, in accordance with the Standard Delivery Specifications attached hereto.

3

19.    You may produce the documents responsive to these requests either in person or by email, file share, thumb drive, or other electronic means. Production by electronic means is encouraged and preferred. If you wish to produce the responsive documents by electronic means, please contact the attorney who issued this subpoena to coordinate the electronic transfer/delivery.

## REQUESTS

1. Documents and/or communication relating to STEEL.

2. Documents and/or communication relating to Blitz and/or Bilzerian's promotion, endorsement, marketing, advertising, or publication of the ZRO beverage.

3. Documents and/or communication relating to the promotion, endorsement, marketing, advertising, or publication of the ZRO beverage that include Bilzerian's name, image, or likeness.

4. Documents sufficient to show Your organizational structure.

5. Social media content, including but not limited to videos, posts, stories, comments, and likes relating to the ZRO beverage.

6. Documents and/or communication sufficient to show the amount Bilzerian has been compensated in connection with the ZRO beverage.

7. Documents and/or communication sufficient to show the amount Blitz has been compensated in connection with the ZRO beverage.

8. Documents and/or communication marketing the ZRO beverage as a pre-workout, workout, or after-workout beverage.

9. Documents and/or communication mentioning the ZRO beverage in connection with performance.

10. Documents and/or communication mentioning the ZRO beverage in connection with health or fitness.

4

11. Documents and/or communication showing the target audience or demographic for sales of the ZRO beverage.

12. Documents and/or communication relating to the concept for the ZRO beverage.

13. Documents and/or communication relating to the development of the ZRO beverage.

14. Documents and/or communication relating to the determination of the price point for the ZRO beverage.

15. Documents and/or communication sufficient to show where the ZRO beverage is sold.

16. Documents and/or communication relating to the lawsuit styled *Heffernan v. Ignite International, Ltd. et al.* pending in the Superior Court for the State of California, County of Los Angeles, in which Bilzerian is alleged to have misappropriated Your funds.

17. Communication to or from the Federal Trade Commission relating to Bilzerian's promotion, endorsement, marketing, advertising, or publicizing of any of Your products.

18. Documents and/or communication sufficient to show all of Ignite's cannabis-related products for sale or previously for sale in Canada.

19. Documents and/or communication sufficient to show all of Ignite's cannabis-related products for sale or previously for sale in the United States.

# BENTLEY LAW

### A COMMERCIAL LITIGATION LAW FIRM

| MORGAN R. BENTLEY | JILL M. BOWEN | CAROLEEN B. BREJ | BRIAN D. GOODRICH | JENNIFER L. GROSSO | AMANDA R. KISON | DAVID A. WALLACE |
|---|---|---|---|---|---|---|
| Board Certified Business Litigation | | | | | Board Certified Business Litigation | Board Certified Appellate Law and Fla. Certified Mediator |

June 21, 2021

Ignite Brands, LLC
Legalinc Corporate Services, Inc.
2035 Sunset Lake Road
Suite B-2
Newark, Delaware 19702

Re:     Steel Supplements, Inc. v. Blitz NV, LLC
        Case No. 8:20-cv-2971-T-02AEP - US District Court for the Middle District of Florida
        Subpoena for Non-Party Production Without Deposition

Dear Sir or Madam:

Our office represents Steel Supplements, Inc. in the above-referenced matter. Ignite Brands, LLC, may have documents that relate to the underlying issues that preceded this litigation. You are, therefore, being served with the enclosed Subpoena to Produce Documents, Electronically Stored Information, or Tangible Things (the "Subpoena").

In lieu of appearing at the location listed on the Subpoena, you may comply with the Subpoena by producing the responsive documents by electronic means. To do so, please contact me to coordinate the electronic transfer/ delivery.

The Subpoena does not require the deposition of Ignite Brands' Corporate Representative at this time, however, we intend to schedule same in the near future. Please contact us—or, if you are represented by an attorney, please have him or her contact us—to schedule a mutually agreeable date and time for the deposition.

Please also do not hesitate to contact me if you have any questions or concerns regarding your requirements, the Subpoena requests, or the options for delivering them.

Thank you.

Brian D. Goodrich
For the Firm

BDG:jmb

cc:     Sarah Gottlieb, Esq.
        Jason Stearns, Esq.



**FREEBORN & PETERS LLP**

## <u>Standard Delivery Specifications</u>

# Requested File Formats

TIFF images – Named according to bates number.  Paper or any hard copy documents.

TIFF images - Named according to bates number.  Electronically stored information including, but not limited to: email, office documents - word processing (MS Word etc), presentation (MS PowerPoint – include notes with slides etc), Adobe PDFs, images (gif, jpg, tif etc), Engineering output files etc.  If any file type does not render properly as a TIFF image, the native file may be required to be produced.  Additional relevant file types identified during discovery may also be requested upon detection; production format will be determined based on file type.  For Office documents that use dynamic fields to display date/time when a document is opened, the field code should be displayed  instead of the date/time value when converting to TIFF image.

Native format - Named according to bates number and if appropriate a separator character and a confidentiality designation (eg. FPW0000001^AttorneysEyesOnly.xls).  Includes spreadsheets (MS Excel etc).  Native files must have, in addition to the data load file, a separate load file which contains two fields; the bates number (FPW0000001) and the "relative path\file name" to the native file.  Native files that need redactions will be produced as TIFF images with redactions.

Database and statistical software applications – reports from applications to TIFF images may be acceptable.  If not, access to native data and application may be necessary.

# Deduplication

Global deduplication across the case using MD5Hash value.  Loose e-docs should not be dedupped out by the same file that is an email attachment.  Email attachments should not be dedupped out by the same file that is a loose edoc.

If duplicate information is needed for a set of files, a duplicate load file will be provided.  This load file will contain the bates number of the original document and a duplicate field that contains every unique instance of where the duplicate files existed.  This duplicate field will be in the format:

Doe_John: <cr>
Doe_John: <cr>
Doe_Jane: <cr>
Doe_Fred: <cr>

# Data Format

All appended data must be delivered in a delimited ASCII text file format and needs to be named "CDVolume.DAT". Default Concordance delimiters will be used.

- Field separator (comma) = □ (020)
- Quote Character = þ (254)
- Newline = ® (174)
- Multi-entry = ; Semicolon
- Field names as the first line in the data file

## Fields Captured in Data Load File (.DAT)

### Scanning/Coding of Paper Documents

- **BEGBATES** – first page of document
- **ENDBATES** – last page of document
- **BEGATTACH** – unique value populated for all records in attachment group
- **CUSTODIAN**
- **DATE** - (MM/DD/YYYY) date of document
- **OCR\*\*** – multi-page text

### E-Discovery Documents / Email and Attachments or Electronic Documents

- **BEGBATES** – first page of document
- **ENDBATES** – last page of document
- **BEGATTACH** – unique value populated for all records in group, parent and attachments
- **CUSTODIAN**
- **DATESENT** – (MM/DD/YYYY) date sent for email  (GMT)
- **TIMESENT** – time sent for email  (GMT)
- **SUBJECT** – subject of email
- **FROM** – individual who sent the email
- **TO** – list of individuals who received the email
- **CC** – list of individuals who were carbon copied in the email
- **BCC** – list of individuals who were blind carbon copied in the email
- **FILENAME** – file name of electronic document including file extension
- **MD5 Hash Value** - 32-character hexadecimal number
- **AUTHOR** – individual created electronic document (non-email)
- **DATECREATED** – (MM/DD/YYYY) date document was created (GMT) (non-email)
- **TIMECREATED** – time document was created (GMT)  (non-email)
- **LASTDATE MODIFIED** – (MM/DD/YYYY) date document was last modified (GMT) (non-email)
- **LASTTIME MODIFIED** – time document was last modified (GMT) (non-email)

**TEXT** – actual extracted text from native files during e-discovery processing.  OCR'd text only if from image based documents.  The text must be provided in a separate text file that is named by the "batesnumber.txt" (one multi-page text file per document).  Text files should be in a folder called TEXT on the CD/DVD.

# Image Format
- Single Page, Black & White Group IV TIF, 300 DPI
- Bates prefix: XXX
- Bates beginning numeric suffix: 0000001 (**numeric suffix will be 7 characters**)
- Volume ID:  XXX001
- Alias in Opticon load file must match the bates number

**Opticon Load File Format**
The Opticon load file format is a text-delimited file (.LOG) containing all information necessary to link the imagebase with the database. There is one line entry per image file, whether it is a single-page or multi-page image file. The load file consists of seven delimited entries as follows (Folder Break and Box Break can be left blank – see example below):

**ALIAS,VOLUME,PATH,DOC_BREAK,FOLDER_BREAK,BOX_BREAK,PAGES**

ALIAS — Should match your image key from the Concordance database. Concordance stores this key in order to reference the image.
VOLUME — This entry is the name of the volume where the image resides. This is typically the volume name of a CD or server.
PATH — This is the full path and file name (and extension) of the image.  A default of D:\ will used for the path
DOC_BREAK — Enter a 'Y' to denote whether this image marks the beginning of a document.
FOLDER_BREAK — Enter a 'Y' to denote whether this image marks the beginning of a folder. (Optional)
BOX_BREAK — Enter a 'Y' to denote whether this image marks the beginning of a box. (Not supported)
PAGES — This entry is the number of pages associated with the image. (Optional)

**Opticon Load File Example**
The following is a 9-image load file example. It details 2 documents; the first relates to the image key HI000001 and contains 4 pages. The second begins at HI000005 and contains 5 images.

```
HI000001,VOLUME1,G:\SAMPLE\IMAGES\001\00000001.TIF,Y,,,4
HI000002,VOLUME1,G:\SAMPLE\IMAGES\001\00000002.TIF,,,,
HI000003,VOLUME1,G:\SAMPLE\IMAGES\001\00000003.TIF,,,,
HI000004,VOLUME1,G:\SAMPLE\IMAGES\001\00000004.TIF,,,,
HI000005,VOLUME1,G:\SAMPLE\IMAGES\001\00000005.TIF,Y,,,5
HI000006,VOLUME1,G:\SAMPLE\IMAGES\001\00000006.TIF,,,,
HI000007,VOLUME1,G:\SAMPLE\IMAGES\001\00000007.TIF,,,,
HI000008,VOLUME1,G:\SAMPLE\IMAGES\001\00000008.TIF,,,,
HI000009,VOLUME1,G:\SAMPLE\IMAGES\001\00000009.TIF,,,,
```

# Media delivery

**CD/DVD Label:**  Case caption, Volume ID, number of documents, number of images, Bates range, date of production

**CD/DVD Structure:**  Folder matching Volume ID (on root of CD), the following data inside Volume ID folder:

- Image folder (containing all image subfolders and images).  Each subfolder to contain a maximum of 500 images
- Text folder.
- .DAT file
- .LOG file

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Middle District of Florida

| | |
|---|---|
| STEEL SUPPLEMENTS, INC. | ) |
| *Plaintiff* | ) |
| v. | ) |
| BLITZ NV, LLC | ) |
| | ) |
| *Defendant* | ) |

Civil Action No.  8:20-CV-2971-T-02-AEP

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                               IGNITE BRANDS, LLC

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  Please see Exhibit A attached hereto.

| Place: Veritext - Delaware | Date and Time: |
|---|---|
| 300 Delaware Avenue, Suite 815 Wilmington, Delaware 19801 | 07/19/2021 5:00 pm |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    06/22/2021

    *CLERK OF COURT*

                                OR

_____          Brian D. Goodrich /s/
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Steel Supplements ,Inc. _____ , who issues or requests this subpoena, are:

Brian D. Goodrich, Esq., 783 S. Orange Ave.,Sarasota, Fl. bgoodrich@thebentleylawfirm.com (941)556-9030

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
  (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT A TO IGNITE BRANDS, LLC SUBPOENA

Pursuant to Federal Rule of Civil Procedure 45, Plaintiff STEEL SUPPLEMENTS, INC., requests that you produce for inspection at Veritext – Delaware, 300 Delaware Avenue, Suite 815, Wilmington, Delaware 19801, the following categories of documents and things within twenty-one (21) days.

## DEFINITIONS AND INSTRUCTIONS

1.      The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

2.      The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise). When a communication is in written or electronic format, the communication is a document.

3.      The terms "all," "any," and "each" shall each be construed as encompassing any and all.

4.      The terms "concerning" or "reflecting" or "referring to" or "relating to" or "related to" means directly or indirectly concerns, consists of, discusses, describes, reflects, sets forth, refers to, or to be in any way legally, logically, or factually connected with the matter discussed.

5.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

6.      The use of the singular form of any word includes the plural and vice versa.

7.      "Including" means including but not limited to.

8.      "Person" means and includes any natural individual acting in any capacity whatsoever and any entity or organization, including, without limitation, a corporation,

1

partnership, joint venture, firm, trust, group, association, or governmental agency, and any division, department or other unit thereof.

9.      "Third party" means any Person other than You, Blitz, or STEEL.

10.     The term "Ignite" means Ignite Brands, LLC and its related companies, including but not limited to Ignite International, Ltd., Ignite International Brands, Ltd., Ignite Spirits, Inc., Ignite Distribution, LLC, Ignite Distribution Company, Inc., Ignite Beverages, Inc., and Ignite Nootropics, LLC, as well as any and all of their shareholders, directors, officers, members, managers, employees, independent contractors, agents, or anyone else acting or purporting to act on their behalves.

11.     The term "You" means Ignite.

12.     The term "Bilzerian" means Dan Bilzerian.

13.     The terms "Blitz" or "Defendant" mean BLITZ NV, LLC, its shareholders, directors, officers, members, managers, employees, independent contractors, agents, or anyone else acting or purporting to act on its behalf, including but not limited to Bilzerian.

14.     The term "STEEL" means STEEL Supplements, Inc.

15.     The term "ZRO beverage" means the ZRO By Ignite Ltd. drink, including any and all flavors of the same.

16.     Unless otherwise noted in a specific request, the time period covered by these requests is March 7, 2017, to the date of your response.

17.     The term "Electronically Stored Information" or "ESI" includes, without limitation, the following:

   a.   information that is generated, received, processed and recorded by computers and other electronic devices;

   b.   internal or external web sites;

2

c.  output resulting from the use of any software program, including, without limitation, word-processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, personal electronic mail used at any time for business purposes, instant messaging programs, bulletin-board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, a deleted file, or file fragment;

d.  activity listings of electronic mail receipts and/or transmittals; and

e.  all items stored on computer memories, hard disks, floppy disks, CD-ROM, magnetic tape, microfiche, or in any other vehicle for digital data storage or transmittal, such as, but not limited to, a personal digital assistant, e.g., iPhone, iPad, iTouch, Palm Smart Phone, Blackberry, or similar device, and file-folder tabs, or containers and labels appended to, or relating to, any physical storage device associated with each original or copy of all documents requested herein.

18.  Pursuant to Federal Rule of Civil Procedure 45(e), you must produce the documents as follows:

a.  if the requested documents are maintained in a paper file, the requested documents must be produced as they are kept in the ordinary course of business or must be organized and labeled to correspond with each document request to which they are submitted as being responsive.

b.  if the requested documents are maintained in electronic form, as defined in paragraph 17 above, the requested documents must be produced as native files, with metadata preserved, and without any additional processing, in accordance with the Standard Delivery Specifications attached hereto.

3

19.     You may produce the documents responsive to these requests either in person or by email, file share, thumb drive, or other electronic means. Production by electronic means is encouraged and preferred. If you wish to produce the responsive documents by electronic means, please contact the attorney who issued this subpoena to coordinate the electronic transfer/delivery.

## REQUESTS

1.  Documents and/or communication relating to STEEL.

2.  Documents and/or communication relating to Blitz and/or Bilzerian's promotion, endorsement, marketing, advertising, or publication of the ZRO beverage.

3.  Documents and/or communication relating to the promotion, endorsement, marketing, advertising, or publication of the ZRO beverage that include Bilzerian's name, image, or likeness.

4.  Documents sufficient to show Your organizational structure.

5.  Social media content, including but not limited to videos, posts, stories, comments, and likes relating to the ZRO beverage.

6.  Documents and/or communication sufficient to show the amount Bilzerian has been compensated in connection with the ZRO beverage.

7.  Documents and/or communication sufficient to show the amount Blitz has been compensated in connection with the ZRO beverage.

8.  Documents and/or communication marketing the ZRO beverage as a pre-workout, workout, or after-workout beverage.

9.  Documents and/or communication mentioning the ZRO beverage in connection with performance.

10. Documents and/or communication mentioning the ZRO beverage in connection with health or fitness.

4

11. Documents and/or communication showing the target audience or demographic for sales of the ZRO beverage.

12. Documents and/or communication relating to the concept for the ZRO beverage.

13. Documents and/or communication relating to the development of the ZRO beverage.

14. Documents and/or communication relating to the determination of the price point for the ZRO beverage.

15. Documents and/or communication sufficient to show where the ZRO beverage is sold.

16. Documents and/or communication relating to the lawsuit styled *Heffernan v. Ignite International, Ltd. et al.* pending in the Superior Court for the State of California, County of Los Angeles, in which Bilzerian is alleged to have misappropriated Your funds.

17. Communication to or from the Federal Trade Commission relating to Bilzerian's promotion, endorsement, marketing, advertising, or publicizing of any of Your products.

18. Documents and/or communication sufficient to show all of Ignite's cannabis-related products for sale or previously for sale in Canada.

19. Documents and/or communication sufficient to show all of Ignite's cannabis-related products for sale or previously for sale in the United States.

# B

# BENTLEY LAW

### A COMMERCIAL LITIGATION LAW FIRM

| MORGAN R. BENTLEY | JILL M. BOWEN | CAROLEEN B. BREJ | BRIAN D. GOODRICH | JENNIFER L. GROSSO | AMANDA R. KISON | DAVID A. WALLACE |
|---|---|---|---|---|---|---|
| Board Certified Business Litigation | | | | | Board Certified Business Litigation | Board Certified Appellate Law and Fla. Certified Mediator |

June 21, 2021

Ignite Distribution Company, Inc.
c/o Paracorp Incorporated
1920 Thomes Avenue
Suite 610
Cheyenne, Wyoming 82001

Re:     Steel Supplements, Inc. v. Blitz NV, LLC
        Case No. 8:20-cv-2971-T-02AEP - US District Court for the Middle District of Florida
        Subpoena for Non-Party Production Without Deposition

Dear Sir or Madam:

Our office represents Steel Supplements, Inc. in the above-referenced matter. Ignite Distribution Company, Inc., may have documents that relate to the underlying issues that preceded this litigation. You are, therefore, being served with the enclosed Subpoena to Produce Documents, Electronically Stored Information, or Tangible Things (the "Subpoena").

In lieu of appearing at the location listed on the Subpoena, you may comply with the Subpoena by producing the responsive documents by electronic means. To do so, please contact me to coordinate the electronic transfer/ delivery.

The Subpoena does not require the deposition of Ignite Distributions' Corporate Representative at this time, however, we intend to schedule same in the near future. Please contact us—or, if you are represented by an attorney, please have him or her contact us—to schedule a mutually agreeable date and time for the deposition.

Please also do not hesitate to contact me if you have any questions or concerns regarding your requirements, the Subpoena requests, or the options for delivering them.

Thank you,

Brian D. Goodrich
For the Firm

BDG;jmb

cc:     Sarah Gottlieb, Esq.
        Jason Stearns, Esq.



**Freeborn**

FREEBORN & PETERS LLP

<u>**Standard Delivery Specifications**</u>

# Requested File Formats

TIFF images – Named according to bates number.  Paper or any hard copy documents.

TIFF images - Named according to bates number.  Electronically stored information including, but not limited to:  email, office documents - word processing (MS Word etc), presentation (MS PowerPoint – include notes with slides etc), Adobe PDFs, images (gif, jpg, tif etc), Engineering output files etc.  If any file type does not render properly as a TIFF image, the native file may be required to be produced.  Additional relevant file types identified during discovery may also be requested upon detection; production format will be determined based on file type.  For Office documents that use dynamic fields to display date/time when a document is opened, the field code should be displayed  instead of the date/time value when converting to TIFF image.

Native format - Named according to bates number and if appropriate a separator character and a confidentiality designation (eg.  FPW0000001^AttorneysEyesOnly.xls).  Includes spreadsheets (MS Excel etc).  Native files must have, in addition to the data load file, a separate load file which contains two fields; the bates number (FPW0000001) and the "relative path\file name" to the native file.  Native files that need redactions will be produced as TIFF images with redactions.

Database and statistical software applications – reports from applications to TIFF images may be acceptable.  If not, access to native data and application may be necessary.

# Deduplication

Global deduplication across the case using MD5Hash value.  Loose e-docs should not be dedupped out by the same file that is an email attachment.  Email attachments should not be dedupped out by the same file that is a loose edoc.

If duplicate information is needed for a set of files, a duplicate load file will be provided.  This load file will contain the bates number of the original document and a duplicate field that contains every unique instance of where the duplicate files existed.  This duplicate field will be in the format:

Doe_John:  <cr>
Doe_John:  <cr>
Doe_Jane:  <cr>
Doe_Fred:  <cr>

# Data Format

All appended data must be delivered in a delimited ASCII text file format and needs to be named "CDVolume.DAT". Default Concordance delimiters will be used.

- Field separator (comma) = ☐ (020)
- Quote Character = þ (254)
- Newline = ® (174)
- Multi-entry = ; Semicolon
- Field names as the first line in the data file

## Fields Captured in Data Load File (.DAT)

### Scanning/Coding of Paper Documents

- **BEGBATES** – first page of document
- **ENDBATES** – last page of document
- **BEGATTACH** – unique value populated for all records in attachment group
- **CUSTODIAN**
- **DATE** - (MM/DD/YYYY) date of document
- **OCR\*\*** – multi-page text

### E-Discovery Documents / Email and Attachments or Electronic Documents

- **BEGBATES** – first page of document
- **ENDBATES** – last page of document
- **BEGATTACH** – unique value populated for all records in group, parent and attachments
- **CUSTODIAN**
- **DATESENT** – (MM/DD/YYYY) date sent for email  (GMT)
- **TIMESENT** – time sent for email  (GMT)
- **SUBJECT** – subject of email
- **FROM** – individual who sent the email
- **TO** – list of individuals who received the email
- **CC** – list of individuals who were carbon copied in the email
- **BCC** – list of individuals who were blind carbon copied in the email
- **FILENAME** – file name of electronic document including file extension
- **MD5 Hash Value** - 32-character hexadecimal number
- **AUTHOR** – individual created electronic document (non-email)
- **DATECREATED** – (MM/DD/YYYY) date document was created (GMT) (non-email)
- **TIMECREATED** – time document was created (GMT)  (non-email)
- **LASTDATE MODIFIED** – (MM/DD/YYYY) date document was last modified (GMT) (non-email)
- **LASTTIME MODIFIED** – time document was last modified (GMT) (non-email)

**TEXT** – actual extracted text from native files during e-discovery processing.  OCR'd text only if from image based documents.  The text must be provided in a separate text file that is named by the "batesnumber.txt" (one multi-page text file per document).  Text files should be in a folder called TEXT on the CD/DVD.

# Image Format
- Single Page, Black & White Group IV TIF, 300 DPI
- Bates prefix: XXX
- Bates beginning numeric suffix: 0000001 (**numeric suffix will be 7 characters**)
- Volume ID:  XXX001
- Alias in Opticon load file must match the bates number

**Opticon Load File Format**
The Opticon load file format is a text-delimited file (.LOG) containing all information necessary to link the imagebase with the database. There is one line entry per image file, whether it is a single-page or multi-page image file. The load file consists of seven delimited entries as follows (Folder Break and Box Break can be left blank – see example below):

**ALIAS,VOLUME,PATH,DOC_BREAK,FOLDER_BREAK,BOX_BREAK,PAGES**

ALIAS — Should match your image key from the Concordance database. Concordance stores this key in order to reference the image.
VOLUME — This entry is the name of the volume where the image resides. This is typically the volume name of a CD or server.
PATH — This is the full path and file name (and extension) of the image.  A default of D:\ will used for the path
DOC_BREAK — Enter a 'Y' to denote whether this image marks the beginning of a document.
FOLDER_BREAK — Enter a 'Y' to denote whether this image marks the beginning of a folder. (Optional)
BOX_BREAK — Enter a 'Y' to denote whether this image marks the beginning of a box. (Not supported)
PAGES — This entry is the number of pages associated with the image. (Optional)

**Opticon Load File Example**
The following is a 9-image load file example. It details 2 documents; the first relates to the image key HI000001 and contains 4 pages. The second begins at HI000005 and contains 5 images.

```
HI000001,VOLUME1,G:\SAMPLE\IMAGES\001\00000001.TIF,Y,,,4
HI000002,VOLUME1,G:\SAMPLE\IMAGES\001\00000002.TIF,,,,
HI000003,VOLUME1,G:\SAMPLE\IMAGES\001\00000003.TIF,,,,
HI000004,VOLUME1,G:\SAMPLE\IMAGES\001\00000004.TIF,,,,
HI000005,VOLUME1,G:\SAMPLE\IMAGES\001\00000005.TIF,Y,,,5
HI000006,VOLUME1,G:\SAMPLE\IMAGES\001\00000006.TIF,,,,
HI000007,VOLUME1,G:\SAMPLE\IMAGES\001\00000007.TIF,,,,
HI000008,VOLUME1,G:\SAMPLE\IMAGES\001\00000008.TIF,,,,
HI000009,VOLUME1,G:\SAMPLE\IMAGES\001\00000009.TIF,,,,
```

## Media delivery

**CD/DVD Label:**  Case caption, Volume ID, number of documents, number of images, Bates range, date of production

**CD/DVD Structure:**  Folder matching Volume ID (on root of CD), the following data inside Volume ID folder:

- Image folder (containing all image subfolders and images).  Each subfolder to contain a maximum of 500 images
- Text folder.
- .DAT file
- .LOG file

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| STEEL SUPPLEMENTS, INC. | ) |
| *Plaintiff* | ) |
| v. | )   Civil Action No.   8:20-CV-2971-T-02-AEP |
| BLITZ NV, LLC | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                          IGNITE DISTRIBUTION COMPANY, INC.

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  Please see Exhibit A attached hereto.

| Place: Veritext -17th and Central Executive Suite 1623 Central Avenue Cheyenne, Wyoming  82001 | Date and Time:  07/19/2021 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     06/22/2021

| *CLERK OF COURT* | |
|---|---|
| | OR |
| _____ | Brian D. Goodrich /s/ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Steel Supplements ,Inc.                                                                      , who issues or requests this subpoena, are:

Brian D. Goodrich, Esq., 783 S. Orange Ave.,Sarasota, Fl. bgoodrich@thebentleylawfirm.com (941)556-9030

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   8:20-CV-2971-T-02-AEP

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT A TO IGNITE DISTRIBUTION COMPANY, INC. SUBPOENA

Pursuant to Federal Rule of Civil Procedure 45, Plaintiff STEEL SUPPLEMENTS, INC., requests that you produce for inspection at Veritext – 17th and Central Executive Suite, 1623 Central Avenue, Cheyenne, Wyoming 82001, the following categories of documents and things within twenty-one (21) days.

### DEFINITIONS AND INSTRUCTIONS

1.      The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

2.      The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise). When a communication is in written or electronic format, the communication is a document.

3.      The terms "all," "any," and "each" shall each be construed as encompassing any and all.

4.      The terms "concerning" or "reflecting" or "referring to" or "relating to" or "related to" means directly or indirectly concerns, consists of, discusses, describes, reflects, sets forth, refers to, or to be in any way legally, logically, or factually connected with the matter discussed.

5.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

6.      The use of the singular form of any word includes the plural and vice versa.

7.      "Including" means including but not limited to.

8.      "Person" means and includes any natural individual acting in any capacity whatsoever and any entity or organization, including, without limitation, a corporation,

1

partnership, joint venture, firm, trust, group, association, or governmental agency, and any division, department or other unit thereof.

9.      "Third party" means any Person other than You, Blitz, or STEEL.

10.     The term "Ignite" means Ignite Distribution Company, Inc. and its related companies, including but not limited to Ignite International, Ltd., Ignite International Brands, Ltd., Ignite Spirits, Inc., Ignite Brands, LLC, Ignite Distribution Company, Inc., Ignite Beverages, Inc., and Ignite Nootropics, LLC, as well as any and all of their shareholders, directors, officers, members, managers, employees, independent contractors, agents, or anyone else acting or purporting to act on their behalves.

11.     The term "You" means Ignite.

12.     The term "Bilzerian" means Dan Bilzerian.

13.     The terms "Blitz" or "Defendant" mean BLITZ NV, LLC, its shareholders, directors, officers, members, managers, employees, independent contractors, agents, or anyone else acting or purporting to act on its behalf, including but not limited to Bilzerian.

14.     The term "STEEL" means STEEL Supplements, Inc.

15.     The term "ZRO beverage" means the ZRO By Ignite Ltd. drink, including any and all flavors of the same.

16.     Unless otherwise noted in a specific request, the time period covered by these requests is March 7, 2017, to the date of your response.

17.     The term "Electronically Stored Information" or "ESI" includes, without limitation, the following:

      a.  information that is generated, received, processed and recorded by computers and other electronic devices;

      b.  internal or external web sites;

2

c. output resulting from the use of any software program, including, without limitation, word-processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, personal electronic mail used at any time for business purposes, instant messaging programs, bulletin-board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, a deleted file, or file fragment;

d. activity listings of electronic mail receipts and/or transmittals; and

e. all items stored on computer memories, hard disks, floppy disks, CD-ROM, magnetic tape, microfiche, or in any other vehicle for digital data storage or transmittal, such as, but not limited to, a personal digital assistant, e.g., iPhone, iPad, iTouch, Palm Smart Phone, Blackberry, or similar device, and file-folder tabs, or containers and labels appended to, or relating to, any physical storage device associated with each original or copy of all documents requested herein.

18.     Pursuant to Federal Rule of Civil Procedure 45(e), you must produce the documents as follows:

a. if the requested documents are maintained in a paper file, the requested documents must be produced as they are kept in the ordinary course of business or must be organized and labeled to correspond with each document request to which they are submitted as being responsive.

b. if the requested documents are maintained in electronic form, as defined in paragraph 17 above, the requested documents must be produced as native files, with metadata preserved, and without any additional processing, in accordance with the Standard Delivery Specifications attached hereto.

3

19.     You may produce the documents responsive to these requests either in person or by email, file share, thumb drive, or other electronic means. Production by electronic means is encouraged and preferred. If you wish to produce the responsive documents by electronic means, please contact the attorney who issued this subpoena to coordinate the electronic transfer/delivery.

## REQUESTS

1. Documents and/or communication relating to STEEL.

2. Documents and/or communication relating to Blitz and/or Bilzerian's promotion, endorsement, marketing, advertising, or publication of the ZRO beverage.

3. Documents and/or communication relating to the promotion, endorsement, marketing, advertising, or publication of the ZRO beverage that include Bilzerian's name, image, or likeness.

4. Documents sufficient to show Your organizational structure.

5. Social media content, including but not limited to videos, posts, stories, comments, and likes relating to the ZRO beverage.

6. Documents and/or communication sufficient to show the amount Bilzerian has been compensated in connection with the ZRO beverage.

7. Documents and/or communication sufficient to show the amount Blitz has been compensated in connection with the ZRO beverage.

8. Documents and/or communication marketing the ZRO beverage as a pre-workout, workout, or after-workout beverage.

9. Documents and/or communication mentioning the ZRO beverage in connection with performance.

10. Documents and/or communication mentioning the ZRO beverage in connection with health or fitness.

4

11. Documents and/or communication showing the target audience or demographic for sales of the ZRO beverage.

12. Documents and/or communication relating to the concept for the ZRO beverage.

13. Documents and/or communication relating to the development of the ZRO beverage.

14. Documents and/or communication relating to the determination of the price point for the ZRO beverage.

15. Documents and/or communication sufficient to show where the ZRO beverage is sold.

16. Documents and/or communication relating to the lawsuit styled *Heffernan v. Ignite International, Ltd. et al.* pending in the Superior Court for the State of California, County of Los Angeles, in which Bilzerian is alleged to have misappropriated Your funds.

17. Communication to or from the Federal Trade Commission relating to Bilzerian's promotion, endorsement, marketing, advertising, or publicizing of any of Your products.

18. Documents and/or communication sufficient to show all of Ignite's cannabis-related products for sale or previously for sale in Canada.

19. Documents and/or communication sufficient to show all of Ignite's cannabis-related products for sale or previously for sale in the United States.

# B

## BENTLEY LAW

### A COMMERCIAL LITIGATION LAW FIRM

| MORGAN B. BENTLEY | JILL M. BOWEN | CAROLEEN B. BREJ | BRIAN D. GOODRICH | JENNIFER L. GROSSO | AMANDA R. KISON | DAVID A. WALLACE |
|---|---|---|---|---|---|---|
| Board Certified Business Litigation | | | | | Board Certified Business Litigation | Board Certified Appellate Law and Fla. Certified Mediator |

June 21, 2021

Ignite Nootropics LLC
Wyoming Registered Office LLC
30 N Gould
Suite 100
Sheridan, Wyoming 82801

Re:    Steel Supplements, Inc. v. Blitz NV, LLC
       Case No. 8:20-cv-2971-T-02AEP - US District Court for the Middle District of Florida
       Subpoena for Non-Party Production Without Deposition

Dear Sir or Madam:

Our office represents Steel Supplements, Inc. in the above-referenced matter. Ignite Nootropics LLC, may have documents that relate to the underlying issues that preceded this litigation. You are, therefore, being served with the enclosed Subpoena to Produce Documents, Electronically Stored Information, or Tangible Things (the "Subpoena").

In lieu of appearing at the location listed on the Subpoena, you may comply with the Subpoena by producing the responsive documents by electronic means. To do so, please contact me to coordinate the electronic transfer/ delivery.

The Subpoena does not require the deposition of Ignite Nootropics' Corporate Representative at this time, however, we intend to schedule same in the near future. Please contact us—or, if you are represented by an attorney, please have him or her contact us—to schedule a mutually agreeable date and time for the deposition.

Please also do not hesitate to contact me if you have any questions or concerns regarding your requirements, the Subpoena requests, or the options for delivering them.

Thank you.

Brian D. Goodrich
For the Firm

BDG:jmb

cc:    Sarah Gottlieb, Esq.
       Jason Stearns, Esq.



**Freeborn**
FREEBORN & PETERS LLP

## Standard Delivery Specifications

# Requested File Formats

TIFF images – Named according to bates number.  Paper or any hard copy documents.

TIFF images - Named according to bates number.  Electronically stored information including, but not limited to: email, office documents - word processing (MS Word etc), presentation (MS PowerPoint – include notes with slides etc), Adobe PDFs, images (gif, jpg, tif etc), Engineering output files etc.  If any file type does not render properly as a TIFF image, the native file may be required to be produced.  Additional relevant file types identified during discovery may also be requested upon detection; production format will be determined based on file type.  For Office documents that use dynamic fields to display date/time when a document is opened, the field code should be displayed  instead of the date/time value when converting to TIFF image.

Native format - Named according to bates number and if appropriate a separator character and a confidentiality designation (eg. FPW0000001^AttorneysEyesOnly.xls).  Includes spreadsheets (MS Excel etc).  Native files must have, in addition to the data load file, a separate load file which contains two fields; the bates number (FPW0000001) and the "relative path\file name" to the native file.  Native files that need redactions will be produced as TIFF images with redactions.

Database and statistical software applications – reports from applications to TIFF images may be acceptable.  If not, access to native data and application may be necessary.

# Deduplication

Global deduplication across the case using MD5Hash value.  Loose e-docs should not be dedupped out by the same file that is an email attachment.  Email attachments should not be dedupped out by the same file that is a loose edoc.

If duplicate information is needed for a set of files, a duplicate load file will be provided.  This load file will contain the bates number of the original document and a duplicate field that contains every unique instance of where the duplicate files existed.  This duplicate field will be in the format:

Doe_John: <cr>
Doe_John: <cr>
Doe_Jane: <cr>
Doe_Fred: <cr>

# Data Format

All appended data must be delivered in a delimited ASCII text file format and needs to be named "CDVolume.DAT". Default Concordance delimiters will be used.

• Field separator (comma) = □ (020)
• Quote Character = þ (254)
• Newline = ® (174)
• Multi-entry = ; Semicolon
• Field names as the first line in the data file

**Fields Captured in Data Load File (.DAT)**

### Scanning/Coding of Paper Documents

• **BEGBATES** – first page of document
• **ENDBATES** – last page of document
• **BEGATTACH** – unique value populated for all records in attachment group
• **CUSTODIAN**
• **DATE** - (MM/DD/YYYY) date of document
• **OCR\*\*** – multi-page text

### E-Discovery Documents / Email and Attachments or Electronic Documents

• **BEGBATES** – first page of document
• **ENDBATES** – last page of document
• **BEGATTACH** – unique value populated for all records in group, parent and attachments
• **CUSTODIAN**
• **DATESENT** – (MM/DD/YYYY) date sent for email  (GMT)
• **TIMESENT** – time sent for email  (GMT)
• **SUBJECT** – subject of email
• **FROM** – individual who sent the email
• **TO** – list of individuals who received the email
• **CC** – list of individuals who were carbon copied in the email
• **BCC** – list of individuals who were blind carbon copied in the email
• **FILENAME** – file name of electronic document including file extension
• **MD5 Hash Value** - 32-character hexadecimal number
• **AUTHOR** – individual created electronic document (non-email)
• **DATECREATED** – (MM/DD/YYYY) date document was created (GMT) (non-email)
• **TIMECREATED** – time document was created (GMT)  (non-email)
• **LASTDATE MODIFIED** – (MM/DD/YYYY) date document was last modified (GMT) (non-email)
• **LASTTIME MODIFIED** – time document was last modified (GMT) (non-email)

**TEXT** – actual extracted text from native files during e-discovery processing.  OCR'd text only if from image based documents.  The text must be provided in a separate text file that is named by the "batesnumber.txt" (one multi-page text file per document).  Text files should be in a folder called TEXT on the CD/DVD.

# Image Format
- Single Page, Black & White Group IV TIF, 300 DPI
- Bates prefix: XXX
- Bates beginning numeric suffix: 0000001 (**numeric suffix will be 7 characters**)
- Volume ID:  XXX001
- Alias in Opticon load file must match the bates number

**Opticon Load File Format**
The Opticon load file format is a text-delimited file (.LOG) containing all information necessary to link the imagebase with the database. There is one line entry per image file, whether it is a single-page or multi-page image file. The load file consists of seven delimited entries as follows (Folder Break and Box Break can be left blank -- see example below):

**ALIAS,VOLUME,PATH,DOC_BREAK,FOLDER_BREAK,BOX_BREAK,PAGES**

ALIAS --- Should match your image key from the Concordance database. Concordance stores this key in order to reference the image.
VOLUME --- This entry is the name of the volume where the image resides. This is typically the volume name of a CD or server.
PATH --- This is the full path and file name (and extension) of the image.  A default of D:\ will used for the path
DOC_BREAK --- Enter a 'Y' to denote whether this image marks the beginning of a document.
FOLDER_BREAK --- Enter a 'Y' to denote whether this image marks the beginning of a folder. (Optional)
BOX_BREAK --- Enter a 'Y' to denote whether this image marks the beginning of a box. (Not supported)
PAGES --- This entry is the number of pages associated with the image. (Optional)

**Opticon Load File Example**
The following is a 9-image load file example. It details 2 documents; the first relates to the image key HI000001 and contains 4 pages. The second begins at HI000005 and contains 5 images.

```
HI000001,VOLUME1,G:\SAMPLE\IMAGES\001\00000001.TIF,Y,,,4
HI000002,VOLUME1,G:\SAMPLE\IMAGES\001\00000002.TIF,,,,
HI000003,VOLUME1,G:\SAMPLE\IMAGES\001\00000003.TIF,,,,
HI000004,VOLUME1,G:\SAMPLE\IMAGES\001\00000004.TIF,,,,
HI000005,VOLUME1,G:\SAMPLE\IMAGES\001\00000005.TIF,Y,,,5
HI000006,VOLUME1,G:\SAMPLE\IMAGES\001\00000006.TIF,,,,
HI000007,VOLUME1,G:\SAMPLE\IMAGES\001\00000007.TIF,,,,
HI000008,VOLUME1,G:\SAMPLE\IMAGES\001\00000008.TIF,,,,
HI000009,VOLUME1,G:\SAMPLE\IMAGES\001\00000009.TIF,,,,
```

## Media delivery

**CD/DVD Label:**  Case caption, Volume ID, number of documents, number of images, Bates range, date of production

**CD/DVD Structure:**  Folder matching Volume ID (on root of CD), the following data inside Volume ID folder:

- Image folder (containing all image subfolders and images).  Each subfolder to contain a maximum of 500 images
- Text folder.
- .DAT file
- .LOG file

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | | |
|---|---|---|
| STEEL SUPPLEMENTS, INC. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   8:20-CV-2971-T-02-AEP |
| BLITZ NV, LLC | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                     IGNITE NOOTROPICS LLC

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  Please see Exhibit A attached hereto.

| Place: Litigation Services & Technologies<br>3960 Howard Hughes Parkway, Suite 700<br>Las Vegas, Nevada 89169 | Date and Time:<br><br>07/19/2021 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   06/22/2021

*CLERK OF COURT*

OR

_____          _____
*Signature of Clerk or Deputy Clerk*          Brian D. Goodrich /s/
                                              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Steel Supplements
,Inc.                                              , who issues or requests this subpoena, are:

Brian D. Goodrich, Esq., 783 S. Orange Ave.,Sarasota, Fl. bgoodrich@thebentleylawfirm.com (941)556-9030

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 8:20-CV-2971-T-02-AEP

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____            _____
                                              *Server's signature*

                                   _____
                                              *Printed name and title*

                                   _____
                                              *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
  **(i)** is a party or a party's officer; or
  **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
 **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  **(i)** fails to allow a reasonable time to comply;
  **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  **(iv)** subjects a person to undue burden.
 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

 **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  **(i)** expressly make the claim; and
  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT A TO IGNITE NOOTROPICS, LLC SUBPOENA

Pursuant to Federal Rule of Civil Procedure 45, Plaintiff STEEL SUPPLEMENTS, INC., requests that you produce for inspection at Litigation Services & Technologies, 3960 Howard Hughes Parkway, Suite 700, Las Vegas, Nevada 89169, the following categories of documents and things within twenty-one (21) days.

## DEFINITIONS AND INSTRUCTIONS

1.      The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

2.      The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise). When a communication is in written or electronic format, the communication is a document.

3.      The terms "all," "any," and "each" shall each be construed as encompassing any and all.

4.      The terms "concerning" or "reflecting" or "referring to" or "relating to" or "related to" means directly or indirectly concerns, consists of, discusses, describes, reflects, sets forth, refers to, or to be in any way legally, logically, or factually connected with the matter discussed.

5.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

6.      The use of the singular form of any word includes the plural and vice versa.

7.      "Including" means including but not limited to.

8.      "Person" means and includes any natural individual acting in any capacity whatsoever and any entity or organization, including, without limitation, a corporation,

1

partnership, joint venture, firm, trust, group, association, or governmental agency, and any division, department or other unit thereof.

9.      "Third party" means any Person other than You, Blitz, or STEEL.

10.     The term "Ignite" means Ignite Nootropics, LLC and its related companies, including but not limited to Ignite International, Ltd., Ignite International Brands, Ltd., Ignite Spirits, Inc., Ignite Brands, LLC, Ignite Distribution Company, Inc., Ignite Beverages, Inc., and Ignite Spirits, Inc., as well as any and all of their shareholders, directors, officers, members, managers, employees, independent contractors, agents, or anyone else acting or purporting to act on their behalves.

11.     The term "You" means Ignite.

12.     The term "Bilzerian" means Dan Bilzerian.

13.     The terms "Blitz" or "Defendant" mean BLITZ NV, LLC, its shareholders, directors, officers, members, managers, employees, independent contractors, agents, or anyone else acting or purporting to act on its behalf, including but not limited to Bilzerian.

14.     The term "STEEL" means STEEL Supplements, Inc.

15.     The term "ZRO beverage" means the ZRO By Ignite Ltd. drink, including any and all flavors of the same.

16.     Unless otherwise noted in a specific request, the time period covered by these requests is March 7, 2017, to the date of your response.

17.     The term "Electronically Stored Information" or "ESI" includes, without limitation, the following:

      a.  information that is generated, received, processed and recorded by computers and other electronic devices;

      b.  internal or external web sites;

2

c.  output resulting from the use of any software program, including, without limitation, word-processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, personal electronic mail used at any time for business purposes, instant messaging programs, bulletin-board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, a deleted file, or file fragment;

d.  activity listings of electronic mail receipts and/or transmittals; and

e.  all items stored on computer memories, hard disks, floppy disks, CD-ROM, magnetic tape, microfiche, or in any other vehicle for digital data storage or transmittal, such as, but not limited to, a personal digital assistant, e.g., iPhone, iPad, iTouch, Palm Smart Phone, Blackberry, or similar device, and file-folder tabs, or containers and labels appended to, or relating to, any physical storage device associated with each original or copy of all documents requested herein.

18.    Pursuant to Federal Rule of Civil Procedure 45(e), you must produce the documents as follows:

a.  if the requested documents are maintained in a paper file, the requested documents must be produced as they are kept in the ordinary course of business or must be organized and labeled to correspond with each document request to which they are submitted as being responsive.

b.  if the requested documents are maintained in electronic form, as defined in paragraph 17 above, the requested documents must be produced as native files, with metadata preserved, and without any additional processing, in accordance with the Standard Delivery Specifications attached hereto.

3

19.     You may produce the documents responsive to these requests either in person or by email, file share, thumb drive, or other electronic means. Production by electronic means is encouraged and preferred. If you wish to produce the responsive documents by electronic means, please contact the attorney who issued this subpoena to coordinate the electronic transfer/delivery.

## REQUESTS

1.  Documents and/or communication relating to STEEL.

2.  Documents and/or communication relating to Blitz and/or Bilzerian's promotion, endorsement, marketing, advertising, or publication of the ZRO beverage.

3.  Documents and/or communication relating to the promotion, endorsement, marketing, advertising, or publication of the ZRO beverage that include Bilzerian's name, image, or likeness.

4.  Documents sufficient to show Your organizational structure.

5.  Social media content, including but not limited to videos, posts, stories, comments, and likes relating to the ZRO beverage.

6.  Documents and/or communication sufficient to show the amount Bilzerian has been compensated in connection with the ZRO beverage.

7.  Documents and/or communication sufficient to show the amount Blitz has been compensated in connection with the ZRO beverage.

8.  Documents and/or communication marketing the ZRO beverage as a pre-workout, workout, or after-workout beverage.

9.  Documents and/or communication mentioning the ZRO beverage in connection with performance.

10. Documents and/or communication mentioning the ZRO beverage in connection with health or fitness.

4

11. Documents and/or communication showing the target audience or demographic for sales of the ZRO beverage.

12. Documents and/or communication relating to the concept for the ZRO beverage.

13. Documents and/or communication relating to the development of the ZRO beverage.

14. Documents and/or communication relating to the determination of the price point for the ZRO beverage.

15. Documents and/or communication sufficient to show where the ZRO beverage is sold.

16. Documents and/or communication relating to the lawsuit styled *Heffernan v. Ignite International, Ltd. et al.* pending in the Superior Court for the State of California, County of Los Angeles, in which Bilzerian is alleged to have misappropriated Your funds.

17. Communication to or from the Federal Trade Commission relating to Bilzerian's promotion, endorsement, marketing, advertising, or publicizing of any of Your products.

18. Documents and/or communication sufficient to show all of Ignite's cannabis-related products for sale or previously for sale in Canada.

19. Documents and/or communication sufficient to show all of Ignite's cannabis-related products for sale or previously for sale in the United States.



# BENTLEY LAW
### A COMMERCIAL LITIGATION LAW FIRM

| | | | | | | |
|---|---|---|---|---|---|---|
| MORGAN R. BENTLEY<br>Board Certified Business Litigation | JILL M. BOWEN | CAROLEEN D. BREJ | BRIAN D. GOODRICH | JENNIFER L. GROSSO | AMANDA R. KISON<br>Board Certified Business Litigation | DAVID A. WALLACE<br>Board Certified Appellate Law<br>and Fla. Certified Mediator |

June 21, 2021

Ignite Spirits, Inc.
c/o Paracorp Incorporated
Its Registered Agent
1920 Thomes Avenue
Suite 610
Cheyenne, Wyoming 82001

Re:   Steel Supplements, Inc. v. Blitz NV, LLC
      Case No. 8:20-cv-2971-T-02AEP - US District Court for the Middle District of Florida
      Subpoena for Non-Party Production Without Deposition

Dear Sir or Madam:

Our office represents Steel Supplements, Inc. in the above-referenced matter. Ignite Spirits, Inc., may have documents that relate to the underlying issues that preceded this litigation. You are, therefore, being served with the enclosed Subpoena to Produce Documents, Electronically Stored Information, or Tangible Things (the "Subpoena").

In lieu of appearing at the location listed on the Subpoena, you may comply with the Subpoena by producing the responsive documents by electronic means. To do so, please contact me to coordinate the electronic transfer/ delivery.

The Subpoena does not require the deposition of Ignite Spirits' Corporate Representative at this time, however, we intend to schedule same in the near future. Please contact us—or, if you are represented by an attorney, please have him or her contact us—to schedule a mutually agreeable date and time for the deposition.

Please also do not hesitate to contact me if you have any questions or concerns regarding your requirements, the Subpoena requests, or the options for delivering them.

Thank you.

Brian D. Goodrich
For the Firm

BDG:jmb

cc:   Sarah Gottlieb, Esq.
      Jason Stearns, Esq.



**Freeborn & Peters LLP**

## Standard Delivery Specifications

# Requested File Formats

TIFF images – Named according to bates number. Paper or any hard copy documents.

TIFF images – Named according to bates number. Electronically stored information including, but not limited to: email, office documents - word processing (MS Word etc), presentation (MS PowerPoint – include notes with slides etc), Adobe PDFs, images (gif, jpg, tif etc), Engineering output files etc. If any file type does not render properly as a TIFF image, the native file may be required to be produced. Additional relevant file types identified during discovery may also be requested upon detection; production format will be determined based on file type. For Office documents that use dynamic fields to display date/time when a document is opened, the field code should be displayed instead of the date/time value when converting to TIFF image.

Native format - Named according to bates number and if appropriate a separator character and a confidentiality designation (eg. FPW0000001^AttorneysEyesOnly.xls). Includes spreadsheets (MS Excel etc). Native files must have, in addition to the data load file, a separate load file which contains two fields; the bates number (FPW0000001) and the "relative path\file name" to the native file. Native files that need redactions will be produced as TIFF images with redactions.

Database and statistical software applications – reports from applications to TIFF images may be acceptable. If not, access to native data and application may be necessary.

# Deduplication

Global deduplication across the case using MD5Hash value. Loose e-docs should not be dedupped out by the same file that is an email attachment. Email attachments should not be dedupped out by the same file that is a loose edoc.

If duplicate information is needed for a set of files, a duplicate load file will be provided. This load file will contain the bates number of the original document and a duplicate field that contains every unique instance of where the duplicate files existed. This duplicate field will be in the format:

Doe_John: <cr>
Doe_John: <cr>
Doe_Jane: <cr>
Doe_Fred: <cr>

# Data Format

All appended data must be delivered in a delimited ASCII text file format and needs to be named "CDVolume.DAT". Default Concordance delimiters will be used.
• Field separator (comma) = ☐ (020)
• Quote Character = þ (254)
• Newline = ® (174)
• Multi-entry = ; Semicolon
• Field names as the first line in the data file

**<u>Fields Captured in Data Load File (.DAT)</u>**

### <u>Scanning/Coding of Paper Documents</u>

• **BEGBATES** – first page of document
• **ENDBATES** – last page of document
• **BEGATTACH** – unique value populated for all records in attachment group
• **CUSTODIAN**
• **DATE** - (MM/DD/YYYY) date of document
• **OCR\*\*** – multi-page text

### <u>E-Discovery Documents / Email and Attachments or Electronic Documents</u>

• **BEGBATES** – first page of document
• **ENDBATES** – last page of document
• **BEGATTACH** – unique value populated for all records in group, parent and attachments
• **CUSTODIAN**
• **DATESENT** – (MM/DD/YYYY) date sent for email  (GMT)
• **TIMESENT** – time sent for email  (GMT)
• **SUBJECT** – subject of email
• **FROM** – individual who sent the email
• **TO** – list of individuals who received the email
• **CC** – list of individuals who were carbon copied in the email
• **BCC** – list of individuals who were blind carbon copied in the email
• **FILENAME** – file name of electronic document including file extension
• **MD5 Hash Value** - 32-character hexadecimal number
• **AUTHOR** – individual created electronic document (non-email)
• **DATECREATED** – (MM/DD/YYYY) date document was created (GMT) (non-email)
• **TIMECREATED** – time document was created (GMT)  (non-email)
• **LASTDATE MODIFIED** – (MM/DD/YYYY) date document was last modified (GMT) (non-email)
• **LASTTIME MODIFIED** – time document was last modified (GMT) (non-email)

**TEXT** – actual extracted text from native files during e-discovery processing.  OCR'd text only if from image based documents.  The text must be provided in a separate text file that is named by the "batesnumber.txt" (one multi-page text file per document).  Text files should be in a folder called TEXT on the CD/DVD.

# Image Format
- Single Page, Black & White Group IV TIF, 300 DPI
- Bates prefix: XXX
- Bates beginning numeric suffix: 0000001 (**numeric suffix will be 7 characters**)
- Volume ID:  XXX001
- Alias in Opticon load file must match the bates number

**Opticon Load File Format**
The Opticon load file format is a text-delimited file (.LOG) containing all information necessary to link the imagebase with the database. There is one line entry per image file, whether it is a single-page or multi-page image file. The load file consists of seven delimited entries as follows (Folder Break and Box Break can be left blank -- see example below):

**ALIAS,VOLUME,PATH,DOC_BREAK,FOLDER_BREAK,BOX_BREAK,PAGES**

ALIAS — Should match your image key from the Concordance database. Concordance stores this key in order to reference the image.
VOLUME — This entry is the name of the volume where the image resides. This is typically the volume name of a CD or server.
PATH — This is the full path and file name (and extension) of the image.  A default of D:\ will used for the path
DOC_BREAK — Enter a 'Y' to denote whether this image marks the beginning of a document.
FOLDER_BREAK — Enter a 'Y' to denote whether this image marks the beginning of a folder. (Optional)
BOX_BREAK — Enter a 'Y' to denote whether this image marks the beginning of a box. (Not supported)
PAGES — This entry is the number of pages associated with the image. (Optional)

**Opticon Load File Example**
The following is a 9-image load file example. It details 2 documents; the first relates to the image key HI000001 and contains 4 pages. The second begins at HI000005 and contains 5 images.

```
HI000001,VOLUME1,G:\SAMPLE\IMAGES\001\00000001.TIF,Y,,,4
HI000002,VOLUME1,G:\SAMPLE\IMAGES\001\00000002.TIF,,,,
HI000003,VOLUME1,G:\SAMPLE\IMAGES\001\00000003.TIF,,,,
HI000004,VOLUME1,G:\SAMPLE\IMAGES\001\00000004.TIF,,,,
HI000005,VOLUME1,G:\SAMPLE\IMAGES\001\00000005.TIF,Y,,,5
HI000006,VOLUME1,G:\SAMPLE\IMAGES\001\00000006.TIF,,,,
HI000007,VOLUME1,G:\SAMPLE\IMAGES\001\00000007.TIF,,,,
HI000008,VOLUME1,G:\SAMPLE\IMAGES\001\00000008.TIF,,,,
HI000009,VOLUME1,G:\SAMPLE\IMAGES\001\00000009.TIF,,,,
```

## Media delivery

**CD/DVD Label:** Case caption, Volume ID, number of documents, number of images, Bates range, date of production

**CD/DVD Structure:** Folder matching Volume ID (on root of CD), the following data inside Volume ID folder:

- Image folder (containing all image subfolders and images). Each subfolder to contain a maximum of 500 images
- Text folder.
- .DAT file
- .LOG file

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Middle District of Florida

| | | |
|---|---|---|
| STEEL SUPPLEMENTS, INC. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  8:20-CV-2971-T-02-AEP |
| BLITZ NV, LLC | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                IGNITE SPIRITS, INC.

---
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  Please see Exhibit A attached hereto.

| Place: Veritext -17th and Central Executive Suite 1623 Central Avenue Cheyenne, Wyoming 82001 | Date and Time: 07/19/2021 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     06/22/2021

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | Brian D. Goodrich /s/ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Steel Supplements ,Inc.                                                        , who issues or requests this subpoena, are:

Brian D. Goodrich, Esq., 783 S. Orange Ave.,Sarasota, Fl. bgoodrich@thebentleylawfirm.com (941)556-9030

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   8:20-CV-2971-T-02-AEP

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

❐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____.

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____         _____
                                          *Server's signature*

                                 _____
                                          *Printed name and title*

                                 _____
                                          *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must: ·
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT A TO IGNITE SPIRITS, INC. SUBPOENA

Pursuant to Federal Rule of Civil Procedure 45, Plaintiff STEEL SUPPLEMENTS, INC., requests that you produce for inspection at Veritext – 17th and Central Executive Suite, 1623 Central Avenue, Cheyenne, Wyoming 82001, the following categories of documents and things within twenty-one (21) days.

### DEFINITIONS AND INSTRUCTIONS

1. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

2. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise). When a communication is in written or electronic format, the communication is a document.

3. The terms "all," "any," and "each" shall each be construed as encompassing any and all.

4. The terms "concerning" or "reflecting" or "referring to" or "relating to" or "related to" means directly or indirectly concerns, consists of, discusses, describes, reflects, sets forth, refers to, or to be in any way legally, logically, or factually connected with the matter discussed.

5. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

6. The use of the singular form of any word includes the plural and vice versa.

7. "Including" means including but not limited to.

8. "Person" means and includes any natural individual acting in any capacity whatsoever and any entity or organization, including, without limitation, a corporation,

1

partnership, joint venture, firm, trust, group, association, or governmental agency, and any division, department or other unit thereof.

9.      "Third party" means any Person other than You, Blitz, or STEEL.

10.     The term "Ignite" means Ignite Spirits, Inc. and its related companies, including but not limited to Ignite International, Ltd., Ignite International Brands, Ltd., Ignite Brands, LLC, Ignite Distribution, LLC, Ignite Distribution Company, Inc., Ignite Beverages, Inc., and Ignite Nootropics, LLC, as well as any and all of their shareholders, directors, officers, members, managers, employees, independent contractors, agents, or anyone else acting or purporting to act on their behalves.

11.     The term "You" means Ignite.

12.     The term "Bilzerian" means Dan Bilzerian.

13.     The terms "Blitz" or "Defendant" mean BLITZ NV, LLC, its shareholders, directors, officers, members, managers, employees, independent contractors, agents, or anyone else acting or purporting to act on its behalf, including but not limited to Bilzerian.

14.     The term "STEEL" means STEEL Supplements, Inc.

15.     The term "ZRO beverage" means the ZRO By Ignite Ltd. drink, including any and all flavors of the same.

16.     Unless otherwise noted in a specific request, the time period covered by these requests is March 7, 2017, to the date of your response.

17.     The term "Electronically Stored Information" or "ESI" includes, without limitation, the following:

      a.   information that is generated, received, processed and recorded by computers and other electronic devices;

      b.   internal or external web sites;

2

    c.   output resulting from the use of any software program, including, without limitation, word-processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, personal electronic mail used at any time for business purposes, instant messaging programs, bulletin-board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, a deleted file, or file fragment;

    d.   activity listings of electronic mail receipts and/or transmittals; and

    e.   all items stored on computer memories, hard disks, floppy disks, CD-ROM, magnetic tape, microfiche, or in any other vehicle for digital data storage or transmittal, such as, but not limited to, a personal digital assistant, e.g., iPhone, iPad, iTouch, Palm Smart Phone, Blackberry, or similar device, and file-folder tabs, or containers and labels appended to, or relating to, any physical storage device associated with each original or copy of all documents requested herein.

18.    Pursuant to Federal Rule of Civil Procedure 45(e), you must produce the documents as follows:

    a.   if the requested documents are maintained in a paper file, the requested documents must be produced as they are kept in the ordinary course of business or must be organized and labeled to correspond with each document request to which they are submitted as being responsive.

    b.   if the requested documents are maintained in electronic form, as defined in paragraph 17 above, the requested documents must be produced as native files, with metadata preserved, and without any additional processing, in accordance with the Standard Delivery Specifications attached hereto.

3

19.    You may produce the documents responsive to these requests either in person or by email, file share, thumb drive, or other electronic means. Production by electronic means is encouraged and preferred. If you wish to produce the responsive documents by electronic means, please contact the attorney who issued this subpoena to coordinate the electronic transfer/delivery.

## REQUESTS

1. Documents and/or communication relating to STEEL.

2. Documents and/or communication relating to Blitz and/or Bilzerian's promotion, endorsement, marketing, advertising, or publication of the ZRO beverage.

3. Documents and/or communication relating to the promotion, endorsement, marketing, advertising, or publication of the ZRO beverage that include Bilzerian's name, image, or likeness.

4. Documents sufficient to show Your organizational structure.

5. Social media content, including but not limited to videos, posts, stories, comments, and likes relating to the ZRO beverage.

6. Documents and/or communication sufficient to show the amount Bilzerian has been compensated in connection with the ZRO beverage.

7. Documents and/or communication sufficient to show the amount Blitz has been compensated in connection with the ZRO beverage.

8. Documents and/or communication marketing the ZRO beverage as a pre-workout, workout, or after-workout beverage.

9. Documents and/or communication mentioning the ZRO beverage in connection with performance.

10. Documents and/or communication mentioning the ZRO beverage in connection with health or fitness.

11. Documents and/or communication showing the target audience or demographic for sales of the ZRO beverage.

12. Documents and/or communication relating to the concept for the ZRO beverage.

13. Documents and/or communication relating to the development of the ZRO beverage.

14. Documents and/or communication relating to the determination of the price point for the ZRO beverage.

15. Documents and/or communication sufficient to show where the ZRO beverage is sold.

16. Documents and/or communication relating to the lawsuit styled *Heffernan v. Ignite International, Ltd. et al.* pending in the Superior Court for the State of California, County of Los Angeles, in which Bilzerian is alleged to have misappropriated Your funds.

17. Communication to or from the Federal Trade Commission relating to Bilzerian's promotion, endorsement, marketing, advertising, or publicizing of any of Your products.

18. Documents and/or communication sufficient to show all of Ignite's cannabis-related products for sale or previously for sale in Canada.

19. Documents and/or communication sufficient to show all of Ignite's cannabis-related products for sale or previously for sale in the United States.

5

# *FLG* **FLANGAS LAW GROUP**

Writer's email: kps@fdlawlv.com

July 6, 2021

*Via email: bgoodrich@thebentleylawfirm.com*
Brian D. Goodrich, Esq.
BENTLEY LAW
783 S Orange Ave., 3rd Fl
Sarasota, FL 34236

RE:   *Ignite Distribution Company Inc.'s Objections to Plaintiff's Subpoena*
*Pursuant to Rule 45*

Dear Mr. Goodrich

Our firm is outside general counsel to Ignite International, Ltd., which owns Ignite Distribution Company Inc. ("Ignite"). As such, we will be responding to the Subpoena served upon Ignite on June 23, 2021. Please allow this letter to be considered our formal objections to Plaintiff's Subpoena pursuant to Rule 45 to Ignite Distribution Company Inc. for the Production of Documents ("Document Requests").

Ignite states its objections as follows:

## GENERAL OBJECTIONS

1. Ignite objects to the Document Requests as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, the burdens of these requests imposed upon this non-party are disproportional to the needs of the case.

2. Ignite objects to each request to the extent that it seeks information not relevant to the subject matter of this action.

3. Ignite objects to the Document Requests, and any implied or express instruction or direction in the Document Requests, that imposes or seeks to impose burdens greater than those imposed by the Federal Rules of Civil Procedure.

4. Ignite objects to the Document Requests to the extent they seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

5. Ignite objects to the Document Requests to the extent they seek disclosure of proprietary and/or confidential business information of Ignite. To the extent the Document Requests do seek

Brian D. Goodrich, Esq.
BENTLEY LAW
RE:   ***Ignite Distribution Company Inc.'s Objections to Plaintiff's Subpoena Pursuant to Rule 45***
July 6, 2021
Page 2 of 8

such information, Ignite will respond only pursuant to a Protective Order pursuant to Fed. R. Civ. P.26(c).

6. Ignite reserves all objections as to the competence, relevance, materiality, admissibility, or privileged status of any information provided in response to these Document Requests, unless Ignites specifically states otherwise.

7. Ignite objects to the Document Requests to the extent they require production of documents in the possession, custody, or control of former directors, officers, employees, agents, partners, representatives, and attorneys of Ignite or its subsidiaries. Documents such persons might possess are not within the possession, custody, or control of Ignite.

8. Ignite objects to the Document Requests to the extent they require production of documents in the possession, custody, or control of companies in which Ignite does not have a controlling interest, as documents are not in the possession, custody, or control of Ignite.

9. Ignite objects to the Document Requests to the extent they call for information which "relating to" or "to show" a particular topic on the ground that gathering all documents containing any reference or relationship to a particular topic is unduly burdensome and out of proportion to the documents' potential relevance.

10. Ignite objects to each request to the extent that it seeks "all," each," "any," or "every" document concerning various subjects or events, or pertaining to them in "any way," on the grounds that such requests are overly broad, unduly burdensome, oppressive, vague, and ambiguous.

11. Ignite objects to each request to the extent that production of such documents requires the formation of a legal conclusion in determining what documents may be responsive.

12. Ignite is not a party to the above to the above-referenced litigation. Most of the documents identified in the subpoena appear to be documents in the custody and/or possession of the parties to this litigation.

Ignite's general objections are applicable to, and included in, Ignite specific objections set forth below.

## SPECIFIC OBJECTIONS

**Request 1:**   Documents and/or communication relating to STEEL.

**Response:**   *See* General Objections.  Ignite objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence.  Moreover, this Request is overly broad and unduly

Brian D. Goodrich, Esq.
BENTLEY LAW
RE:   *Ignite Distribution Company Inc.'s Objections to Plaintiff's Subpoena Pursuant to Rule 45*
July 6, 2021
Page 3 of 8

burdensome. Further such documents appear to be documents in the custody and/or possession of the Plaintiff.

**Request 2:**   Documents and/or communication relating to Blitz and/or Bilzerian's promotion, endorsement, marketing, advertising, or publication of the ZRO beverage.

**Response:**   *See* General Objections. Ignite objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence.  Moreover, this Request is overly broad and unduly burdensome. Further such documents appear to be documents in the custody and/or possession of the Defendant.  Additionally, this Request seeks disclosure of proprietary and/or confidential business information of Ignite. Lastly, such Request may further seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

**Request 3:**   Documents and/or communication relating to the promotion, endorsement, marketing, advertising, or publication of the ZRO beverage that include Bilzerian's name, image, or likeness.

**Response:**   *See* General Objections. Ignite objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence.  Moreover, this Request is overly broad and unduly burdensome. Further such documents appear to be documents in the custody and/or possession of the Defendant.  Additionally, this Request seeks disclosure of proprietary and/or confidential business information of Ignite. Lastly, such Request may further seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

**Request 4:**   Documents sufficient to show Your organizational structure.

**Response:**   *See* General Objections. Ignite objects to this Request to the extent it requires Ignite to create documents.  Ignite further objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence.  Moreover, this Request is overly broad and unduly burdensome. Further such documents appear to be documents in the custody and/or possession of the Defendant.  Additionally, this Request seeks disclosure of proprietary and/or confidential business information of Ignite. Lastly, such Request may further seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

**Request 5:**   Social media content, including but not limited to videos, posts, stories, comments, and likes relating to the ZRO beverage.

Brian D. Goodrich, Esq.
BENTLEY LAW
RE:    ***Ignite Distribution Company Inc.'s Objections to Plaintiff's Subpoena Pursuant to Rule 45***
July 6, 2021
Page 4 of 8

**Response:**    *See* General Objections. Ignite objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this Request is overly broad and unduly burdensome. Further such documents appear to be documents in the custody and/or possession of the Defendant. Additionally, this Request seeks disclosure of proprietary and/or confidential business information of Ignite. Lastly, such Request may further seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

**Request 6:**    Documents and/or communication sufficient to show the amount Bilzerian has been compensated in connection with the ZRO beverage.

**Response:**    *See* General Objections. Ignite objects to this Request to the extent it requires Ignite to create documents. Ignite further objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this Request is overly broad and unduly burdensome. Further such documents appear to be documents in the custody and/or possession of the Defendant. Additionally, this Request seeks disclosure of proprietary and/or confidential business information of Ignite. Lastly, such Request may further seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

**Request 7:**    Documents and/or communication sufficient to show the amount Blitz has been compensated in connection with the ZRO beverage.
**Response:**    *See* General Objections. Ignite objects to this Request to the extent it requires Ignite to create documents. Ignite further objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this Request is overly broad and unduly burdensome. Further such documents appear to be documents in the custody and/or possession of the Defendant. Additionally, this Request seeks disclosure of proprietary and/or confidential business information of Ignite. Lastly, such Request may further seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

**Request 8:**    Documents and/or communication marketing the ZRO beverage as a pre-workout, workout, or after-workout beverage.

**Response:**    This Request is Duplicative. *See* General Objections. Ignite objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this Request is overly broad and unduly burdensome. Further such documents appear to be documents in the custody and/or possession of the Defendant. Additionally, this Request seeks disclosure of

Brian D. Goodrich, Esq.
BENTLEY LAW
RE:  ***Ignite Distribution Company Inc.'s Objections to Plaintiff's Subpoena Pursuant to Rule 45***
July 6, 2021
Page 5 of 8

proprietary and/or confidential business information of Ignite. Lastly, such Request may further seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

**Request 9:**    Documents and/or communication mentioning the ZRO beverage in connection with performance.

**Response:**    This Request is Duplicative. *See* General Objections. Ignite objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this Request is overly broad and unduly burdensome. Further such documents appear to be documents in the custody and/or possession of the Defendant.  Additionally, this Request seeks disclosure of proprietary and/or confidential business information of Ignite. Lastly, such Request may further seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

**Request 10:**    Documents and/or communication mentioning the ZRO beverage in connection with health or fitness.

**Response:**    This Request is Duplicative. *See* General Objections. Ignite objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this Request is overly broad and unduly burdensome. Further such documents appear to be documents in the custody and/or possession of the Defendant.  Additionally, this Request seeks disclosure of proprietary and/or confidential business information of Ignite. Lastly, such Request may further seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

**Request 11:**    Documents and/or communication showing the target audience or demographic for sales of the ZRO beverage.

**Response:**    This Request is Duplicative. *See* General Objections. Ignite objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this Request is overly broad and unduly burdensome. Further such documents appear to be documents in the custody and/or possession of the Defendant.  Additionally, this Request seeks disclosure of proprietary and/or confidential business information of Ignite. Lastly, such Request may further seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

**Request 12:**    Documents and/or communication relating to the concept for the ZRO beverage.

Brian D. Goodrich, Esq.
BENTLEY LAW
RE:   ***Ignite Distribution Company Inc.'s Objections to Plaintiff's Subpoena Pursuant to Rule 45***
July 6, 2021
Page 6 of 8

**Response:**   This Request is Duplicative. *See* General Objections. Ignite objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this Request is overly broad and unduly burdensome. Further such documents appear to be documents in the custody and/or possession of the Defendant.   Additionally, this Request seeks disclosure of proprietary and/or confidential business information of Ignite. Lastly, such Request may further seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

**Request 13:**   Documents and/or communication relating to the development of the ZRO beverage.

**Response:**   This Request is Duplicative. *See* General Objections. Ignite objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this Request is overly broad and unduly burdensome. Further such documents appear to be documents in the custody and/or possession of the Defendant.   Additionally, this Request seeks disclosure of proprietary and/or confidential business information of Ignite. Lastly, such Request may further seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

**Request 14:**   Documents and/or communication relating to the determination of the price point for the ZRO beverage.

**Response:**   This Request is Duplicative. *See* General Objections. Ignite objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this Request is overly broad and unduly burdensome. Further such documents appear to be documents in the custody and/or possession of the Defendant.   Additionally, this Request seeks disclosure of proprietary and/or confidential business information of Ignite. Lastly, such Request may further seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

**Request 15:**   Documents and/or communication sufficient to show where the ZRO beverage is sold.

**Response:**   This Request is Duplicative. *See* General Objections. Ignite objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this Request is overly broad and unduly burdensome. Further such documents appear to be documents in the custody and/or possession of the Defendant.   Additionally, this Request seeks disclosure of

Brian D. Goodrich, Esq.
BENTLEY LAW
RE:   *Ignite Distribution Company Inc.'s Objections to Plaintiff's Subpoena Pursuant to Rule 45*
July 6, 2021
Page 7 of 8

proprietary and/or confidential business information of Ignite. Lastly, such Request may further seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

**Request 16:**   Documents and/or communication relating to the lawsuit styled *Heffernan v. Ignite International, Ltd.* et al. pending in the Superior Court for the State of California, County of Los Angeles, in which Bilzerian is alleged to have misappropriated Your funds.

**Response:**   *See* General Objections. Ignite objects to this Request, as it is not a party to the lawsuit and as such none of its funds have been alleged to have been misappropriated.  Ignite further objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence.  Moreover, this Request seeks disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

**Request 17:**   Communication to or from the Federal Trade Commission relating to Bilzerian's promotion, endorsement, marketing, advertising, or publicizing of any of Your products.
**Response:**   *See* General Objections. Ignite objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence.  Moreover, this Request is overly broad and unduly burdensome.  Most importantly, this Request seeks disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

**Request 18:**   Documents and/or communication sufficient to show all of Ignite's cannabis-related products for sale or previously for sale in Canada.
**Response:**   General Objections. Ignite objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence.  Moreover, this Request is overly broad and unduly burdensome. Further such documents appear to be documents in the custody and/or possession of the Defendant.  Additionally, this Request seeks disclosure of proprietary and/or confidential business information of Ignite. Lastly, such Request may further seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

**Request 19:**   Documents and/or communication sufficient to show all of Ignite's cannabis-related products for sale or previously for sale in the United States.

**Response:**   General Objections. Ignite objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence.  Moreover, this Request is overly broad and unduly burdensome. Further such documents appear to be documents in the custody and/or possession of the Defendant.  Additionally, this Request seeks disclosure of proprietary and/or confidential

Brian D. Goodrich, Esq.
BENTLEY LAW
RE:    ***Ignite Distribution Company Inc.'s Objections to Plaintiff's Subpoena Pursuant to Rule 45***
July 6, 2021
Page 8 of 8

business information of Ignite. Lastly, such Request may further seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

Please advise us if you require any further information, clarification or have any questions.

Sincerely,
FLANGAS LAW GROUP

/s/ *Kimberly P. Stein*

Kimberly P. Stein

KPS:ah

cc:    Jason P. Stearns, Esq.
       Sarah A. Gottlieb, Esq.
       Kevin P. McCoy, Esq.

# *FLG* **FLANGAS LAW GROUP**

Writer's email: kps@fdlawlv.com

July 6, 2021

*Via email: bgoodrich@thebentleylawfirm.com*
Brian D. Goodrich, Esq.
BENTLEY LAW
783 S Orange Ave., 3rd Fl
Sarasota, FL 34236

RE:    *Ignite Spirits, Inc.'s Objections to Plaintiff's Subpoena Pursuant to Rule 45*

Dear Mr. Goodrich

Our firm is outside general counsel to Ignite International, Ltd., which owns Ignite Spirits, Inc. ("Ignite"). As such, we will be responding to the Subpoena served upon Ignite on June 23, 2021. Please allow this letter to be considered our formal objections to Plaintiff's Subpoena pursuant to Rule 45 to Ignite Spirits, Inc. for the Production of Documents ("Document Requests").

Ignite states its objections as follows:

## **GENERAL OBJECTIONS**

1. Ignite objects to the Document Requests as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, the burdens of these requests imposed upon this non-party are disproportional to the needs of the case.

2. Ignite objects to each request to the extent that it seeks information not relevant to the subject matter of this action.

3. Ignite objects to the Document Requests, and any implied or express instruction or direction in the Document Requests, that imposes or seeks to impose burdens greater than those imposed by the Federal Rules of Civil Procedure.

4. Ignite objects to the Document Requests to the extent they seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

5. Ignite objects to the Document Requests to the extent they seek disclosure of proprietary and/or confidential business information of Ignite. To the extent the Document Requests do seek such information, Ignite will respond only pursuant to a Protective Order pursuant to Fed. R. Civ. P.26(c).

Brian D. Goodrich, Esq.
BENTLEY LAW
RE:   ***Ignite Spirits, Inc.'s Objections to Plaintiff's Subpoena Pursuant to Rule 45***
July 6, 2021
Page 2 of 8

6. Ignite reserves all objections as to the competence, relevance, materiality, admissibility, or privileged status of any information provided in response to these Document Requests, unless Ignites specifically states otherwise.

7. Ignite objects to the Document Requests to the extent they require production of documents in the possession, custody, or control of former directors, officers, employees, agents, partners, representatives, and attorneys of Ignite or its subsidiaries. Documents such persons might possess are not within the possession, custody, or control of Ignite.

8. Ignite objects to the Document Requests to the extent they require production of documents in the possession, custody, or control of companies in which Ignite does not have a controlling interest, as documents are not in the possession, custody, or control of Ignite.

9. Ignite objects to the Document Requests to the extent they call for information which "relating to" or "to show" a particular topic on the ground that gathering all documents containing any reference or relationship to a particular topic is unduly burdensome and out of proportion to the documents' potential relevance.

10. Ignite objects to each request to the extent that it seeks "all," each," "any," or "every" document concerning various subjects or events, or pertaining to them in "any way," on the grounds that such requests are overly broad, unduly burdensome, oppressive, vague, and ambiguous.

11. Ignite objects to each request to the extent that production of such documents requires the formation of a legal conclusion in determining what documents may be responsive.

12. Ignite is not a party to the above to the above-referenced litigation. Most of the documents identified in the subpoena appear to be documents in the custody and/or possession of the parties to this litigation.

Ignite's general objections are applicable to, and included in, Ignite specific objections set forth below.

## SPECIFIC OBJECTIONS

**Request 1:**   Documents and/or communication relating to STEEL.

**Response:**   *See* General Objections. Ignite objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this Request is overly broad and unduly burdensome. Further such documents appear to be documents in the custody and/or possession of the Plaintiff.

Brian D. Goodrich, Esq.
BENTLEY LAW
RE:   *Ignite Spirits, Inc.'s Objections to Plaintiff's Subpoena Pursuant to Rule 45*
July 6, 2021
Page 3 of 8

**Request 2:**   Documents and/or communication relating to Blitz and/or Bilzerian's promotion, endorsement, marketing, advertising, or publication of the ZRO beverage.

**Response:**   *See* General Objections. Ignite objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence.  Moreover, this Request is overly broad and unduly burdensome. Further such documents appear to be documents in the custody and/or possession of the Defendant.  Additionally, this Request seeks disclosure of proprietary and/or confidential business information of Ignite. Lastly, such Request may further seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

**Request 3:**   Documents and/or communication relating to the promotion, endorsement, marketing, advertising, or publication of the ZRO beverage that include Bilzerian's name, image, or likeness.

**Response:**   *See* General Objections. Ignite objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence.  Moreover, this Request is overly broad and unduly burdensome. Further such documents appear to be documents in the custody and/or possession of the Defendant.  Additionally, this Request seeks disclosure of proprietary and/or confidential business information of Ignite. Lastly, such Request may further seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

**Request 4:**   Documents sufficient to show Your organizational structure.

**Response:**   *See* General Objections. Ignite objects to this Request to the extent it requires Ignite to create documents.  Ignite further objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence.  Moreover, this Request is overly broad and unduly burdensome. Further such documents appear to be documents in the custody and/or possession of the Defendant. Additionally, this Request seeks disclosure of proprietary and/or confidential business information of Ignite. Lastly, such Request may further seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

**Request 5:**   Social media content, including but not limited to videos, posts, stories, comments, and likes relating to the ZRO beverage.

**Response:**   *See* General Objections. Ignite objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence.  Moreover, this Request is overly broad and unduly

Brian D. Goodrich, Esq.
BENTLEY LAW
RE:    *Ignite Spirits, Inc.'s Objections to Plaintiff's Subpoena Pursuant to Rule 45*
July 6, 2021
Page 4 of 8

burdensome. Further such documents appear to be documents in the custody and/or possession of the Defendant.  Additionally, this Request seeks disclosure of proprietary and/or confidential business information of Ignite. Lastly, such Request may further seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

**Request 6:**    Documents and/or communication sufficient to show the amount Bilzerian has been compensated in connection with the ZRO beverage.

**Response:**    *See* General Objections. Ignite objects to this Request to the extent it requires Ignite to create documents.  Ignite further objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this Request is overly broad and unduly burdensome. Further such documents appear to be documents in the custody and/or possession of the Defendant. Additionally, this Request seeks disclosure of proprietary and/or confidential business information of Ignite. Lastly, such Request may further seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

**Request 7:**    Documents and/or communication sufficient to show the amount Blitz has been compensated in connection with the ZRO beverage.
**Response:**    *See* General Objections. Ignite objects to this Request to the extent it requires Ignite to create documents.  Ignite further objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this Request is overly broad and unduly burdensome. Further such documents appear to be documents in the custody and/or possession of the Defendant. Additionally, this Request seeks disclosure of proprietary and/or confidential business information of Ignite. Lastly, such Request may further seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

**Request 8:**    Documents and/or communication marketing the ZRO beverage as a pre-workout, workout, or after-workout beverage.

**Response:**    This Request is Duplicative. *See* General Objections. Ignite objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this Request is overly broad and unduly burdensome. Further such documents appear to be documents in the custody and/or possession of the Defendant.  Additionally, this Request seeks disclosure of proprietary and/or confidential business information of Ignite. Lastly, such Request may further seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

Brian D. Goodrich, Esq.
BENTLEY LAW
RE:   *Ignite Spirits, Inc.'s Objections to Plaintiff's Subpoena Pursuant to Rule 45*
July 6, 2021
Page 5 of 8

**Request 9:**   Documents and/or communication mentioning the ZRO beverage in connection with performance.

**Response:**   This Request is Duplicative. *See* General Objections. Ignite objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this Request is overly broad and unduly burdensome. Further such documents appear to be documents in the custody and/or possession of the Defendant. Additionally, this Request seeks disclosure of proprietary and/or confidential business information of Ignite. Lastly, such Request may further seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

**Request 10:**   Documents and/or communication mentioning the ZRO beverage in connection with health or fitness.

**Response:**   This Request is Duplicative. *See* General Objections. Ignite objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this Request is overly broad and unduly burdensome. Further such documents appear to be documents in the custody and/or possession of the Defendant. Additionally, this Request seeks disclosure of proprietary and/or confidential business information of Ignite. Lastly, such Request may further seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

**Request 11:**   Documents and/or communication showing the target audience or demographic for sales of the ZRO beverage.

**Response:**   This Request is Duplicative. *See* General Objections. Ignite objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this Request is overly broad and unduly burdensome. Further such documents appear to be documents in the custody and/or possession of the Defendant. Additionally, this Request seeks disclosure of proprietary and/or confidential business information of Ignite. Lastly, such Request may further seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

**Request 12:**   Documents and/or communication relating to the concept for the ZRO beverage.
**Response:**   This Request is Duplicative. *See* General Objections. Ignite objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this Request is overly broad and unduly burdensome. Further such documents appear to be documents in the custody and/or possession of the Defendant. Additionally, this Request seeks disclosure of

Brian D. Goodrich, Esq.
BENTLEY LAW
RE:    ***Ignite Spirits, Inc.'s Objections to Plaintiff's Subpoena Pursuant to Rule 45***
July 6, 2021
Page 6 of 8

proprietary and/or confidential business information of Ignite. Lastly, such Request may further seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

**Request 13:**    Documents and/or communication relating to the development of the ZRO beverage.

**Response:**    This Request is Duplicative. *See* General Objections. Ignite objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this Request is overly broad and unduly burdensome. Further such documents appear to be documents in the custody and/or possession of the Defendant.  Additionally, this Request seeks disclosure of proprietary and/or confidential business information of Ignite. Lastly, such Request may further seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

**Request 14:**    Documents and/or communication relating to the determination of the price point for the ZRO beverage.

**Response:**    This Request is Duplicative. *See* General Objections. Ignite objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this Request is overly broad and unduly burdensome. Further such documents appear to be documents in the custody and/or possession of the Defendant.  Additionally, this Request seeks disclosure of proprietary and/or confidential business information of Ignite. Lastly, such Request may further seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

**Request 15:**    Documents and/or communication sufficient to show where the ZRO beverage is sold.

**Response:**    This Request is Duplicative. *See* General Objections. Ignite objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this Request is overly broad and unduly burdensome. Further such documents appear to be documents in the custody and/or possession of the Defendant.  Additionally, this Request seeks disclosure of proprietary and/or confidential business information of Ignite. Lastly, such Request may further seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

Brian D. Goodrich, Esq.
BENTLEY LAW
RE:     *Ignite Spirits, Inc.'s Objections to Plaintiff's Subpoena Pursuant to Rule 45*
July 6, 2021
Page 7 of 8

**Request 16:**     Documents and/or communication relating to the lawsuit styled *Heffernan v. Ignite International, Ltd.* et al. pending in the Superior Court for the State of California, County of Los Angeles, in which Bilzerian is alleged to have misappropriated Your funds.

**Response:**     *See* General Objections. Ignite objects to this Request, as it is not a party to the lawsuit and as such none of its funds have been alleged to have been misappropriated. Ignite further objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this Request seeks disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

**Request 17:**     Communication to or from the Federal Trade Commission relating to Bilzerian's promotion, endorsement, marketing, advertising, or publicizing of any of Your products.
**Response:**     *See* General Objections. Ignite objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this Request is overly broad and unduly burdensome. Most importantly, this Request seeks disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

**Request 18:**     Documents and/or communication sufficient to show all of Ignite's cannabis-related products for sale or previously for sale in Canada.
**Response:**     General Objections. Ignite objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this Request is overly broad and unduly burdensome. Further such documents appear to be documents in the custody and/or possession of the Defendant. Additionally, this Request seeks disclosure of proprietary and/or confidential business information of Ignite. Lastly, such Request may further seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

**Request 19:**     Documents and/or communication sufficient to show all of Ignite's cannabis-related products for sale or previously for sale in the United States.

**Response:**     General Objections. Ignite objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this Request is overly broad and unduly burdensome. Further such documents appear to be documents in the custody and/or possession of the Defendant. Additionally, this Request seeks disclosure of proprietary and/or confidential business information of Ignite. Lastly, such Request may further seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

Brian D. Goodrich, Esq.
BENTLEY LAW
RE:   *Ignite Spirits, Inc.'s Objections to Plaintiff's Subpoena Pursuant to Rule 45*
July 6, 2021
Page 8 of 8


Please advise us if you require any further information, clarification or have any questions.

Sincerely,
FLANGAS LAW GROUP

/s/ *Kimberly P. Stein*

Kimberly P. Stein

KPS:ah

cc:   Jason P. Stearns, Esq.
      Sarah A. Gottlieb, Esq.
      Kevin P. McCoy, Esq.

KIMBERLY P. STEIN, ESQ.
Nevada Bar No. 8675
Email: kps@fdlawlv.com
FLANGAS LAW GROUP
3275 South Jones Boulevard, Suite 105
Las Vegas, NV 89146
Telephone: (702) 307-9500
*Attorneys for Ignite International, Ltd.*

# UNITED STATES DISTRICT COURT
## for the
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| STEEL SUPPLEMENTS, INC., a Florida Corporation, <br><br> Plaintiff, <br><br> v. <br><br> BLITZ NV, LLC, a Nevada limited liability Company, <br><br> Defendant. | Case No. 8:20-CV-2971-T-02-AEP <br><br> **IGNITE INTERNATIONAL, LTD.'S OBJECTIONS TO PLAINTIFF'S SUBPOENA PURSUANT TO RULE 45** |

TO: Plaintiff, STEEL SUPPLEMENTS, INC. and its attorneys Brian D. Goodrich, Esq. of Bentley Law, and Jason P. Stearns, Esq. and Sarah A. Gottlieb, Esq. of FREEBORN & PETERS, LLP.

Pursuant to Rule 45 of the Federal Rules of Civil Procedure Ignite International, Ltd. ("Ignite") states its objections to Plaintiff's Subpoena pursuant to Rule 45 to Ignite International, Ltd. for the Production of Documents ("Document Requests") as follows:

## GENERAL OBJECTIONS

1. Ignite objects to the Document Requests as overly broad, unduly burdensome. Moreover, the burdens of these requests imposed upon this non-party are disproportional to the needs of the case.

2. Ignite objects to each request to the extent that it seeks information not relevant to the subject matter of this action.

3. Ignite objects to the Document Requests, and any implied or express instruction or direction in the Document Requests, that imposes or seeks to impose burdens greater than those imposed by the Federal Rules of Civil Procedure.

4. Ignite objects to the Document Requests to the extent they seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

5. Ignite objects to the Document Requests to the extent they seek disclosure of proprietary and/or confidential business information of Ignite. To the extent the Document Requests do seek such information, Ignite will respond only pursuant to a Protective Order pursuant to Fed. R. Civ. P.26(c).

6. Ignite reserves all objections as to the competence, relevance, materiality, admissibility, or privileged status of any information provided in response to these Document Requests, unless Ignites specifically states otherwise.

7. Ignite objects to the Document Requests to the extent they require production of documents in the possession, custody, or control of former directors, officers, employees, agents, partners, representatives, and attorneys of Ignite or its subsidiaries. Documents such persons might possess are not within the possession, custody, or control of Ignite.

8. Ignite objects to the Document Requests to the extent they require production of documents in the possession, custody, or control of companies in which Ignite does not have a controlling interest, as documents are not in the possession, custody, or control of Ignite.

9. Ignite objects to the Document Requests to the extent they call for information which "relating to" or "to show" a particular topic on the ground that gathering all documents containing any reference or relationship to a particular topic is unduly burdensome and out of proportion to the documents' potential relevance.

10. Ignite objects to each request to the extent that it seeks "all," each," "any," or "every" document concerning various subjects or events, or pertaining to them in "any way," on the grounds that such requests are overly broad, unduly burdensome, oppressive,

1   vague, and ambiguous.

2   · 11. Ignite objects to each request to the extent that production of such documents

3   requires the formation of a legal conclusion in determining what documents may be

4   responsive.

5   12. Ignite is not a party to the above to the above-referenced litigation. Most of the

6   documents identified in the subpoena appear to be documents in the custody and/or

7   possession of the parties to this litigation.

8   Ignite's general objections are applicable to, and included in, Ignite specific

9   objections set forth below.

10   **SPECIFIC OBJECTIONS**

11   **Request 1:**      Documents and/or communication relating to STEEL.

12   **Response:**      *See* General Objections.  Ignite objects to this Request to the extent that it

13   seeks information not relevant to the subject matter of this action and/or is not reasonably

14   calculated to lead to the discovery of admissible evidence.  Moreover, this Request is

15   overly broad and unduly burdensome. Further such documents appear to be documents in

16   the custody and/or possession of the Plaintiff.

17   **Request 2:**      Documents and/or communication relating to Blitz and/or Bilzerian's

18   promotion, endorsement, marketing, advertising, or publication of the ZRO beverage.

19   **Response:**      *See* General Objections. Ignite objects to this Request to the extent that it

20   seeks information not relevant to the subject matter of this action and/or is not reasonably

21   calculated to lead to the discovery of admissible evidence.  Moreover, this Request is

22   overly broad and unduly burdensome. Further such documents appear to be documents in

23   the custody and/or possession of the Defendant.   Additionally, this Request seeks

24   disclosure of proprietary and/or confidential business information of Ignite. Lastly, such

25   Request may further seek disclosure of information protected under the attorney-client

26   privilege, the work-product doctrine, or any other applicable privilege or immunity.

27   **Request 3:**      Documents and/or communication relating to the promotion, endorsement,

28   marketing, advertising, or publication of the ZRO beverage that include Bilzerian's name,

1   image, or likeness.

2   **Response:**   *See* General Objections. Ignite objects to this Request to the extent that it

3   seeks information not relevant to the subject matter of this action and/or is not reasonably

4   calculated to lead to the discovery of admissible evidence.  Moreover, this Request is

5   overly broad and unduly burdensome. Further such documents appear to be documents in

6   the custody and/or possession of the Defendant.   Additionally, this Request seeks

7   disclosure of proprietary and/or confidential business information of Ignite. Lastly, such

8   Request may further seek disclosure of information protected under the attorney-client

9   privilege, the work-product doctrine, or any other applicable privilege or immunity.

10   **Request 4:**   Documents sufficient to show Your organizational structure.

11   **Response:**   *See* General Objections. Ignite objects to this Request to the extent it

12   requires Ignite to create documents.  Ignite further objects to this Request to the extent that

13   it seeks information not relevant to the subject matter of this action and/or is not reasonably

14   calculated to lead to the discovery of admissible evidence.  Moreover, this Request is

15   overly broad and unduly burdensome. Further such documents appear to be documents in

16   the custody and/or possession of the Defendant.   Additionally, this Request seeks

17   disclosure of proprietary and/or confidential business information of Ignite. Lastly, such

18   Request may further seek disclosure of information protected under the attorney-client

19   privilege, the work-product doctrine, or any other applicable privilege or immunity.

20   **Request 5:**   Social media content, including but not limited to videos, posts, stories,

21   comments, and likes relating to the ZRO beverage.

22   **Response:**   *See* General Objections. Ignite objects to this Request to the extent that it

23   seeks information not relevant to the subject matter of this action and/or is not reasonably

24   calculated to lead to the discovery of admissible evidence.  Moreover, this Request is

25   overly broad and unduly burdensome. Further such documents appear to be documents in

26   the custody and/or possession of the Defendant.   Additionally, this Request seeks

27   disclosure of proprietary and/or confidential business information of Ignite. Lastly, such

28   Request may further seek disclosure of information protected under the attorney-client

1   privilege, the work-product doctrine, or any other applicable privilege or immunity.

2   **Request 6:**      Documents and/or communication sufficient to show the amount Bilzerian

3   has been compensated in connection with the ZRO beverage.

4   **Response:**      *See* General Objections. Ignite objects to this Request to the extent it

5   requires Ignite to create documents. Ignite further objects to this Request to the extent that

6   it seeks information not relevant to the subject matter of this action and/or is not reasonably

7   calculated to lead to the discovery of admissible evidence.  Moreover, this Request is

8   overly broad and unduly burdensome. Further such documents appear to be documents in

9   the custody and/or possession of the Defendant.   Additionally, this Request seeks

10  disclosure of proprietary and/or confidential business information of Ignite. Lastly, such

11  Request may further seek disclosure of information protected under the attorney-client

12  privilege, the work-product doctrine, or any other applicable privilege or immunity.

13  **Request 7:**      Documents and/or communication sufficient to show the amount Blitz has

14  been compensated in connection with the ZRO beverage.

15  **Response:**      *See* General Objections. Ignite objects to this Request to the extent it

16  requires Ignite to create documents. Ignite further objects to this Request to the extent that

17  it seeks information not relevant to the subject matter of this action and/or is not reasonably

18  calculated to lead to the discovery of admissible evidence.  Moreover, this Request is

19  overly broad and unduly burdensome. Further such documents appear to be documents in

20  the custody and/or possession of the Defendant.   Additionally, this Request seeks

21  disclosure of proprietary and/or confidential business information of Ignite. Lastly, such

22  Request may further seek disclosure of information protected under the attorney-client

23  privilege, the work-product doctrine, or any other applicable privilege or immunity.

24  **Request 8:**      Documents and/or communication marketing the ZRO beverage as a pre-

25  workout, workout, or after-workout beverage.

26  **Response:**      This Request is Duplicative. *See* General Objections. Ignite objects to this

27  Request to the extent that it seeks information not relevant to the subject matter of this

28  action and/or is not reasonably calculated to lead to the discovery of admissible evidence.

1   Moreover, this Request is overly broad and unduly burdensome. Further such documents
2   appear to be documents in the custody and/or possession of the Defendant.  Additionally,
3   this Request seeks disclosure of proprietary and/or confidential business information of
4   Ignite. Lastly, such Request may further seek disclosure of information protected under the
5   attorney-client privilege, the work-product doctrine, or any other applicable privilege or
6   immunity.

7   **Request 9:**   Documents and/or communication mentioning the ZRO beverage in
8   connection with performance.

9   **Response:**   This Request is Duplicative. *See* General Objections. Ignite objects to this
10  Request to the extent that it seeks information not relevant to the subject matter of this
11  action and/or is not reasonably calculated to lead to the discovery of admissible evidence.
12  Moreover, this Request is overly broad and unduly burdensome. Further such documents
13  appear to be documents in the custody and/or possession of the Defendant.  Additionally,
14  this Request seeks disclosure of proprietary and/or confidential business information of
15  Ignite. Lastly, such Request may further seek disclosure of information protected under the
16  attorney-client privilege, the work-product doctrine, or any other applicable privilege or
17  immunity.

18  **Request 10:**   Documents and/or communication mentioning the ZRO beverage in
19  connection with health or fitness.

20  **Response:**   This Request is Duplicative. *See* General Objections. Ignite objects to this
21  Request to the extent that it seeks information not relevant to the subject matter of this
22  action and/or is not reasonably calculated to lead to the discovery of admissible evidence.
23  Moreover, this Request is overly broad and unduly burdensome. Further such documents
24  appear to be documents in the custody and/or possession of the Defendant.  Additionally,
25  this Request seeks disclosure of proprietary and/or confidential business information of
26  Ignite. Lastly, such Request may further seek disclosure of information protected under the
27  attorney-client privilege, the work-product doctrine, or any other applicable privilege or
28  immunity.

**Request 11:**   Documents and/or communication showing the target audience or demographic for sales of the ZRO beverage.

**Response:**   This Request is Duplicative. *See* General Objections. Ignite objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this Request is overly broad and unduly burdensome. Further such documents appear to be documents in the custody and/or possession of the Defendant.  Additionally, this Request seeks disclosure of proprietary and/or confidential business information of Ignite. Lastly, such Request may further seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

**Request 12:**   Documents and/or communication relating to the concept for the ZRO beverage.

**Response:**   This Request is Duplicative. *See* General Objections. Ignite objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this Request is overly broad and unduly burdensome. Further such documents appear to be documents in the custody and/or possession of the Defendant.  Additionally, this Request seeks disclosure of proprietary and/or confidential business information of Ignite. Lastly, such Request may further seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

**Request 13:**   Documents and/or communication relating to the development of the ZRO beverage.

**Response:**   This Request is Duplicative. *See* General Objections. Ignite objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this Request is overly broad and unduly burdensome. Further such documents

1   appear to be documents in the custody and/or possession of the Defendant.  Additionally,

2   this Request seeks disclosure of proprietary and/or confidential business information of

3   Ignite. Lastly, such Request may further seek disclosure of information protected under the

4   attorney-client privilege, the work-product doctrine, or any other applicable privilege or

5   immunity.

6   **Request 14:**     Documents and/or communication relating to the determination of the price

7   point for the ZRO beverage.

8   **Response:**     This Request is Duplicative.  *See* General Objections. Ignite objects to this

9   Request to the extent that it seeks information not relevant to the subject matter of this

10  action and/or is not reasonably calculated to lead to the discovery of admissible evidence.

11  Moreover, this Request is overly broad and unduly burdensome. Further such documents

12  appear to be documents in the custody and/or possession of the Defendant.  Additionally,

13  this Request seeks disclosure of proprietary and/or confidential business information of

14  Ignite. Lastly, such Request may further seek disclosure of information protected under the

15  attorney-client privilege, the work-product doctrine, or any other applicable privilege or

16  immunity.

17  **Request 15:**     Documents and/or communication sufficient to show where the ZRO

18  beverage is sold.

19  **Response:**     This Request is Duplicative.  *See* General Objections. Ignite objects to this

20  Request to the extent that it seeks information not relevant to the subject matter of this

21  action and/or is not reasonably calculated to lead to the discovery of admissible evidence.

22  Moreover, this Request is overly broad and unduly burdensome. Further such documents

23  appear to be documents in the custody and/or possession of the Defendant.  Additionally,

24  this Request seeks disclosure of proprietary and/or confidential business information of

25  Ignite. Lastly, such Request may further seek disclosure of information protected under the

26  attorney-client privilege, the work-product doctrine, or any other applicable privilege or

27  immunity.

28  / / /

**Request 16:**   Documents and/or communication relating to the lawsuit styled *Heffernan v. Ignite International, Ltd. et al.* pending in the Superior Court for the State of California, County of Los Angeles, in which Bilzerian is alleged to have misappropriated Your funds.

**Response:**   *See* General Objections. Ignite objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence.  Moreover, this Request is overly broad and unduly burdensome.  Most importantly, this Request seeks disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

**Request 17:**   Communication to or from the Federal Trade Commission relating to Bilzerian's promotion, endorsement, marketing, advertising, or publicizing of any of Your products.

**Response:**   *See* General Objections. Ignite objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence.  Moreover, this Request is overly broad and unduly burdensome.  Most importantly, this Request seeks disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

**Request 18:**   Documents and/or communication sufficient to show all of Ignite's cannabis-related products for sale or previously for sale in Canada.

**Response:**   General Objections. Ignite objects to this request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence.  Moreover, this Request is overly broad and unduly burdensome. Further such documents appear to be documents in the custody and/or possession of the Defendant.   Additionally, this Request seeks disclosure of proprietary and/or confidential business information of Ignite. Lastly, such Request may further seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

**Request 19:** Documents and/or communication sufficient to show all of Ignite's cannabis-related products for sale or previously for sale in the United States.

**Response:** General Objections. Ignite objects to this Request to the extent that it seeks information not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this Request is overly broad and unduly burdensome. Further such documents appear to be documents in the custody and/or possession of the Defendant. Additionally, this Request seeks disclosure of proprietary and/or confidential business information of Ignite. Lastly, such Request may further seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

Dated this 6th day of July, 2021.

**FLANGAS LAW GROUP**

*/s/Kimberly P. Stein*
KIMBERLY P. STEIN, ESQ. (NBN 8675)
E-mail: kps@fdlawlv.com
3275 South Jones Blvd., Suite 105
Las Vegas, Nevada 89146
*Attorneys for Ignite International, Ltd.*

**CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that on July 6, 2021, that I electronically served a true and correct copy of the foregoing **IGNITE INTERNATIONAL, LTD.'S OBJECTIONS TO PLAINTIFF'S SUBPOENA PURSUANT TO RULE 45** to:

Brian D. Goodrich, Esq.
BENTLEY LAW
783 S Orange Ave., 3rd Fl
Sarasota, FL 34236
Email: bgoodrich@thebentleylawfirm.com
*Attorneys for Plaintiff*


Jason P. Stearns, Esq. *(pro hac vice)*
Sarah A. Gottlieb, Esq. *(pro hac vice)*
FREEBORN & PETERS, LLP
One Tampa City Center
201 North Franklin Street, Suite 3550
Tampa, FL 33602
jstearns@freeborn.com
sgottlieb@freeborn.com
*Attorneys for Plaintiff*


Kevin P. McCoy
CARLTON FIELDS, P.A.
4221 W. Boy Scout Blvd., Ste. 1000
Tampa, FL 33607-5780
kmccoy@carltonfields.com
*Attorneys for Defendant*


/s/Andi Hughes
An employee of Flangas Law Group

1   KIMBERLY P. STEIN, ESQ.
    Nevada Bar No. 8675
2   Email: kps@fdlawlv.com
    FLANGAS LAW GROUP
3   3275 South Jones Boulevard, Suite 105
    Las Vegas, NV 89146
4   Telephone: (702) 307-9500
    *Attorneys for Ignite International, Ltd.*
5

6
                    **UNITED STATES DISTRICT COURT**
7                               **for the**
                     **MIDDLE DISTRICT OF FLORIDA**
8

9

10  STEEL SUPPLEMENTS, INC., a Florida          Case No. 8:20-CV-2971-T-02-AEP
    Corporation,
11                                              **IGNITE INTERNATIONAL, LTD.'S**
                      Plaintiff,                **RESPONSES TO PLAINTIFF'S**
12                                              **SUBPOENA DUCES TECUM**
            v.
13
    BLITZ NV, LLC, a Nevada limited liability
14  Company,
15                    Defendant.

16

17          TO: Plaintiff, STEEL SUPPLEMENTS, INC. and its attorneys Brian D. Goodrich,

18  Esq. of Bentley Law, and Jason P. Stearns, Esq. and Sarah A. Gottlieb, Esq. of FREEBORN

19  & PETERS, LLP.

20          Pursuant to Rule 45 of the Federal Rules of Civil Procedure non-party Ignite

21  International, Ltd. ("Ignite") hereby provides these responses to Plaintiff's Subpoena to

22  Ignite International, Ltd. for the Production of Documents ("Document Requests"), subject

23  to the formal objections previously served on July 6, 2021 and incorporated herein, as

24  follows:

25                              **RESPONSES**

26  **Request 1:**   Documents and/or communication relating to STEEL.

27  **Response:**    Subject to and without waiving its General and Specific Objections, Ignite

28  responds that it is still in the process of performing a diligent and reasonable search in an

effort to comply with these Requests, but at this time has found no responsive documents within its own custody, possession, or control.  As the search is continuing, Ignite will supplement this Response if any such documents are found.  Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld.

**Request 2:**     Documents and/or communication relating to Blitz and/or Bilzerian's promotion, endorsement, marketing, advertising, or publication of the ZRO beverage.

**Response:**     Subject to and without waiving its General and Specific Objections, Ignite responds that it is still in the process of performing a diligent and reasonable search in an effort to comply with these Requests, but at this time has found no responsive documents within its own custody, possession, or control.  As the search is continuing, Ignite will supplement this Response if any such documents are found.  Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld.  Moreover, Ignite is a 100% owned subsidiary of Ignite International Brands, Ltd., as was Ignite Beverages, Inc., and as is Ignite Distribution, Inc. and Ignite Distribution Company Inc., the companies that would have or are distributing the ZRO beverage, and as such, would have any responses to this Request.

**Request 3:**     Documents and/or communication relating to the promotion, endorsement, marketing, advertising, or publication of the ZRO beverage that include Bilzerian's name, image, or likeness.

**Response:**     Subject to and without waiving its General and Specific Objections, Ignite responds that it is still in the process of performing a diligent and reasonable search in an effort to comply with these Requests, but at this time has found no responsive documents within its own custody, possession, or control.  As the search is continuing, Ignite will supplement this Response if any such documents are found.  Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld.  Moreover, Ignite is a 100% owned subsidiary of Ignite International Brands, Ltd., as was Ignite Beverages, Inc. and as is Ignite Distribution, Inc.

-2-

1   and Ignite Distribution Company Inc., the companies that would have or are distributing

2   the ZRO beverage, and as such, would have any responses to this Request.

3   **Request 4:**   Documents sufficient to show Your organizational structure.

4   **Response:**   Subject to and without waiving its General and Specific Objections, Ignite

5   responds that having performed a diligent search and reasonable search in an effort to

6   comply with these Requests, it has no responsive documents within its own custody,

7   possession, or control.  Ignite further advises that no documents have been deleted and that

8   it does not know of any documents at this time that have been purposely withheld.

9   Moreover, Ignite is a 100% owned subsidiary of Ignite International Brands, Ltd., a

10   publicly traded company out of Canada and not subject to this Subpoena, and the company

11   that would have this information, if it existed.

12   **Request 5:**   Social media content, including but not limited to videos, posts, stories,

13   comments, and likes relating to the ZRO beverage.

14   **Response:**   Subject to and without waiving its General and Specific Objections, Ignite

15   responds that it is still in the process of performing a diligent and reasonable search in an

16   effort to comply with these Requests, but at this time has found no responsive documents

17   within its own custody, possession, or control.  As the search is continuing, Ignite will

18   supplement this Response if any such documents are found.  Ignite further advises that no

19   documents have been deleted and that it does not know of any documents at this time that

20   have been purposely withheld.  Moreover, Ignite is a 100% owned subsidiary of Ignite

21   International Brands, Ltd., as was Ignite Beverages, Inc. and as is Ignite Distribution, Inc.

22   and Ignite Distribution Company Inc., the companies that would have or are distributing

23   the ZRO beverage, and as such, would have any responses to this Request.

24   **Request 6:**   Documents and/or communication sufficient to show the amount Bilzerian

25   has been compensated in connection with the ZRO beverage.

26   **Response:**   Subject to and without waiving its General and Specific Objections, Ignite

27   responds that it is still in the process of performing a diligent and reasonable search in an

28   effort to comply with these Requests, but at this time has found no responsive documents

within its own custody, possession, or control.  As the search is continuing, Ignite will supplement this Response if any such documents are found.  Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld.  Moreover, Ignite is a 100% owned subsidiary of Ignite International Brands, Ltd., as was Ignite Beverages, Inc. and as is Ignite Distribution, Inc. and Ignite Distribution Company Inc., the companies that would have or are distributing the ZRO beverage, and as such, would have any responses to this Request.

**Request 7:**     Documents and/or communication sufficient to show the amount Blitz has been compensated in connection with the ZRO beverage.

**Response:**     Subject to and without waiving its General and Specific Objections, Ignite responds that it is still in the process of performing a diligent and reasonable search in an effort to comply with these Requests, but at this time has found no responsive documents within its own custody, possession, or control.  As the search is continuing, Ignite will supplement this Response if any such documents are found.  Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld.  Moreover, Ignite is a 100% owned subsidiary of Ignite International Brands, Ltd., as was Ignite Beverages, Inc. and as is Ignite Distribution, Inc. and Ignite Distribution Company Inc., the companies that would have or are distributing the ZRO beverage, and as such, would have any responses to this Request.

**Request 8:**     Documents and/or communication marketing the ZRO beverage as a pre-workout, workout, or after-workout beverage.

**Response:**     Subject to and without waiving its General and Specific Objections, Ignite responds that it is still in the process of performing a diligent and reasonable search in an effort to comply with these Requests, but at this time has found no responsive documents within its own custody, possession, or control.  As the search is continuing, Ignite will supplement this Response if any such documents are found.  Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld.  Moreover, Ignite is a 100% owned subsidiary of Ignite

1   International Brands, Ltd., as was Ignite Beverages, Inc. and as is Ignite Distribution, Inc.

2   and Ignite Distribution Company Inc., the companies that would have developed or are

3   distributing the ZRO beverage, and as such, would have any responses to this Request.

4   **Request 9:**   Documents and/or communication mentioning the ZRO beverage in

5   connection with performance.

6   **Response:**   Subject to and without waiving its General and Specific Objections, Ignite

7   responds that it is still in the process of performing a diligent and reasonable search in an

8   effort to comply with these Requests, but at this time has found no responsive documents

9   within its own custody, possession, or control.  As the search is continuing, Ignite will

10  supplement this Response if any such documents are found.  Ignite further advises that no

11  documents have been deleted and that it does not know of any documents at this time that

12  have been purposely withheld.  Moreover, Ignite is a 100% owned subsidiary of Ignite

13  International Brands, Ltd., as was Ignite Beverages, Inc. and as is Ignite Distribution, Inc.

14  and Ignite Distribution Company Inc., the companies that would have or are distributing

15  the ZRO beverage, and as such, would have any responses to this Request.

16  **Request 10:**   Documents and/or communication mentioning the ZRO beverage in

17  connection with health or fitness.

18  **Response:**   Subject to and without waiving its General and Specific Objections, Ignite

19  responds that it is still in the process of performing a diligent and reasonable search in an

20  effort to comply with these Requests, but at this time has found no responsive documents

21  within its own custody, possession, or control.  As the search is continuing, Ignite will

22  supplement this Response if any such documents are found.  Ignite further advises that no

23  documents have been deleted and that it does not know of any documents at this time that

24  have been purposely withheld.  Moreover, Ignite is a 100% owned subsidiary of Ignite

25  International Brands, Ltd., as was Ignite Beverages, Inc. and as is Ignite Distribution, Inc.

26  and Ignite Distribution Company Inc., the companies that would have developed or are

27  distributing the ZRO beverage, and as such, would have any responses to this Request.

28  ///

1   **Request 11:**   Documents and/or communication showing the target audience or
2   demographic for sales of the ZRO beverage.

3   **Response:**      Subject to and without waiving its General and Specific Objections, Ignite
4   responds that it is still in the process of performing a diligent and reasonable search in an
5   effort to comply with these Requests, but at this time has found no responsive documents
6   within its own custody, possession, or control.  As the search is continuing, Ignite will
7   supplement this Response if any such documents are found.  Ignite further advises that no
8   documents have been deleted and that it does not know of any documents at this time that
9   have been purposely withheld.  Moreover, Ignite is a 100% owned subsidiary of Ignite
10  International Brands, Ltd., as was Ignite Beverages, Inc. and as is Ignite Distribution, Inc.
11  and Ignite Distribution Company Inc., the companies that would have or are distributing
12  the ZRO beverage, and as such, would have any responses to this Request.

13  **Request 12:**   Documents and/or communication relating to the concept for the ZRO
14  beverage.

15  **Response:**      Subject to and without waiving its General and Specific Objections, Ignite
16  responds that it is still in the process of performing a diligent and reasonable search in an
17  effort to comply with these Requests, but at this time has found no responsive documents
18  within its own custody, possession, or control.  As the search is continuing, Ignite will
19  supplement this Response if any such documents are found.  Ignite further advises that no
20  documents have been deleted and that it does not know of any documents at this time that
21  have been purposely withheld.  Moreover, Ignite is a 100% owned subsidiary of Ignite
22  International Brands, Ltd., as was Ignite Beverages, Inc. and as is Ignite Distribution, Inc.
23  and Ignite Distribution Company Inc.. the companies that would have developed or are
24  distributing the ZRO beverage, and as such, would have any responses to this Request..

25  **Request 13:**   Documents and/or communication relating to the development of the ZRO
26  beverage.

27  **Response:**      Subject to and without waiving its General and Specific Objections, Ignite
28  responds that it is still in the process of performing a diligent and reasonable search in an

1   effort to comply with these Requests, but at this time has found no responsive documents
2   within its own custody, possession, or control.  As the search is continuing, Ignite will
3   supplement this Response if any such documents are found.  Ignite further advises that no
4   documents have been deleted and that it does not know of any documents at this time that
5   have been purposely withheld.  Moreover, Ignite is a 100% owned subsidiary of Ignite
6   International Brands, Ltd., as was Ignite Beverages, Inc. and as is Ignite Distribution, Inc.
7   and Ignite Distribution Company Inc., the companies that would have developed or are
8   distributing the ZRO beverage, and as such, would have any responses to this Request..

9   **Request 14:**     Documents and/or communication relating to the determination of the price
10  point for the ZRO beverage.

11  **Response:**     Subject to and without waiving its General and Specific Objections, Ignite
12  responds that it is still in the process of performing a diligent and reasonable search in an
13  effort to comply with these Requests, but at this time has found no responsive documents
14  within its own custody, possession, or control.  As the search is continuing, Ignite will
15  supplement this Response if any such documents are found.  Ignite further advises that no
16  documents have been deleted and that it does not know of any documents at this time that
17  have been purposely withheld.  Moreover, Ignite is a 100% owned subsidiary of Ignite
18  International Brands, Ltd., as was Ignite Beverages, Inc. and as is Ignite Distribution, Inc.
19  and Ignite Distribution Company Inc., the companies that would have or are distributing
20  the ZRO beverage, and as such. would have any responses to this Request.

21  **Request 15:**   Documents and/or communication sufficient to show where the ZRO
22  beverage is sold.

23  **Response:**     Subject to and without waiving its General and Specific Objections, Ignite
24  responds that it is still in the process of performing a diligent and reasonable search in an
25  effort to comply with these Requests. but at this time has found no responsive documents
26  within its own custody, possession, or control.  As the search is continuing, Ignite will
27  supplement this Response if any such documents are found.  Ignite further advises that no
28  documents have been deleted and that it does not know of any documents at this time that

have been purposely withheld.  Moreover, Ignite is a 100% owned subsidiary of Ignite International Brands, Ltd., as was Ignite Beverages, Inc. and as is Ignite Distribution, Inc. and Ignite Distribution Company Inc., the companies that would have or are distributing the ZRO beverage, and as such, would have any responses to this Request.

**Request 16:**   Documents and/or communication relating to the lawsuit styled *Heffernan v. Ignite International, Ltd. et al.* pending in the Superior Court for the State of California, County of Los Angeles, in which Bilzerian is alleged to have misappropriated Your funds.

**Response:**      Subject to and without waiving its General and Specific Objections, Ignite responds that the filings concerning the lawsuit are of public record and can be accessed as such, and that any other documents/communications relating to the lawsuit are subject to attorney-client privilege, and as such will not be produced.

**Request 17:**   Communication to or from the Federal Trade Commission relating to Bilzerian's promotion, endorsement, marketing, advertising, or publicizing of any of Your products.

**Response:**      Subject to and without waiving its General and Specific Objections, Ignite responds: None.

**Request 18:**    Documents and/or communication sufficient to show all of Ignite's cannabis-related products for sale or previously for sale in Canada.

**Response:**      Subject to and without waiving its General and Specific Objections, Ignite responds: None, as Ignite only hand les sales within the United States.

**Request 19:**   Documents and/or communication sufficient to show all of Ignite's cannabis-related products for sale or previously for sale in the United States.

**Response:**      Subject to and without waiving its General and Specific Objections, Ignite responds that it is still in the process of performing a diligent and reasonable search in an effort to comply with these Requests, but at this time has found no responsive documents within its own custody, possession, or control.  As the search is continuing, Ignite will supplement this Response if any such documents are found.  Ignite further advises that no

1   documents have been deleted and that it does not know of any documents at this time that

2   have been purposely withheld.  Moreover, Ignite is a 100% owned subsidiary of Ignite

3   International Brands, Ltd., and as such, the reporting of sales would be included in the

4   consolidated statements of the parent, which are publicly available, but are not in Ignite's

5   possession or control.

6        Dated this 2nd day of August, 2021.

7   **FLANGAS LAW GROUP**

8

9   */s/Kimberly P. Stein*
    KIMBERLY P. STEIN, ESQ.  (NBN 8675)
    E-mail: kps@fdlawlv.com
10  3275 South Jones Blvd., Suite 105
    Las Vegas, Nevada 89146
11  *Attorneys for Ignite International, Ltd.*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2

  I, the undersigned, do hereby certify that on August 2, 2021, that I electronically

3

served a true and correct copy of the foregoing **IGNITE INTERNATIONAL, LTD.'S**

4

**RESPONSES TO PLAINTIFF'S SUBPOENA DUCES TECUM** to:

5

Brian D. Goodrich, Esq.
BENTLEY LAW

6

783 S Orange Ave., 3rd Fl
Sarasota, FL 34236

7

Email: bgoodrich@thebentleylawfirm.com

8

*Attorneys for Plaintiff*

9

10

Jason P. Stearns, Esq. *(pro hac vice)*
Sarah A. Gottlieb, Esq. *(pro hac vice)*
FREEBORN & PETERS, LLP

11

One Tampa City Center
201 North Franklin Street, Suite 3550

12

Tampa, FL 33602
jstearns@freeborn.com

13

sgottlieb@freeborn.com
*Attorneys for Plaintiff*

14

15

Kevin P. McCoy
CARLTON FIELDS, P.A.

16

4221 W. Boy Scout Blvd., Ste. 1000
Tampa, FL 33607-5780

17

kmccoy@carltonfields.com
*Attorneys for Defendant*

18

19

20

        /s/Andi Hughes

21

        An employee of Flangas Law Group

22

23

24

25

26

27

28

-10-

# *FLG* **FLANGAS LAW GROUP**

Writer's email: kps@fdlawlv.com

August 2, 2021

*Via email: bgoodrich@thebentleylawfirm.com*
Brian D. Goodrich, Esq.
BENTLEY LAW
783 S Orange Ave., 3rd Fl
Sarasota, FL 34236

RE:   ***Ignite Spirits, Inc.'s Responses to Plaintiff's Subpoena Pursuant to Rule 45***

Dear Mr. Goodrich

As you are aware, our firm is outside general counsel to Ignite International, Ltd., which owns Ignite Spirits, Inc. ("Ignite"). As such, we will be responding to Plaintiff's Subpoena pursuant to Rule 45 to Ignite Spirits, Inc. for the Production of Documents ("Document Requests") served upon Ignite on June 23, 2021, and based on the extension granted by you such responses are being served as of today. The Responses below are subject to our formal objections previously served on July 6, 2021 and are incorporated herein.

Ignite responds as follows:

## **RESPONSES**

**Request 1:**   Documents and/or communication relating to STEEL.

**Response:**   Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control. Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld.

**Request 2:**   Documents and/or communication relating to Blitz and/or Bilzerian's promotion, endorsement, marketing, advertising, or publication of the ZRO beverage.

**Response:**   Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control. Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld. Moreover, Ignite was not formed until July 29, 2020, and for the purpose of facilitating distribution of Ignite branded alcohol-based beverages, which does not include the ZRO beverage.

---

Brian D. Goodrich, Esq.
BENTLEY LAW
RE:   *Ignite Spirits, Inc.'s Responses to Plaintiff's Subpoena Pursuant to Rule 45*
August 2, 2021
Page 2 of 6

**Request 3:**   Documents and/or communication relating to the promotion, endorsement, marketing, advertising, or publication of the ZRO beverage that include Bilzerian's name, image, or likeness.

**Response:**   Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control. Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld. Moreover, Ignite was not formed until July 29, 2020, and for the purpose of facilitating distribution of Ignite branded alcohol-based beverages, which does not include the ZRO beverage.

**Request 4:**   Documents sufficient to show Your organizational structure.

**Response:**   Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control. Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld. Moreover, Ignite is a 100% owned subsidiary of Ignite International Brands, Ltd., a publicly traded company out of Canada and not subject to this Subpoena.

**Request 5:**   Social media content, including but not limited to videos, posts, stories, comments, and likes relating to the ZRO beverage.

**Response:**   Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control. Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld. Moreover, Ignite was not formed until July 29, 2020, and for the purpose of facilitating distribution of Ignite branded alcohol-based beverages, which does not include the ZRO beverage.

**Request 6:**   Documents and/or communication sufficient to show the amount Bilzerian has been compensated in connection with the ZRO beverage.

**Response:**   Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control. Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld. Moreover, Ignite was not formed until July 29,

Brian D. Goodrich, Esq.
BENTLEY LAW
RE:   *Ignite Spirits, Inc.'s Responses to Plaintiff's Subpoena Pursuant to Rule 45*
August 2, 2021
Page 3 of 6

2020, and for the purpose of facilitating distribution of Ignite branded alcohol-based beverages, which does not include the ZRO beverage.

**Request 7:**   Documents and/or communication sufficient to show the amount Blitz has been compensated in connection with the ZRO beverage.

**Response:**   Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control. Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld. Moreover, Ignite was not formed until July 29, 2020, and for the purpose of facilitating distribution of Ignite branded alcohol-based beverages, which does not include the ZRO beverage.

**Request 8:**   Documents and/or communication marketing the ZRO beverage as a pre-workout, workout, or after-workout beverage.

**Response:**   Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control. Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld. Moreover, Ignite was not formed until July 29, 2020, and for the purpose of facilitating distribution of Ignite branded alcohol-based beverages, which does not include the ZRO beverage.

**Request 9:**   Documents and/or communication mentioning the ZRO beverage in connection with performance.

**Response:**   Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control. Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld. Moreover, Ignite was not formed until July 29, 2020, and for the purpose of facilitating distribution of Ignite branded alcohol-based beverages, which does not include the ZRO beverage.

**Request 10:**   Documents and/or communication mentioning the ZRO beverage in connection with health or fitness.

**Response:**   Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control. Ignite

Brian D. Goodrich, Esq.
BENTLEY LAW
RE:   *Ignite Spirits, Inc.'s Responses to Plaintiff's Subpoena Pursuant to Rule 45*
August 2, 2021
Page 4 of 6

further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld.  Moreover, Ignite was not formed until July 29, 2020, and for the purpose of facilitating distribution of Ignite branded alcohol-based beverages, which does not include the ZRO beverage.

**Request 11:**   Documents and/or communication showing the target audience or demographic for sales of the ZRO beverage.

**Response:**   Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control.  Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld.  Moreover, Ignite was not formed until July 29, 2020, and for the purpose of facilitating distribution of Ignite branded alcohol-based beverages, which does not include the ZRO beverage.

**Request 12:**   Documents and/or communication relating to the concept for the ZRO beverage.

**Response:**   Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control.  Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld.  Moreover, Ignite was not formed until July 29, 2020, and for the purpose of facilitating distribution of Ignite branded alcohol-based beverages, which does not include the ZRO beverage.

**Request 13:**   Documents and/or communication relating to the development of the ZRO beverage.

**Response:**   Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control.  Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld.  Moreover, Ignite was not formed until July 29, 2020, and for the purpose of facilitating distribution of Ignite branded alcohol-based beverages, which does not include the ZRO beverage.

**Request 14:**    Documents and/or communication relating to the determination of the price point for the ZRO beverage.

Brian D. Goodrich, Esq.
BENTLEY LAW
RE:  *Ignite Spirits, Inc.'s Responses to Plaintiff's Subpoena Pursuant to Rule 45*
August 2, 2021
Page 5 of 6

**Response:**     Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control.  Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld.  Moreover, Ignite was not formed until July 29, 2020, and for the purpose of facilitating distribution of Ignite branded alcohol-based beverages, which does not include the ZRO beverage.

**Request 15:**  Documents and/or communication sufficient to show where the ZRO beverage is sold.

**Response:**     Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control.  Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld.  Moreover, Ignite was not formed until July 29, 2020, and for the purpose of facilitating distribution of Ignite branded alcohol-based beverages, which does not include the ZRO beverage.

**Request 16:**  Documents and/or communication relating to the lawsuit styled *Heffernan v. Ignite International, Ltd.* et al. pending in the Superior Court for the State of California, County of Los Angeles, in which Bilzerian is alleged to have misappropriated Your funds.

**Response:**     Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control.  Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld.  Moreover, Ignite was not formed until July 29, 2020, and the lawsuit does not include any allegations relating to Ignite.

**Request 17:**  Communication to or from the Federal Trade Commission relating to Bilzerian's promotion, endorsement, marketing, advertising, or publicizing of any of Your products.

**Response:**     Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control.  Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld.

**Request 18:**  Documents and/or communication sufficient to show all of Ignite's cannabis-related products for sale or previously for sale in Canada.

Brian D. Goodrich, Esq.
BENTLEY LAW
RE:    *Ignite Spirits, Inc.'s Responses to Plaintiff's Subpoena Pursuant to Rule 45*
August 2, 2021
Page 6 of 6

**Response:**    Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control.  Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld.  Moreover, Ignite was not formed until July 29, 2020, and for the purpose of facilitating distribution of Ignite branded alcohol-based beverages, which does not include cannabis-related products.

**Request 19:**    Documents and/or communication sufficient to show all of Ignite's cannabis-related products for sale or previously for sale in the United States.

**Response:**    Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control.  Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld.  Moreover, Ignite was not formed until July 29, 2020, and for the purpose of facilitating distribution of Ignite branded alcohol-based beverages, which does not include cannabis-related products.

> Please advise us if you require any further information, clarification or have any questions.

> Sincerely,
> FLANGAS LAW GROUP
>
> /s/ *Kimberly P. Stein*
>
> Kimberly P. Stein

KPS:ah

cc:    Jason P. Stearns, Esq.
       Sarah A. Gottlieb, Esq.
       Kevin P. McCoy, Esq.

*FLG* **FLANGAS LAW GROUP**

Writer's email: kps@fdlawlv.com

August 2, 2021

*Via email: bgoodrich@thebentleylawfirm.com*
Brian D. Goodrich, Esq.
BENTLEY LAW
783 S. Orange Ave., 3rd Floor
Sarasota, FL 34236

      RE:    ***Ignite Distribution Company Inc.'s Responses to Plaintiff's Subpoena Pursuant to Rule 45***

Dear Mr. Goodrich:

      Our firm is outside general counsel to Ignite International, Ltd., which owns Ignite Distribution Company Inc. ("Ignite"). As such, we will be responding to Plaintiff's Subpoena pursuant to Rule 45 to Ignite Spirits, Inc. for the Production of Documents ("Document Requests") served upon Ignite on June 23, 2021, and based on the extension granted by you such responses are being served as of today. The Responses below are subject to our formal objections previously served on July 6, 2021 and are incorporated herein.

      Ignite responds as follows:

### RESPONSES

**Request 1:**    Documents and/or communication relating to STEEL.

**Response:**    Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control. Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld.

**Request 2:**    Documents and/or communication relating to Blitz and/or Bilzerian's promotion, endorsement, marketing, advertising, or publication of the ZRO beverage.

**Response:**    Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control. Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld. Moreover, Ignite was not formed until December 28, 2020.

Brian D. Goodrich, Esq.
BENTLEY LAW
RE:   ***Ignite Distribution Company Inc.'s Responses to Plaintiff's Subpoena Pursuant to Rule 45***
August 2, 2021
Page 2 of 6


**Request 3:**   Documents and/or communication relating to the promotion, endorsement, marketing, advertising, or publication of the ZRO beverage that include Bilzerian's name, image, or likeness.

**Response:**   Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control.  Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld.   Moreover, Ignite was not formed until December 28, 2020.

**Request 4:**   Documents sufficient to show Your organizational structure.

**Response:**   Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control.  Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld. Moreover, Ignite is a 100% owned subsidiary of Ignite International Brands, Ltd., a publicly traded company out of Canada and not subject to this Subpoena.

**Request 5:**   Social media content, including but not limited to videos, posts, stories, comments, and likes relating to the ZRO beverage.

**Response:**   Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control.  Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld.   Moreover, Ignite was not formed until December 28, 2020.

**Request 6:**   Documents and/or communication sufficient to show the amount Bilzerian has been compensated in connection with the ZRO beverage.

**Response:**   Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control.  Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld.   Moreover, Ignite was not formed until December 28, 2020.

Brian D. Goodrich, Esq.
BENTLEY LAW
RE:   ***Ignite Distribution Company Inc.'s Responses to Plaintiff's Subpoena Pursuant to Rule 45***
August 2, 2021
Page 3 of 6

**Request 7:**     Documents and/or communication sufficient to show the amount Blitz has been compensated in connection with the ZRO beverage.

**Response:**     Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control. Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld.  Moreover, Ignite was not formed until December 28, 2020.

**Request 8:**     Documents and/or communication marketing the ZRO beverage as a pre-workout, workout, or after-workout beverage.

**Response:**     Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control. Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld.  Moreover, Ignite was not formed until December 28, 2020.

**Request 9:**     Documents and/or communication mentioning the ZRO beverage in connection with performance.

**Response:**     Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control. Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld.  Moreover, Ignite was not formed until December 28, 2020.

**Request 10:**     Documents and/or communication mentioning the ZRO beverage in connection with health or fitness.

**Response:**     This Request is Duplicative. *See* General Objections. Ignite objects to this Request to the extent Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control. Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld.  Moreover, Ignite was not formed until December 28, 2020.

Brian D. Goodrich, Esq.
BENTLEY LAW
RE:   *Ignite Distribution Company Inc.'s Responses to Plaintiff's Subpoena Pursuant to*
*Rule 45*
August 2, 2021
Page 4 of 6

**Request 11:**   Documents and/or communication showing the target audience or demographic for sales of the ZRO beverage.

**Response:**   Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control.  Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld.   Moreover, Ignite was not formed until December 28, 2020.

**Request 12:**   Documents and/or communication relating to the concept for the ZRO beverage.

**Response:**   Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control.  Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld.   Moreover, Ignite was not formed until December 28, 2020.

**Request 13:**   Documents and/or communication relating to the development of the ZRO beverage.

**Response:**   Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control.  Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld.   Moreover, Ignite was not formed until December 28, 2020.

**Request 14:**   Documents and/or communication relating to the determination of the price point for the ZRO beverage.

**Response:**   Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control.  Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld.   Moreover, Ignite was not formed until December 28, 2020.

**Request 15:**   Documents and/or communication sufficient to show where the ZRO beverage is sold.

Brian D. Goodrich, Esq.
BENTLEY LAW
RE:   ***Ignite Distribution Company Inc.'s Responses to Plaintiff's Subpoena Pursuant to Rule 45***
August 2, 2021
Page 5 of 6

**Response:**   Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control. Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld.   Moreover, Ignite was not formed until December 28, 2020.

**Request 16:**   Documents and/or communication relating to the lawsuit styled *Heffernan v. Ignite International, Ltd.* et al. pending in the Superior Court for the State of California, County of Los Angeles, in which Bilzerian is alleged to have misappropriated Your funds.

**Response:**   Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control. Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld.   Moreover, Ignite was not formed until December 28, 2020.

**Request 17:**   Communication to or from the Federal Trade Commission relating to Bilzerian's promotion, endorsement, marketing, advertising, or publicizing of any of Your products.

**Response:**   Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control. Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld.

**Request 18:**   Documents and/or communication sufficient to show all of Ignite's cannabis-related products for sale or previously for sale in Canada.

**Response:**   Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control. Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld.   Moreover, Ignite was not formed until December 28, 2020.

**Request 19:**   Documents and/or communication sufficient to show all of Ignite's cannabis-related products for sale or previously for sale in the United States.

Brian D. Goodrich, Esq.
BENTLEY LAW
RE:    ***Ignite Distribution Company Inc.'s Responses to Plaintiff's Subpoena Pursuant to Rule 45***
August 2, 2021
Page 6 of 6


**Response:**    Subject to and without waiving its General and Specific Objections, Ignite responds that having performed a diligent search and reasonable search in an effort to comply with these Requests, it has no responsive documents within its own custody, possession, or control.  Ignite further advises that no documents have been deleted and that it does not know of any documents at this time that have been purposely withheld.  Moreover, Ignite was not formed until December 28, 2020.

Please advise us if you require any further information, clarification or have any questions.

Sincerely,

FLANGAS LAW GROUP

/s/ *Kimberly P. Stein*

Kimberly P. Stein

KPS:ah

cc:    Jason P. Stearns, Esq.
Sarah A. Gottlieb, Esq.
Kevin P. McCoy, Esq.

# EXHIBIT D

# 𝓕𝓛𝓖 FLANGAS LAW GROUP

Writer's email: kps@fdlawlv.com

December 16, 2021

*Via Electronic Mail:* jstearns@freeborn.com
Jason P. Stearns, Esq.
FREEBORN & PETERS LLP
201 North Franklin Street
Suite 3550
Tampa, Florida 33602

RE:     *Ignite International Ltd.'s Corporate Designee Deposition and Production*

Dear Mr. Stearns:

This letter in response to your letter of December 13, 2021. First, I am surprised to receive the letter from you, as again, the parties had multiple conferrals about the scope of this deposition and the matters designated before the examination started. The purpose of those discussions, largely with your colleague Mr. Catalano, was to avoid Ignite International Ltd.'s ("Ignite") need to file a protective order. Moreover, after our efforts to meet and confer on the notice, as Mr. Catalano stated for a few of the topics, while you considered the comments and the discussion, you left them unchanged. "For example, there was discussion today regarding Topic 9 (FTC Communications) and Topic 19 (Bilzerian's Compensation from ZRO). These topics remain largely unchanged. Based on the discussion on today's call, we expect that theses will be very short topics for examination. (For example, you stated that there have been no FTC communications relating to ZRO.)" Thus, as stated at the deposition, you went further than agreed to, which may have caused part of the problem.

During the several discussions prior to the deposition we did inform Mr. Catalano that Mr. Schaeffer would not be the designee. Ignite International Ltd. had the sole right to designate any witness it deemed appropriate under the rule, as your letter seems to acknowledge. Steel elected to forego its efforts to personally serve Mr. Schaeffer for deposition for its own reasons unrelated to the deposition you took of the corporate representative. This is likely because Steel recognized it could not overcome the apex doctrine in seeking to depose Ignite's executive on matters that could be addressed through other means. Your letter seems to confirm, however, that the true intention all along was to use the Ignite corporate deposition as a means to explore information outside of the designated matters based upon personal knowledge a witness may or may not have and whom would not be authorized to speak on behalf of the company concerning such matter. As stated prior, I do not represent Mr. Schaeffer personally, and I believe you were in contact with his counsel, for which I provided you contact information.

Jason P. Stearns, Esq.
FREEBORN & PETERS LLP
RE:   *Ignite International Ltd.'s Corporate Designee Deposition and Production*
December 16, 2021
Page 2 of 5

Turning to the 30b(6) deposition itself, again as you stated, the standard pursuant to Federal Rule of Civil Procedure 30(b)(6) is that it requires only that the designated witness be able to testify about information "known or reasonably available to the organization." The testimony of the 30(b)(6) witness represents the collective knowledge of the organization, so the designated witness may have to review available materials such as deposition testimony and exhibits, relevant documents, and current and former employees' files in order to become sufficiently educated to speak for the organization. Similarly, the designee may have to meet with people from within the organization, from mailroom employees to senior management, even former employees, in order to become educated on the topics for which he or she has been designated to testify. The organization has an obligation to create an appropriate witness, if one is not readily available, from information reasonably available to the organization. Moreover, the witness may be required to testify about the organization's subjective beliefs and opinions. When investigating potential witnesses and other individuals possessing relevant knowledge, the corporation **cannot** be faulted for not interviewing individuals who refuse to speak with it. A corporation's efforts to obtain information need only be reasonable. *QBE Ins. Corp. v. Jordan Enterprises, Inc.*, Case No. 10-21107-CIV, ___F.R.D.___, 2012 WL 266431 (S.D. Fla., Jan. 30, 2012). Moreover, as with all discovery the scope of information that Steel was permitted to pursue was limited to that which may prove a matter in dispute. Many of the topics Steel attempted to pursue during the deposition, and still now, have no bearing to any matter still in dispute in the litigation between Steel and Blitz. Steel, however, clearly intended to continue the vexatious approach to discovery it has taken throughout this case, which has levied excessive fees and costs on Blitz and non-parties. This will be the subject of forthcoming motions practice already.

As Mr. Turner testified, the problem is that there are no current employees of the company available to discus matters with, as there was no forwarding information, and the limited records are not available to the company, Ignite. The problem is that again, you subpoenaed the wrong entities. First, you failed to subpoena the parent company, International Brands Ltd. ("Brands"). As stated to Mr. Catalano in writing, and I even provided to him the public filings of Brands, Ignite is a 100% owned subsidiary of Brands. Brands is a Canadian entity and not subject to the jurisdiction of this Court. We further discussed previously Ignite Beverages, Inc. ("Beverages"), which is another wholly owned subsidiary of Brands, and does not have a relationship to Ignite. While you argue regarding information on Beverages, you deposed Mr. Gracely in this matter, a former President of Beverages. Yet, again, Ignite does not have the information on Beverages you are requesting-again the wrong entity.

Lastly, we further advised that while we endeavored to collect and produce information available to U.S.-based personnel, as Paul Holden, General Counsel of Brands advised me that he will no longer voluntarily provide any further information without a valid subpoena. You were advised of this well in advance of the deposition and elected to forego taking the necessary steps to issue a valid subpoena to the correct entity in favor of the shortcut that you pursued with Ignite. While Mr. Turner advised of a cloud-based server, such server is not located in the United States

Jason P. Stearns, Esq.
FREEBORN & PETERS LLP
RE:   *Ignite International Ltd.'s Corporate Designee Deposition and Production*
December 16, 2021
Page 3 of 5

and is not under Ignite's control, but Brands.  In fact, if such documents would be delivered by Brands, this could affect Brands' ability concerning other matters in the future, such as a grand jury subpoena, as documents delivered by a foreign company to a United States company during discovery in civil litigation would then become discoverable, which currently it would not be. Your attempts to try and force such conversion can put a Brands at risk, and Mr. Holden will not waive this ability.  Your disagreement as to corporate formalities are also misplaced.

It appears that you forget Ignite is not a party to this litigation.  While Mr. Bilzerian is the sole director of Ignite, he does not hold a day-to-day role in Ignite.  Further, there has been no evidence of any involvement of Ignite in Blitz NV, LLC, Mr. Bilzerian's personal entity, of which he is the sole owner.  The evidence to date demonstrates that corporate formalities have been followed despite your attempts to disregard them for purposes that still are confusing to Blitz.  Not to mention, the only involvement for Ignite is whether they in fact sold ZRO, which Blitz NV, LLC, the party to this litigation, has offered to stipulate to more than once.

Turing to your arguments regarding Mr. Turner, we disagree with your assessment.  Also, I must advise while you cite a transcript, I have not seen the transcript nor been able to review and sign as of this date.  What I can respond to regarding your allegations and suggest is you re-review the transcript and also the fact that we provided you Mr. Turner's notes based on his research.  In reviewing the notes, it is clear the topics were in fact answered based on the information reasonably available to Ignite.

Turning to your specific requests on topics 5, 14, 15, 19 and 20.

Topic 5: Ignite's communications and relationship with Bilzerian with respect to Ignite ZRO and/or any health product or supplement product that Ignite contemplated selling or actually sold.

Again here, this was limited, as there was not much discussion with Mr. Bilzerian.  Not to mention, you already deposed Mr. Bilzerian.  And, the only issue that is framed by Steel's pleadings is whether Mr. Bilzerian actually promoted or endorsed the product of a defined "Competitor."  Even assuming there is some conversation about some other health or supplement product, if Mr. Bilzerian did not actually promote such product, it is absolutely immaterial to the claims Steel has framed and prosecuted for the last year.  Thus, there is no need for another deposition on this topic.  The responses do not change based on information reasonably available to Ignite.

Topic 14: Development, formulation and distribution in the United States of the ZRO beverage, including the sales channels utilized.

and

Jason P. Stearns, Esq.
FREEBORN & PETERS LLP
RE:   *Ignite International Ltd.'s Corporate Designee Deposition and Production*
December 16, 2021
Page 4 of 5


Topic 15: Marketing and promotion of the ZRO beverage, including (i) use of social media accounts to market and promote the ZRO beverage, (ii) marketing and promotion of the ZRO beverage through social media influencers, (iii) the marketing strategy for the ZRO beverage, (iv) the target market for the ZRO beverage, (v) how the ZRO beverage is differentiated in the marketplace from competitive products.

As Mr. Turner testified to, this product was developed by Beverages, not Ignite, and as such information on the development was not available.   Regarding current distribution, Mr. Turner testified that since taking over ZRO, Ignite utilizes primarily online sales through site like Amazon and at gas stations.  Sales though have been minimal and are not a main focus of the company.  There is nothing else here.  Ignite now sells ZRO since the summer of 2020.  The ingredients of ZRO are known to Steel already.  Tellingly, Steel refused to provide any ingredients or formulations in response to Blitz's specific requests for that information.  How Steel can justify seeking this information now from a non-party is hard to understand..  Mr. Turner testified that ZRO is an energy drink, and confirmed sales based on Instagram posts at certain locations, which would be through distributors of the company used in the past, but not currently utilized.  This is consistent with the testimony and evidence has been produced in the case, even if Steel does not want to accept those facts because they run contrary to its narrative.

Topic 19: Documents Ignite produced in connection with the above-captioned litigation.

and

Topic 20: Ignite's collection, search and production of documents in connection with the above-captioned litigation

Again, this was testified to and discussed above.  Upon receipt of the subpoena, the company discussed the matter with counsel.  Thereafter, a search was performed.  Unfortunately, Ignite closed the California offices in and around March of 2021 and all files were shipped to the Canadian parent's offices.  Unfortunately, due to COVID, such files are not accessible.  But, Ignite also maintains few physical files.

Ignite's emails are maintained by the parent company.  Mr. Holden, GC of the parent did not provide permission to search the parent companies emails or servers.

Further as certain employees were no longer at the company and their email no longer existed and was not archived, there were not a lot of emails to be found.  Further, and barring a litigation hold placed on a specific email account or date range, Ignite has a policy and practice of deleting employee email accounts at the time an employee ends his/her employment with the company.

Jason P. Stearns, Esq.
FREEBORN & PETERS LLP
RE:   *Ignite International Ltd.'s Corporate Designee Deposition and Production*
December 16, 2021
Page 5 of 5

As such, we had our President, John Schaeffer search his emails and files with key words based on the Subpoena references to ZRO, Blitz, Steel, Bodybuilding Supplement, for example. We also attempted to search other files/emails accessible to Mr. Schaeffer, including former COOs and CMOs if the files still existed, and reached out to Jason Verona at Blitz.

Regarding your last request on document production, again as stated on the record, we agreed to provide a certificate to you from a custodian of records. Please send for our review, or I can provide a standard one. This was not done prior, as we voluntarily provided documents only.

As a final note, your statement that Judge Jung has somehow already ruled on these matters is simply false. Judge Jung said Mr. Bilzerian should give discovery concerning ZRO. He sat and answered your many questions on the topic at his deposition. Judge Jung did not rule that non-party Ignite had to do anything, as that matter was not even before the Court. In fact, it was exactly because we anticipated you would make this claim that we clarified at the conclusion of the last hearing that Judge Jung was not making any far-reaching determinations on other matters outside of those presented concerning Blitz and Mr. Bilzerian's deposition.

Based on the above, we believe there is no need for further motion practice nor court intervention. Ignite has complied as reasonably as it could base on information available to it. If you want to continue the discussion, we can set up a meet and confer with Mr. Catalano and your local Nevada counsel next week. Please know, Ignite intends to pursue recovery of its fees related to any further efforts on this matter. These will be in addition to those that Blitz will recover in the primary litigation with Steel.

Sincerely,

FLANGAS LAW GROUP

*/s/ Kimberly P. Stein*

Kimberly P. Stein

KPS:ah
cc:   Kevin McCoy, Esq.
      David R. Wright, Esq.
      Luis Orengo, Jr., Esq.
      Jeffrey Catalano, Esq.
      Sarah Gottlieb, Esq.

# EXHIBIT E

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**STEEL SUPPLEMENTS, INC.,**
a Florida corporation

     Plaintiff,

v.                  **CASE NO.  8:20-cv-02971-WFJ-AEP**

**BLITZ NV, LLC,** a Nevada limited
Liability company

     Defendant.

_____/

## SECOND AMENDED NOTICE OF TAKING VIDEOTAPED DEPOSITION OF CORPORATE DESIGNEE OF IGNITE INTERNATIONAL, LTD. PURSUANT TO FED. R. CIV. P. 30(B)(6)

TO:  **Ignite International, Ltd.**
      c/o Kimberly Stein, Esq.
      FLANGAS DALACAS LAW GROUP
      3275 S. Jones Boulevard, Suite 105
      Las Vegas, NV  89146

     **PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Civil Procedure 30(b)(6), Plaintiff, STEEL Supplements Inc., by and through its undersigned counsel, will take the video-taped deposition, upon oral examination, of the following person, as set forth below:

Las Vegas, NV  89146
kps@fdlawlv.com
Attorney for Ignite International, Ltd.

Kevin P. McCoy, Esq.
Luis Orengo, Esq.
**CARLTON FIELDS, P.A.**
4221 W. Boy Scout Boulevard, Suite 1000
Tampa, FL  33607
kmcoy@carltonfields.com
lorengo@carltonfields.com
dwilson@carltonfields.com
fuller@carltonfiels.com
Attorneys for Blitz NV, LLC

*/s/ Sarah A. Gottlieb* _____
Attorney

Copy to:
Anthem Reporting
Phone: 888.909.2720
E-mail:  anthem@anthemreporting.com

5827725

4

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

STEEL SUPPLEMENTS, INC., a Florida corporation;

_____
Plaintiff

v.

BLITZ NV, LLC, a Nevada limited liability company;

_____
Defendant

) 
) 
) 
) 
) 
) 
) 

Civil Action No.   8:20-cv-02971-WFJ-AEP

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:   IGNITE INTERNATIONAL, LTD. c/o Kimberly Stein, Esq., FLANGAS DALACAS LAW GROUP, 3275 S. Jones
Boulevard, Suite 105, Las Vegas, NV 89146
*(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters: See Exhibit A.

| Place: Via Zoom - Zoom instructions to be forwarded by Anthem Reporting | Date and Time: 12/01/2021 11:00 am |
|---|---|

The deposition will be recorded by this method:    Via Zoom - ***Deposition Time is Eastern

❏ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   11/18/2021

| CLERK OF COURT | | |
|---|---|---|
| | OR | |
| _____ | | /s/ Sarah A. Gottlieb |
| Signature of Clerk or Deputy Clerk | | Attorney's signature |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Steel Suppplements
Jason P. Stearns, Esq./ Sarah A. Gottlieb, Esq. Freeborn & Peters, LLP  , who issues or requests this subpoena, are:

201 N. Franklin St., St. 3550, Tampa, FL 33602; jstearns@freeborn.com/ sgottlieb@freeborn.com; 813-488-2920

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## EXHIBIT A

### I.   Definitions

1. The terms "Blitz" or "Defendant" mean Blitz NV, LLC, including its shareholders, directors, officers, members, managers, employees, independent contractors, agents, or anyone else acting or purporting to act on its behalf.

2. The term "Bilzerian" means Dan Bilzerian.

3. The term "STEEL" means STEEL Supplements, Inc.

4. The term "Ignite" means Ignite International, Ltd.

5. The term "Ignite Products" means Ignite-branded beverage and apparel products for sale in the United States.

6. The term "Ignite Entities" means Ignite Distribution Company, Inc., Ignite Spirits, Inc., Ignite International Brands, Ltd., Ignite Distribution, Inc., Ignite Beverages, Inc., Ignite Brands, LLC, Ignite Nootropics LLC, and any other related companies (other than Ignite International, Ltd.).

7. The term "Agreement" means the Personal Services Sponsorship/License Agreement between Blitz and STEEL which is the subject of the above-captioned litigation.

### II.   Specific Topics for Testimony

1. Ignite's purpose and function from November 2018 to the present.

2. Ignite's corporate structure and its officers, directors, managing agents, and executive officers as of (i) November 2019, (ii) the date Ignite ZRO launched, and (iii) currently.

3. Ignite's relationship to Ignite International Brands, Ltd.

4. Ignite's relationship to Ignite Beverages, Inc.

5. Ignite's communications and relationship with Bilzerian with respect to Ignite ZRO and/or any health product or supplement product that Ignite contemplated selling or actually sold.

6. Ignite's communications and relationship(s) with Blitz with respect to Ignite ZRO and/or any health product or supplement product that Ignite contemplated selling or actually sold.

7. Services provided to U.S. consumers by Ignite from November 2018 to the present.

8. The Agreement, including (i) Ignite's knowledge of the Agreement, (ii) the effect, if any, of the Agreement on Ignite's business, (iii) any assessment as to whether any actual or contemplated Ignite-branded product would implicate the Agreement, (iv) and the basis for any such assessment.

9. Ignite's communications with the Federal Trade Commission, if any, relating to the Ignite ZRO product.

10. Promotion of Ignite Products through the internet, including through social media accounts, from November 2020 to the present.

2

11. Bilzerian's promotion, publication, or endorsement of Ignite Products on behalf of Ignite from February 2017 to the present.

12. Ignite's communications and relationship with STEEL.

13. Ignite's attempts to collaborate with STEEL.

14. Development, formulation and distribution in the United States of the ZRO beverage, including the sales channels utilized.

15. Marketing and promotion of the ZRO beverage, including (i) use of social media accounts to market and promote the ZRO beverage, (ii) marketing and promotion of the ZRO beverage through social media influencers, (iii) the marketing strategy for the ZRO beverage, (iv) the target market for the ZRO beverage, (v) how the ZRO beverage is differentiated in the marketplace from competitive products.

16. Ignite employees who have had responsibilities with respect to the formulation, marketing, promotion and sale of the ZRO beverage.

17. Identification of Ignite Entities involved in the formulation, marketing and distribution in the United States of the ZRO beverage and a description of each such entity's involvement.

18. Compensation, if any, that Bilzerian or Blitz received in connection with the ZRO beverage.

19. Documents Ignite produced in connection with the above-captioned litigation.

3

20. Ignite's collection, search and production of documents in connection with the above-captioned litigation.

# EXHIBIT F

| | |
|---|---|
| **From:** | cmecf_flmd_notification@flmd.uscourts.gov |
| **To:** | cmecf_flmd_notices@flmd.uscourts.gov |
| **Subject:** | Activity in Case 8:20-cv-02971-WFJ-AEP Steel Supplements, Inc. v. Blitz NV, LLC Order on Motion for Protective Order |
| **Date:** | Monday, October 18, 2021 2:14:11 PM |

External Email

This is an automatic e-mail message generated by the CM/ECF system.
Please DO NOT RESPOND to this e-mail because the mail box is
unattended.
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United
States policy permits attorneys of record and parties in a case (including
pro se litigants) to receive one free electronic copy of all documents filed
electronically, if receipt is required by law or directed by the filer. PACER
access fees apply to all other users. To avoid later charges, download a
copy of each document during this first viewing. However, if the
referenced document is a transcript, the free copy and 30 page limit do
not apply.**

### U.S. District Court

### Middle District of Florida

**Notice of Electronic Filing**

The following transaction was entered on 10/18/2021 at 2:13 PM EDT and filed on
10/18/2021
**Case Name:**      Steel Supplements, Inc. v. Blitz NV, LLC
**Case Number:**    8:20-cv-02971-WFJ-AEP
**Filer:**
**Document Number:** 98(No document attached)

**Docket Text:**
ENDORSED ORDER denying [85] Motion for Protective Order, with the limited
exception that the Motion is granted (for now) concerning the limited and
specific "Heffernan questions." The Court will review these matters at a later
time if Plaintiff seeks review of them. This "Heffernan exception" should not be
utilized by the defendant entities or the defendant's principal to avoid full and
robust discovery otherwise. The Court carries the requests for sanctions with
the case. Signed by Judge William F. Jung on 10/18/2021. (Jung, William)


**8:20-cv-02971-WFJ-AEP Notice has been electronically mailed to:**

Bradford D. Kimbro      brad.kimbro@hklaw.com, christine.yokel@hklaw.com

Kevin P. McCoy      kmccoy@cfjblaw.com, KDelValle@carltonfields.com,
lfuller@carltonfields.com

Jason Paul Stearns     jstearns@freeborn.com, ckitchell@freeborn.com

Brian David Goodrich     bgoodrich@bentleyandbruning.com

Sarah Gottlieb     sgottlieb@freeborn.com, daigotti@freeborn.com, mbennett@freeborn.com

Luis Orengo, Jr     lorengo@carltonfields.com, kathompson@carltonfields.com

Kimberly P. Stein     kps@fdlawlv.com, ah@fdlawlv.com

**8:20-cv-02971-WFJ-AEP Notice has been delivered by other means to:**